## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN J. DOUGHERTY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-674-SLR/LPS |
| | ) | |
| ALAN BLIZE and ASDI | ) | |
| INCORPORATED, | ) | JURY TRIAL DEMANDED |
| a Delaware Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO AMEND COMPLAINT

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, Plaintiff John J. Dougherty hereby moves to amend his Complaint in this matter.

1.    Under Rule 15(a)(2), leave to amend a complaint is "freely give[n]" where, as here "justice so requires." This case is in its early stages. No depositions have been taken. The Scheduling Order permits discovery until August 18, 2008, and expressly permits the filing of motions to amend on or before April 1, 2008. The proposed Amended Complaint states a valid claim under the Fair Labor Standards Act ("FLSA") arising from Defendants' failure to treat Dougherty as an exempt employee, thus converting him to a non-exempt employee for purposes of the FLSA.

2.    As indicated in the red-lined copy of the proposed Amended Complaint attached as Exhibit A hereto, Dougherty's original Complaint has already placed Defendants on notice of the facts underlying the Amended Complaint. On Monday, January 1, 2007, Dougherty was on paid holiday. Dougherty reported to work in the morning of Tuesday, January 2, 2007, and was asked to attend a meeting that began at approximately 1:00 p.m. At that meeting, Defendants

ordered Dougherty and another ostensibly exempt employee, Mike Regusters, to leave work and to remain off property until further notice. Dougherty complied, but was never paid for any services provided in 2007. Upon information and belief, neither was Regusters. See Compl. ¶¶ 29-30.

3.    The Amended Complaint seeks to add a new paragraph 46 that states, "[u]pon information and belief, ASDI failed to pay not only Dougherty but also other ASDI exempt employees during disciplinary leave, even when such employees worked during a workweek, which amounts to a clear and particularized policy, which effectively communicates that deductions will be made in specific circumstances." Am Compl. ¶ 46. The Amended Complaint also modifies the FLSA count to include an alternative claim that Dougherty's employment status was, through the actions of ASDI, converted from tax exempt status to non-exempt status. *Id.* ¶48. Finally, the Amended Complaint seeks to add unpaid overtime wages as a remedy for the FLSA violation. Id. ¶49.

4.    These amendments are properly grounded on the fundamental principle that employers may not take advantage of classifying employees as "exempt" under the FLSA, in order to avoid paying overtime wages, while treating such employees as non-exempt when convenient in order to avoid payments due to them as exempt employees. The "breadth of coverage" of the FLSA's overtime work rules is "vital to [its] mission" of establishing a national work week standard, such that statutory exemptions to the FLSA should be narrowly construed. *Powell v. United States Cartridge Co.*, 399 U.S. 497, 516 (1950); *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295 (1959). Thus, an employer claiming an exemption must establish entitlement to it by clear, convincing and affirmative evidence. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974).

5.    Employers are not required to pay premium overtime rates to employees who are in fact paid "on a salary or fee basis." 29 C.F.R. § 541.3(e). However, an employee is paid on a salary basis only if he receives a predetermined amount that is not subject to reduction because of variations in quantity of the work performed. 29 C.F.R. § 541.118(a). Subject to certain inapplicable exceptions, FLSA requires employers to pay exempt employees their full salary for any work week in which they perform any work, without regard to the number of days or hours worked. See 29 C.F.R. § 541.118(a) (2003). An employer who fails to comply with these requirements loses the right to classify an employer as exempt. See 29 C.F.R. § 541.603(a) ("[a]n employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis"). An employer who loses the exemption must pay the employee "at a rate not less than one and one-half times the regular rate at which he is employed" for all hours worked in excess of 40 hours a week. See 29 U.S.C. § 207(a)(1).

6.    The "effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case." 29 C.F.R. § 541.118(a)(6) (1997). Thus, the inquiry is fact intensive. See Cerbu v. Chicago Bldg. Services, Inc., 1999 WL 438905, at *5 (N.D. Ill. 1999) (finding genuine issue of fact as to whether one-time deduction was an "actual practice" and denying plaintiff's motion for summary judgment) (Exhibit B). An ex-employee such as Dougherty, who alleges two instances in which ASDI deducted salary in violation of the salary basis requirements, states a valid claim of an FLSA violation and must be accorded discovery to identify the extent of the employer's improper practice.

7.     Based on these authorities, Dougherty respectfully requests that his Motion to Amend the Complaint be granted.

Respectfully submitted,

CONNOLLY BOVE LODGE & HUTZ LLP

Matthew F. Boyer (Del. Bar No. 2564)
Email:  Mboyer@cblh.com
Timothy M. Holly (Del. Bar No. 4106)
Email:  Tholly@cblh.com
Josiah R. Wolcott (Del. Bar No. 4796)
Email:  Jwolcott@cblh.com
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
(302) 658-9141
*Attorneys for John J. Dougherty*

Dated:   April 1, 2008

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN J. DOUGHERTY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| ALAN BLIZE and ASDI | ) | |
| INCORPORATED, | ) | JURY TRIAL DEMANDED |
| a Delaware Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

### PARTIES

1.     John J. Dougherty ("Dougherty") is an adult individual who is a citizen of the State of Pennsylvania and who was formerly employed by ASDI Incorporated ("ASDI") in New Castle County, Delaware.

2.     Defendant Alan Blize is the co-owner and chief executive officer of ASDI, and as such has operational control over ASDI.

3.     Defendant ASDI is a Delaware corporation with operations in the State of Delaware and with more than fifteen employees.

### JURISDICTION

4.     This action is brought pursuant to this Court's jurisdiction over civil actions arising under the laws of the United States of America, under 29 U.S.C. § 1132 and 28 U.S.C. § 1331.  Delaware state law claims are brought pursuant to this Court's supplemental jurisdiction, under 28 U.S.C. § 1367.

<u>**VENUE**</u>

5.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to this lawsuit occurred in this District.

<u>**FACTUAL ALLEGATIONS**</u>

6.     On August 16, 2006, ASDI sent Mr. Dougherty a written job offer (the "Agreement") for the position of Executive Director, Operations, which Mr. Dougherty accepted.

7.     The Agreement provided for an annual salary of $87,500.00 plus bonuses.

8.     The Agreement further provided benefits that included three weeks paid vacation, three sick days, two personal days, and six paid holidays (including New Years Day).

9.     The Agreement also provided a benefit of a $25,000.00 life insurance policy, health and dental insurance, for which ASDI agreed to pay the premiums.

10.     In connection with the Agreement, Mr. Blize asked Mr. Dougherty to assume the long-term responsibility of fixing many administrative problems at ASDI, which Mr. Blize estimated would take at least a year or two.

11.     In reliance upon these and other representations, Mr. Dougherty left a secure, well-paying managerial position with Teva Pharmaceuticals in order to accept this high-level position with ASDI.

12.     Mr. Dougherty reported to work on September 11, 2006.

13.     On September 11, 2006, without prior notice or explanation, ASDI downgraded Mr. Dougherty's position from Executive Director to Senior Director.

14.     Mr. Blize initially praised Mr. Dougherty for his performance and reassured him regarding the learning curve that the job entailed.

2

15.    In late November 2006, an ASDI manager named Kabana Perkins advised Mr. Dougherty that Mr. Blize's wife, Trula K. Blize, Director of Staffing, had placed Mr. Perkins's safety at risk by divulging to an unsuccessful job applicant with a questionable background that the applicant was turned down based on Mr. Perkins's recommendation that he not be hired.

16.    Upon information and belief, Ms. Blize divulged this confidential information to the applicant even though she knew that the applicant was potentially dangerous.

17.    Consistent with his administrative responsibilities, Mr. Dougherty met with Messrs. Perkins and Blize to discuss Mr. Perkins's concerns.

18.    In that meeting, Mr. Dougherty reported the action by Ms. Blize and recommended that such confidential communications not be divulged to unsuccessful job applicants as a matter of workplace safety and in order to prevent violence in the workplace.

19.    Mr. Blize initially assured Mr. Dougherty that he acted appropriately according to the duties of his position in proffering constructive criticism notwithstanding the fact that the Director of Staffing was Mr. Blize's wife.

20.    However, a few days later, another ASDI employee warned Mr. Dougherty to "watch your back" because "Trula really has it in for you."

21.    On December 1, 2006, Ms. Blize stated in an email directed to Mr. Perkins that Mr. Perkins had told her to inform the aforementioned applicant that it was Mr. Perkins's instructions not to hire the applicant.

22.    Mr. Perkins informed Mr. Dougherty that Ms. Blize's claim was untrue, which Mr. Dougherty relayed to Mr. Blize.

23.    Mr. Blize then threatened to fire Mr. Perkins for contradicting his wife.

24.    On December 21, 2006, Mr. Blize told Mr. Dougherty that he was being stripped

3

of all "authority and responsibility" over operations, for a period of one month, so that he could be "re-trained."

25.     Mr. Blize took this adverse employment action against Mr. Dougherty in retaliation for Mr. Dougherty's proper actions in reporting a potential workplace safety concern to Mr. Blize arising from Ms. Blize's handling of the unsuccessful applicant.

26.     When Mr. Dougherty expressed his understanding that he would be only an "observer" during this one-month period, Mr. Blize confirmed that his role would be so limited.

27.     Mr. Blize also told Mr. Dougherty that management responsibility was being reassigned to a committee that did not include him.

28.     During the week of December 26, 2006, Mr. Dougherty asked Mr. Blize whether the weekly meetings between them, at which Mr. Dougherty would report on the status of projects over which he had responsibility, would be discontinued. Mr. Blize confirmed that such meetings would be discontinued and that, specifically, Mr. Dougherty would not meet with him during the week of December 26 because Mr. Dougherty no longer had responsibility over projects but rather was an "observer."

29.     Monday, January 1, 2007, was a paid holiday. On Tuesday, January 2, 2007, Mr. Dougherty reported to work and was called into a conference room at approximately 1:00 p.m. Notwithstanding the fact that ASDI had previously stripped Mr. Dougherty of all management authority and responsibility, Mr. Blize blamed Mr. Dougherty for a delay in a project for Cephalon that occurred in the week between Christmas and New Year's Day. Mr. Blize indicated that he was placing Mr. Dougherty on a "leave of absence." Mr. Blize did not indicate, either orally or in writing, that such leave would be without pay.

30.     Mr. Dougherty was immediately escorted from the premises.

4

31.    ASDI did not have in place at that time any written policy applicable to all employees regarding unpaid suspension for violation of conduct rules or otherwise.

32.    On January 4, 2007, Mr. Dougherty emailed Mr. Blize requesting clarification of his employment status.  Mr. Blize and ASDI ignored his inquiry.

33.    On Friday, January 19, 2007, Mr. Dougherty inquired about ASDI's failure to deposit his semi-monthly pay check into his bank account, as was its normal practice.

34.    In response, ASDI's director of finance informed Mr. Dougherty that Mr. Blize had decided, just that week, not to pay Mr. Dougherty for the pay period beginning January 1.

35.    Throughout that time, Mr. Dougherty remained ready and willing to return to work.

36.    At no point through January 19 did ASDI (or any agent thereof) either advise Mr. Dougherty of any change in the rate of his pay, or that his "leave of absence" had been transformed into termination of employment.

37.    On January 23, 2007, Mr. Dougherty sent to Ms. Blize an email requesting that he be permitted to inspect his personnel file.  Mr. Blize and ASDI refused that request by ignoring it.

38.    On February 15, 2007, Mr. Dougherty, through counsel, wrote to ASDI seeking an amicable resolution of this matter.

39.    ASDI kept Mr. Dougherty on its health insurance plan until May 3, 2007.

40.    On May 18, 2007, Mr. Dougherty received a COBRA notification form from ASDI notifying him of his right to health care continuation benefits.

41.    The COBRA notice form states that the date of Mr. Dougherty's termination (the date he qualified for COBRA coverage) was May 3, 2007.

42.    ASDI failed to supply a rate sheet at any time through the end of May 2007.

43.    On May 22, 2007, Mr. Dougherty requested via email information required by COBRA.  Mr. Dougherty received no reply.

44.    ASDI finally sent Mr. Dougherty a rate sheet on June 13, 2007.

45.    Mr. Dougherty has continued to attempt to find comparable full-time employment since the end of January 2007 but has been unsuccessful.

46.    Upon information and belief, ASDI failed to pay not only Dougherty but also other ASDI exempt employees during disciplinary leave, even when such employees worked during a workweek, which amounts to a clear and particularized policy, which effectively communicates that deductions will be made in specific circumstances.

**COUNT ONE**
**VIOLATION OF FAIR LABOR STANDARDS ACT**

47.    Mr. Dougherty incorporates the preceding paragraphs herein the same as though pleaded in full.

48.    In violation of the federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* (the "FLSA"), Defendants Mr. Blize and ASDI, who both are employers under FLSA, unlawfully paid / failed to pay Mr. Dougherty; and through the implementation of an unlawful deduction policy, the exemption was lost.

49.    Through such acts, pursuant to 29 U.S.C. § 216, Mr. Blize and ASDI are liable to Mr. Dougherty for:  (1) unpaid wages (including non-paid overtime); (2) an additional equal amount as liquidated damages; (3) mandatory reasonable attorney's fees; and (4) mandatory costs of the action.

6

## COUNT TWO
## VIOLATION OF COBRA / ERISA

Formatted: Bullets and Numbering

50.    Mr. Dougherty incorporates the preceding paragraphs herein the same as though pleaded in full.

51.    In violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161 et seq., which amended the Employee Retirement Income Security Act of 1974 ("ERISA"), Defendants Mr. Blize and ASDI, who both were employers and plan administrators, failed to notify Mr. Dougherty, who was a qualified beneficiary of a group health plan, of his entitlement to continuation coverage, within the time period required by COBRA.

52.    In further violation of COBRA, Mr. Blize and ASDI included in the untimely notice false and / or deceptive information.

53.    Also in violation of COBRA, Mr. Blize and ASDI failed to supply required information including a rate sheet.

54.    Through such acts, pursuant to 29 U.S.C. § 1132, Mr. Blize and ASDI are liable to Mr. Dougherty for: (1) civil penalties for each violation from the date of each such violation; (2) discretionary reasonable attorney's fees; and (3) discretionary costs of action.

## COUNT THREE
## VIOLATION OF DELAWARE'S WAGE PAYMENT & COLLECTION ACT

Formatted: Bullets and Numbering

55.    Mr. Dougherty incorporates the preceding paragraphs herein the same as though pleaded in full.

56.    In violation of Delaware's Wage Payment and Collection Act, 19 Del. C. § 1101 et seq. (the "Wage Act"), Defendants Mr. Blize and ASDI, who both were employers under the Wage Act, unlawfully withheld from Mr. Dougherty wages and / or benefits and wage

7

supplements, as those terms are defined by the Wage Act.

57.    Mr. Blize and ASDI further violated the Wage Act by failing to notify Mr. Dougherty of a reduction in his regular rate of pay, through a posted notice maintained in a place accessible to Mr. Dougherty where he normally passed, prior to the time of such reduction.

58.    Through such acts, pursuant to 19 Del. C. §§ 1103, 1112, and 1113, Mr. Blize and ASDI are liable to Mr. Dougherty for: (1) a civil penalty of not less than $1,000 nor more than $5,000 for each violation or act of non-compliance with the Wage Act; (2) the amount of all unpaid wages and / or benefits and wage supplements; (3) an additional amount of 10 percent of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure has continued (and will continue) after the days upon which payments were required or in an amount equal to the unpaid wages, whichever is smaller; (4) mandatory reasonable attorney's fees; and (5) mandatory costs of this action.

**COUNT FOUR**
**VIOLATION OF DELAWARE'S WHISTLEBLOWER PROTECTION ACT**

59.    Mr. Dougherty incorporates the preceding paragraphs herein the same as though pleaded in full.

60.    In violation of the Delaware Whistleblowers' Protection Act, 19 Del. C. § 1701, *et seq.*, (the "Whistleblower Act"), Defendants Mr. Blize and ASDI, who both are employers under the Whistleblower Act, unlawfully discharged Mr. Dougherty primarily because he verbally reported to Mr. Blize an act that was materially inconsistent with, and a serious deviation from, standards implemented pursuant to a law, rule, or regulation promulgated under the laws of Delaware, a political subdivision of Delaware, and the United States, to protect employees or other persons from health, safety, or environmental hazards while on the employer's premises or elsewhere.

8

**Formatted:** Bullets and Numbering

61.     Through such act, pursuant to 19 Del. C. §1704, Mr. Blize and ASDI are liable to Mr. Dougherty for:  (1) back wages; (2) expungement of records relating to disciplinary action and discharge; (3) actual damages; (4) discretionary attorneys' fees; and (5) discretionary costs of litigation.

## COUNT FIVE
### VIOLATION OF DELAWARE'S RIGHT TO INSPECT PERSONNEL FILE ACT

> **Formatted:** Bullets and Numbering

62.     Mr. Dougherty incorporates the preceding paragraphs herein the same as though pleaded in full.

63.     In violation of Delaware's Right to Inspect Personnel Files Act (the "Personnel Files Act"), 19 Del. C. § 730, *et seq.*, Mr. Blize and ASDI, who both are employers under the Personnel Files Act, unlawfully refused Mr. Dougherty access to a personnel file.

64.     Through such act, pursuant to 19 Del. C. § 735, Mr. Blize and ASDI are liable to Mr. Dougherty for a civil penalty of not less than $1,000 nor more than $5,000 for each violation.

## COUNT SIX
### VIOLATION OF COVENANT OF GOOD FAITH AND FAIR DEALING

> **Formatted:** Bullets and Numbering

65.     Mr. Dougherty incorporates the preceding paragraphs herein the same as though pleaded in full.

66.     Under Delaware law, Mr. Dougherty's employment relationship with ASDI included an implied covenant of good faith and fair dealing.

67.     ASDI, acting by and through its agent, servants and employees, terminated Mr. Dougherty's employment due to his verbal report to Mr. Blize regarding Ms. Blize's singling-out of the employee responsible for an applicant's failure to be hired, to which Mr. Dougherty occupied a position at ASDI to oppose.

9

68.     The actions of ASDI were taken with malice and/or disregard of Mr. Dougherty's protected rights, in that ASDI, through fraud, deceit and misrepresentation, manufactured false grounds to terminate Mr. Dougherty's employment.

69.     In addition, the actions of ASDI were in violation of federal public policy and / or public policy of the State of Delaware.

70.     ASDI, rather than conducting an employment relationship in good faith based upon fair dealing, breached the implied covenant of good faith and fair dealing under Delaware law through its actions as described in the foregoing paragraphs, and as a result, breached the employment contract with Mr. Dougherty causing significant financial injury to him.

**WHEREFORE**, Mr. Dougherty respectfully requests this Court enter judgment in favor of Mr. Dougherty and against Mr. Blize and ASDI as follows:

1.     Declaring the conduct engaged in by Mr. Blize and ASDI to be in violation of Mr. Dougherty's rights.

2.     Ordering expungement of records relating to any disciplinary action and discharge of Mr. Dougherty's employment;

3.     Awarding past lost wages (including unpaid overtime) and wage supplements;

4.     Awarding future lost wages and wage supplements in lieu of reinstatement;

5.     Awarding statutory liquidated damages and/or punitive damages;

6.     Awarding statutory penalties;

7.     Awarding attorneys' fees;

8.     Awarding costs;

9.     Awarding pre and post judgment interest; and

10.     Ordering any other relief that the Court deems just and appropriate.

10

CONNOLLY BOVE LODGE & HUTZ LLP

_____
Matthew F. Boyer (Del. Bar No. 2564)
Email: Mboyer@cblh.com
Timothy M. Holly (Del. Bar No. 4106)
Email: Tholly@cblh.com
Josiah R. Wolcott (Del. Bar No. 4796)
Email: Jwolcott@cblh.com
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899

Date: March____, 2008          (302) 658-9141

CBLH: 559661          *Attorneys for John J. Dougherty*

| Deleted: October 26, 2007 |
| Deleted: 555666 14906*00007 |

11

# EXHIBIT B



Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 438905 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Cerbu v. Chicago Bldg. Services, Inc.
N.D.Ill.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Ana CERBU, Plaintiff,
v.
CHICAGO BUILDING SERVICES, INC., an
Illinois Corporation, G. McKee Kirkpatrick and Hoan
Le, Defendants.
**No. 97 C 2215.**

June 22, 1999.

MEMORANDUM OPINION

GRADY, District J.
**\*1** Before the court is plaintiff's motion for summary
judgment pursuant to Federal Rule of Civil Procedure
56. For the reasons explained in this opinion, the
motion is denied.

BACKGROUND

The relevant facts are few. Plaintiff Ana Cerbu
worked for Chicago Building Services, Inc. ("CBSI")
and its officers, defendants G. McKee Kirkpatrick
and Hoan Le. CBSI provides cleaning and janitorial
services to area buildings on a contractual basis.
Cerbu was employed as a project manager,
essentially responsible for overseeing the cleaning
services provided to a particular building. Cerbu
brought suit against defendants, seeking
compensation for overtime pay to which she believes
she is entitled under § 207 of the Fair Labor
Standards Act ("FLSA"). The FLSA provides that
any employee who works over forty hours in one
week must be paid overtime compensation at a rate of
one and one-half times the employee's regular rate of
pay. *See* 28 U.S.C. § 207(a)(1).[FN1]

FN1. Section 207(a)(1) reads in full:
Except as otherwise provided in this section, no
employer shall employ any of his employees who in
any workweek is engaged in commerce or in the
production of goods for commerce, or is employed in
an enterprise engaged in commerce or in the

production of goods for commerce, for a workweek
longer than forty hours unless such employee
receives compensation for his employment in excess
of the hours above specified at a rate not less than
one and one-half times the regular rate at which he is
employed.

Defendants filed a motion for summary judgment,
arguing that § 213 of the FLSA exempted Cerbu from
§ 207's overtime provision. Section 213 exempts
"any employee employed in a bona fide executive,
administrative, or professional capacity" from § 207's
overtime pay coverage. 29 U.S.C. § 213(a)(1).
Defendants claimed that plaintiff was employed in
either an executive or administrative capacity while
working for them and thus is not entitled to any
overtime compensation. We held that there were
genuine issues of material fact as to whether Cerbu
was compensated on a salary basis (a required
component of both executive and administrative
capacity) and whether Cerbu's primary duty consisted
of management responsibilities (a required
component of executive capacity). Accordingly, we
denied defendants' summary judgment motion. *Cerbu
v. Chicago Bldg. Servs., Inc.*, No. 97 C 2215, 1998
WL 30689 (N.D.Ill. Jan. 22, 1998) ("*Cerbu I*").

On March 25, 1998, we granted Cerbu's motion to
dismiss CBSI without prejudice, subject to
reinstatement after CBSI's bankruptcy proceeding is
concluded. Cerbu has now filed a motion for
summary judgment against the remaining defendants,
Kirkpatrick and Le.[FN2]

FN2. Kirkpatrick and Le admit that they
qualify as "employers" within the meaning
of the FLSA. Defendants' Local Rule 12(N)
Response to Plaintiff's 12(M) Statement of
Facts at ¶¶ 2, 3.

DISCUSSION

Summary judgment "shall be rendered forthwith if
the pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 438905 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

judgment as a matter of law."Fed.R.Civ.P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See O'Connor v. DePaul Univ.,* 123 F.3d 665, 669 (7th Cir.1997)."A dispute over material facts is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ' *Kennedy v. Children's Serv. Soc'y,* 17 F.3d 980, 983 (7th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis,* 44 F.3d 567, 569 (7th Cir.1995).

**\*2** Cerbu claims that while she was employed by defendants from June 23, 1993 to January 29, 1996, she worked eight hours of overtime each week for which she was not compensated. Complaint at 3. She states: "I typically arrived at work between 3:00 p.m. and 3:30 p.m. I would usually leave around 2:00 a.m., although I left later if I needed to work additional hours to cover for absentee time of cleaners. The official hours of my shift were from 5:00 p.m. to 1:30 a.m." Affidavit of Ana Cerbu in Support of Summary Judgment ("Cerbu Affidavit"), ¶ 13.

The FLSA requires a plaintiff to demonstrate that she was "employed" by defendants during the periods of time for which she claims unpaid compensation. *See* 29 U.S.C. § 207(a)(1). To satisfy this requirement, Cerbu must show that defendants knew or should have known of her overtime work. *See Newton v. City of Henderson,* 47 F.3d 746, 748 (5th Cir.1995); *Davis v. Food Lion,* 792 F.2d 1274, 1276 (4th Cir.1986); *Forrester v. Roth's I .G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir.1981); *Bjornson v. Daido Metal U.S.A., Inc.,* 12 F.Supp.2d 837, 842 (N .D. Ill.1998). Therefore, to prevail on this motion for summary judgment, Cerbu must show that there is no genuine issue of material fact that defendants knew or should have known of her overtime work.

Cerbu concedes that "there are issues of contested material fact as to whether Defendants knew that Plaintiff routinely worked after the official end of her shift at 1:30 a.m.," but argues that there is no genuine issue that defendants knew Cerbu was working prior

to 5:00 p.m. Plaintiff's Reply Memorandum in Support of Her Motion for Summary Judgment as to Liability ("Reply") at 1-2. Thus, Cerbu contends that she is entitled to summary judgment as to defendants' liability for the portion of overtime hours that she worked before her official start time.

Cerbu's argument is untenable; judgment as a matter of law on a portion of a single claim is not an option under the Federal Rules. *See United States ex rel. Ramm Plumbing Co. v. Wil-Freds Constr., Inc.,* No. 96 C 793, 1997 WL 391456, at \*4 (N.D.Ill. July 7, 1997); *Arado v. General Fire Extinguisher Corp.,* 626 F.Supp. 506, 509 (N.D.Ill.1985); *Capitol Records, Inc. v. Progress Record Distrib., Inc.,* 106 F.R.D. 25, 28 (N.D.Ill.1985). However, the Federal Rules do permit a district court, after denying a summary judgment motion, to issue an order "specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just."Fed.R.Civ.P. 56(d). Therefore, we will examine the evidence to determine if there are uncontroverted facts here.

To reiterate, Cerbu acknowledges that there is a genuine issue of material fact as to whether defendants knew that she was performing work for them after the official end of her shift at 1:30 a.m. She also concedes that there are genuine issues of material fact as to whether her duties were primarily managerial. Reply at 1. However, Cerbu contends that it is undisputed that (1) defendants knew that she was performing work for them prior to 5:00 p.m.; and (2) she was not paid on a salary basis.

A. Work Prior to 5:00 p.m.

**\*3** Defendants argue that "[t]he company had no knowledge ... that [Cerbu] was present at work during the extra hours for which she now seeks compensation."Defendants' Memorandum in Response to Plaintiff's Motion for Summary Judgment as to Liability ("Response") at 2. They submit the Second Supplemental Affidavit of defendant Le ("Le Affidavit"). Le states that he "had no knowledge that [Cerbu] was 'typically' coming in early or leaving late" and "[t]here was no reason the company needed Ana Cerbu to come to work early."Le Affidavit, ¶¶ 9, 10.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 438905 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Cerbu contends that the Le Affidavit contradicts Le's prior deposition testimony and is an attempt to create a sham issue of fact. Le testified at his deposition as follows:

Q. What time was [Cerbu's] designated starting time?
A. Actually 5 to 1:30 at that time. *And normally, any manager they have to come little bit earlier than starting time to see, you know, any log book complaint, any tenant complaint. That's normal. We apply any manager. They do the thing like that.*
...
Q. Do you know whether other than speaking with Maria [Bukowski, the day supervisor] whether Cerbu did any other duties before 5 o'clock?
A. Ana I have no idea about. But, you know, we don't need her to do anything for our business before 5 o'clock unless she came to see the tenant. *Usually she came-like I explain to you the way manager came to the building usually half an hour in advance to see any complaint during the day.*
Q. So [Cerbu] also on a regular basis received tenant complaints before the designated starting time at 5 o'clock, correct?
A. She went to see the building manager to check the log book. Sometime complain, sometime they don't complain.
Q. So before 5 o'clock she would check with the building manager or the log book to see if there had been any tenant complaints, yes?
A. Yes.
Q. If there were, she would then investigate those complaints with the tenant, correct?
A. I think so.
Q. That would occur before 5 o'clock?
A. That about 15 minutes before 5 or half an hour before 5.

Plaintiff's Additional Materials Supporting Summary Judgment as to Liability ("Plaintiff's Additional Materials"), Ex. 1, Le Affidavit, at 84-85 (emphasis added).

"It is a well-settled rule of this Court that a [party] cannot create an issue of material fact merely by manufacturing a conflict in his own testimony by submitting an affidavit that contradicts an earlier deposition and, in turn, defeat [the opposing party's] motion for summary judgment." *Piscione v. Ernst & Young, L.L.P.,* 171 F.3d 527, 532 (7th Cir.1999) (citations omitted). When a party's sworn deposition

testimony contradicts his sworn affidavit, "the deposition testimony overrides statements made in the affidavit."*Id.*

Le's deposition testimony that Cerbu usually came to work fifteen minutes or a half-hour early in order to review complaints contradicts the statement in his affidavit that he had no knowledge that Cerbu was typically came in early. And his deposition testimony that managers had to come in earlier than their starting time to review complaints contradicts his affidavit statement that the company did not need Cerbu to come in early. There is no indication that the statements in Le's deposition resulted from mistake, confusion, or lapse of memory. Therefore, Le's deposition testimony overrides statements made in his affidavit, and the affidavit statements do not create a genuine issue of fact as to whether Le knew Cerbu typically performed work before 5:00 p.m.

**\*4** Furthermore, Kirkpatrick testified at his deposition as follows:
Q. Do you have any knowledge as to what time Ana Cerbu arrived at work each day?
A. I'm not certain. I would imagine that she was there-In fact, *I'm fairly certain that she was there well before 5 o'clock in order to perform her job of finding out from the day people what was going on.*
Q. What do you mean when you say "well before 5 o'clock"?
A. Well, because 5 o'clock the people start work at night. So that's when we actually start. That's when they punch in.
Q. Would you say she was regularly there at least an hour before the 5 o'clock punch-in time?
A. Many times I'm sure she was, yes.

Plaintiff's Additional Materials, Ex. 3, Kirkpatrick Affidavit, at 24 (emphasis added). Kirkpatrick's testimony establishes that he knew Cerbu typically performed work earlier than 5:00 p.m.

Accordingly, it is undisputed that defendants knew Cerbu regularly began work before her official start time of 5:00 p.m. We emphasize that it does not necessarily follow that there is no genuine issue as to their knowledge that these hours were overtime, or, put another way, that Cerbu was working more than forty hours per week. Thus, even if the Federal Rules permitted us to grant summary judgment on the portion of Cerbu's claim corresponding to hours

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 438905 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

worked before 5:00 p.m., we would not do so. Cerbu has not shown that there is no genuine issue of material fact that these hours were in fact overtime. All that Cerbu has shown to be uncontroverted is the narrow fact that defendants knew she regularly started work earlier than 5:00 p.m.

B. Compensation on a Salary Basis

As noted above, § 213(a)(1) exempts from § 207's overtime pay coverage those employed in a "bona fide executive, administrative, or professional capacity."Defendants have asserted the affirmative defense that Cerbu worked in an executive or administrative capacity. Answer at 4. 29 C.F.R. § 541.1(f) and 29 C.F.R. § 541.2(e)(2) each set out a "short list" of three requirements that a defendant can use to demonstrate that an employee works in an executive or administrative capacity.[FN3]One of the required elements of both exemptions is that the employee is compensated on a salary basis at a rate of not less than $250 per week.

> FN3. The relevant portions of the executive capacity "short list" are as follows: (1) the employee is "compensated on a salary basis at a rate of not less than $250 per week"; (2) the employee's "primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; and (3) the employee's job "includes the customary and regular direction of the work of two or more other employees therein."29 C.F.R. § 541.1(f).

The relevant portions of the administrative capacity "short list" are as follows: (1) the employee is "compensated on a salary or fee basis at a rate of not less than $250 per week"; (2) the employee's "primary duty consists of the performance of" "office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers"; and (3) the employee's work requires the "exercise of discretion and independent judgment."29 C.F.R. § 541.2(e)(2), (a).

The parties do not dispute that Cerbu's earnings exceeded the threshold amount; the issue is whether Cerbu received her earnings on a "salary basis." The Secretary of Labor interprets "salary basis" to mean

that the employee "regularly receives each pay period ... a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed."29 C.F.R. § 541.118(a). The Supreme Court has adopted the Secretary of Labor's view that the mere theoretical possibility of such deductions is insufficient to prove that an employee's pay is "subject to reduction." *See Auer v. Robbins*, 519 U.S. 452, 460-62 (1997). Rather, "as a practical matter," pay is subject to reduction "if there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions."*Id.* at 461.

1. Actual Practice

**\*5** In *Auer,* the Supreme Court concluded that a one-time deduction "under unusual circumstances" did not remove an employee from exempt status. *Id.* at 462.

Cerbu contends that it is undisputed fact that defendants had an actual practice of making deductions for sick days. Cerbu submits evidence showing that on her one and only sick day, February 2, 1996, defendants docked her pay. Cerbu Affidavit, ¶ 10; *id.,* Ex. B (earnings statement for relevant period).

Defendants point to the Le Affidavit, which states that on January 29, 1996, Cerbu's union requested that Cerbu be removed as a supervisor from the building where she worked, due to a union grievance. Accordingly, Cerbu was transferred to another building on January 30, 1996 and stripped of her management responsibilities. Le Affidavit, ¶ 8. Defendants argue that "[e]ven though the company allowed the plaintiff to keep her same rate of pay during the grievance process, the company demoted her from her management status and she no longer worked on a salary basis."Response at 6. Defendants contend that the one-time pay deduction on February 2 occurred when Cerbu was not a manager. Therefore, they argue, the deduction cannot be regarded as indicative of what would typically have happened if the sick day had taken place while Cerbu was in her regular management position; it was the kind of "unusual circumstance" contemplated by *Auer.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 438905 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Defendants' evidence raises a genuine issue of fact as to whether the one-time deduction was an "unusual circumstance." Thus, Cerbu's contention that it is undisputed that defendants had an "actual practice" of making deductions for sick days fails.

2. Policy Creating a "Significant Likelihood" of Sick Day Deductions

"[A]bsent an actual practice, the employer must subject employees to a policy that creates the 'significant likelihood' of ... pay deductions in order to remove the employee from salary basis status."*DiGiore v. Ryan,* 172 F.3d 454, 462 (7th Cir.1999). A policy that falls within the scope of this category must be a "clear and particularized policy-one which 'effectively communicates' that deductions will be made in specified circumstances."*Auer,* 519 U.S. at 461.

Cerbu makes a minimal attempt to show an absence of a genuine factual issue here. She maintains that while she was not covered by CBSI's sick pay policy, she was covered by her union's collective bargaining agreement, which provided her with no sick days. The agreement provided for just one personal day in addition to a paid holiday on her birthday. Cerbu Affidavit, ¶¶ 6, 8. Attached to the Cerbu Affidavit is the collective bargaining agreement, which is silent as to sick days. *Id.,* Ex. C.

However, Cerbu offers no evidence demonstrating that defendants "subjected" her to the collective bargaining agreement or that the agreement is "clear and particularized" as to sick days. Nor does she offer evidence to support her argument that the collective bargaining agreement created a significant likelihood that defendants would dock her pay for a sick day. Therefore, she does not meet her burden of showing that there is no genuine issue as to whether defendants subjected her to a policy that created a significant likelihood of pay deductions.

CONCLUSION

\*6 For the foregoing reasons, plaintiff's motion for partial summary judgment is denied. However, the court hereby finds, pursuant to Federal Rule of Civil Procedure 56(d), that defendants knew that the plaintiff regularly began work prior to her official starting time of 5:00 p.m.[FN4]

FN4. It is questionable that this ruling will eliminate much trial time, however, because there is still a genuine dispute as to how much, if any, of the work prior to 5:00 p.m. was overtime.

A status hearing will be held at 10:30 a.m. on July 7, 1999. The parties are requested to be prepared to discuss the status of CBSI's bankruptcy and whether they would be agreeable to a trial of this case by a magistrate judge.

N.D.Ill.,1999.
Cerbu v. Chicago Bldg. Services, Inc.
Not Reported in F.Supp.2d, 1999 WL 438905 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JOHN J. DOUGHERTY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-674-SLR/LPS |
| | ) | |
| ALAN BLIZE and ASDI | ) | |
| INCORPORATED, | ) | JURY TRIAL DEMANDED |
| a Delaware Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

    **AND NOW**, this _____ day of _____, 2008, the Court having considered the

Motion of Plaintiff, John J. Dougherty, to Amend Complaint, and it appearing that there is good

cause for the granting of such motion,

**IT IS HEREBY ORDERED** that Plaintiff may file the Amended Complaint in the form

proposed in Exhibit A attached to the Motion to Amend Complaint.

_____

Magistrate Leonard P. Stark