IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN J. DOUGHERTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 07-674-SLR/LPS |
| | ) | |
| ALAN BLIZE and ASDI | ) | |
| INCORPORATED, a Delaware | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION FOR JUDGMENT ON THE PLEADINGS AND TO
DISMISS PLAINTIFF'S STATE LAW CLAIMS FOR LACK
OF JURISDICTION**

Barry M. Willoughby, Esquire (Bar I.D. 1016)
Margaret M. DiBianca, Esquire (Bar I.D. 4539)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6666
Facsimile: (302) 576-3345
E-mail: bwilloughby@ycst.com
*Attorneys for Defendants*

Dated: May 2, 2008

**Table of Contents**

Page

TABLE OF AUTHORITIES ........................................................................ IV

NATURE AND STAGE OF THE PROCEEDINGS ................................... 6

SUMMARY OF ARGUMENT ................................................................... 8

STATEMENT OF FACTS ........................................................................10

ARGUMENT ...........................................................................................12

I.      THE APPLICABLE OF STANDARD OF LAW .................................12

II.     COUNT I OF THE COMPLAINT FAILS TO STATE A CLAIM
        UNDER THE FAIR LABOR STANDARDS ACT ..............................13

        A.    Count I of Plaintiff's Complaint Fails to Allege an Actionable FLSA
              Claim ...............................................................................13

        B.    Count I of Plaintiff's Proposed Amended Complaint Fails to State a
              Claim Upon Which Relief May be Granted ...............................14

III.    COUNT II OF PLAINTIFF'S COMPLAINT ALLEGING A COBRA
        VIOLATION FAILS TO STATE A CLAIM UPON WHICH RELIEF
        MAY BE GRANTED. .......................................................................16

        A.    The Cobra Statutory Framework.......................................17

        B.    The Complaint Fails to State a Claim for Untimely COBRA Notice
              as a Matter of Law............................................................18

        C.    The Complaint Fails to State a Claim for Inaccurate COBRA Notice
              as a Matter of Law............................................................20

        D.    The Complaint Fails to State a Claim for Deficient COBRA Notice as
              a Matter of Law................................................................20

IV.     PLAINTIFF HAS ABANDONED COUNT III ...................................21

V.      THIS COURT SHOULD DECLINE TO EXERCISE
        SUPPLEMENTAL JURISDICTION OVER THE STATE-LAW
        CLAIMS, WHICH DO NOT SHARE A COMMON NUCLEUS OF
        OPERATIVE FACTS WITH THE FEDERAL-LAW CLAIMS ...........22

        A.    Overview of Supplemental Jurisdiction ...............................22

B.   If the Court Dismisses Plaintiff's Federal Claims As Requested
     Above, It Should Also Dismiss the State-Law Allegations....................................23

C.   Dismissal of Plaintiff's State-Law Claims is Also Required Even If
     the Court Has Original Jurisdiction.......................................................................23

D.   Supplemental Jurisdiction Should Be Applied Sparingly When
     Federal Jurisdiction Is Predicated On the FLSA....................................................23

E.   Plaintiff's State Law Claims Involve Distinct Factual Issues and
     Proofs Not Encompassed Within His FLSA and COBRA Claims.......................25

F.   The State-Law Causes of Action Substantially Predominate Over the
     Plaintiffs' Federal Claims Under the FLSA and COBRA....................................27

CONCLUSION ............................................................................................................................29

DB02:6791337.1                                                                                              066253.1003

# TABLE OF AUTHORITIES

Error! No table of authorities entries found.**Cases**

Aguilera v. Landmark Hotel-Metairie & Benefit Resources, Inc.,
  No. 92-1815, 1992 U.S. Dist. LEXIS 19720 (E.D. La. Dec. 18, 1992) .................................. 20

Alberti v. Ron Lewis Auto. Group.,
  No. 05-100, 2006 U.S. Dist. LEXIS 65544 (W.D. Pa. Sept. 13, 2006) .................................. 17

Bell Atl. Corp. v. Twombly,
  127 S. Ct. 1965 (2007)........................................................................................................ 12

De Asencio v. Tyson Foods, Inc.,
  342 F.3d 301 (3d Cir. 2003)................................................................................................ 23

DiSabatino v. DiSabatono Bros., Inc.,
  894 F. Supp. 810 (D. Del. 1995) ......................................................................................... 17

Doherty v. Teamsters Pension Trust Fund of Phila. & Vicinity,
  142 Fed. Appx. 573 (3d Cir. 2005) ................................................................................. 23, 27

Greylag 4 Maint. Corp. v. Lynch-James,
  2004 Del. Ch. LEXIS 145 (Del. Ch. Oct. 6, 2004) ............................................................... 26

Hummer v. Sears, Roebuck & Co.,
  1994 U.S. Dist. LEXIS 3659 (E.D. Pa. Mar. 21, 1994) ........................................................ 21

Jachim v. KUTV, Inc.,
  783 F. Supp. 1328 (D. Utah 1992) ...................................................................................... 20

Kane v. U. Indep. Union Welfare Fund,
  No. 97-1505, 1998 U.S. Dist. LEXIS 1965 (E.D. Pa. Feb. 25, 1998).................................... 21

Karper v. Guardian Life Ins.,
  456 F. Supp. 2d 1375 (S.D. Ga. 2005) aff'd, (11th Cir. 2006) .............................................. 19

Kost v. Kozakiewicz,
  1 F.3d 176 (3d Cir. 1993)................................................................................................... 12

Lyon v. Whisman,
  45 F.3d 758 (3d Cir. 1995)..........................................................................................23, 24, 25

Paul v. Deloitte & Touche LLP,
  No. 06-225-MPT, 2007 U.S. Dist. LEXIS 60639 (D. Del. Aug. 20, 2007). .......................... 23

Phillips v. County of Allegheny,
  No.06-2869, 2008 U.S. App. LEXIS 2513 (3d Cir. 2008) .................................................... 12

Snook v. Del. Turnpike Admin.,
    No. 96C-09-264-SCD, 1998 Del. Super. LEXIS 452 (Del. Super. May 19, 1998) ................ 27

Turbe v. Govn't of V.I.,
    938 F.2d 427 (3d Cir. 1991) ......................................................................................... 13

United Mine Workers v. Gibbs,
    383 U.S. 715 (1966) ............................................................................................. 23, 27

Webb v. Corr. Med. Servs.,
    C.A. No. 06-31-GMS, 2008 U.S. Dist. LEXIS 11306 (D. Del. Feb. 14, 2008) ..................... 12

**Statutes**

19 Del. C. § 732 ............................................................................................................... 26

19 Del. C. § 735 ............................................................................................................... 26

19 Del. C. §§ 1701-08 ....................................................................................................... 6

19 Del. C. §§ 730-35 ......................................................................................................... 6

28 U.S.C. § 1367 ......................................................................................................... 22, 23

29 U.S.C. § 1163 ......................................................................................................... 17, 19

29 U.S.C. § 1166(a) .......................................................................................................... 18

29 U.S.C. §§ 1001-191c ..................................................................................................... 6

29 U.S.C. §§ 201-19 .......................................................................................................... 6

**Other Authorities**

70 Del. Laws, c. 460, § 3 (1996) ......................................................................................... 27

Fed. R. Civ. P. 12(c) .......................................................................................................... 12

Fed. R. Civ. P. 26(a) ........................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 12

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff's Complaint asserts six counts alleging that his former employer, Defendant ASDI, Inc., violated a various federal and state employment laws.  His allegations are a hodge-podge of unrelated claims.  Counts One and Two are federal claims, brought pursuant to the Federal Labor Standards Act ("FLSA"), and the Consolidated Omnibus Budget Reconciliation Act ("COBRA").[1]  Counts Three (now withdrawn), Four,  and Five are state-law statutory claims brought pursuant to the Delaware Wage Payment & Collection Act ("WPCA"), Delaware's Right to Inspect Personnel File Act (the "Right to Inspect" Act), and the Delaware Whistleblowers' Protection Act,  (the "Whistleblowers' Act").[2]  Count Six asserts a state common law "wrongful discharge" claim based on an alleged breach of the implied covenant of good faith and fair dealing.

Plaintiff has also named ASDI's  President and Chief Executive Officer, Alan Blize as an individual defendant.  After Defendants timely filed their Answer, the parties stipulated to a proposed scheduling order, which was signed by the Court on January 30, 2008.[3]  The Scheduling Order provides for discovery to conclude on September 18, 2008.[4]  The parties have exchanged their Initial Disclosures pursuant to Rule 26(a) as well as an initial round of written discovery.[5]  Some depositions have been scheduled but have not yet been taken.

---

[1] 29 U.S.C. §§ 201-19; 29 U.S.C. §§ 1001-191c.

[2] 19 Del. C. §§ 730-35;19 Del. C. §§ 1701-08.

[3] (D.I. 14).

[4] (D.I. 14 at ¶ 2(b)).

[5] Fed. R. Civ. P. 26(a).

DB02:6791337.1                                                                                                066253.1003

On April 1, 2008, Plaintiff filed a Motion for Leave to Amend his Complaint.[6]  Prior to filing, Plaintiff requested that Defendants stipulate to the proposed amendment.  Defendants reviewed the proposal, and researched the proposed claim but were unable to find any legal support whatsoever for it.  Plaintiff's counsel declined defense counsel's request to provide some legal precedent to support the proposal.  Plaintiff's counsel further refused to agree to stipulate to a briefing schedule for briefing of the merits of the proposed amendments in connection with Defendants' Motion for Judgment on the Pleadings and to Dismiss.

The parties completed briefing on Plaintiff's Motion to Amend on April 28, 2008, and Plaintiff has requested oral argument.[7]  The motion and request are currently pending. Defendants have also filed a Motion to Compel Discovery Responses that is pending before the Court.[8]  Contemporaneously with their Motion to Dismiss, Defendants have filed a Motion to Stay Discovery, pending the Court's ruling on the instant Motion.

---

[6] (D.I. 26).

[7] (D.I. 38)

[8] (D.I. 37)

DB02:6791337.1                                                                    066253.1003

## SUMMARY OF ARGUMENT

1.   Plaintiff's federal claims asserted in Counts I and II of his Complaint lack merit as a matter of law.

2.   Count I alleges a claim for unpaid wages.  Plaintiff alleges that he should have been paid his entire week's salary for the first week of January in 2007 due to the fact that he worked "the morning of January 2, 2007." Yet, he admits that, indeed, he *has* now been paid for that week.  Thus, there is no dispute for the Court to resolve, requiring dismissal of Count I.

3.   In any event, the FLSA only governs an alleged employers' failure to pay overtime or to pay hourly rates in accordance with the federal minimum wage.  A dispute regarding failure or refusal to pay salary or wages is governed by state law—not the FLSA.  Therefore, the FLSA is improperly alleged.

4.   To the extent that Plaintiff's proposed amended complaint can be considered, it too fails to allege a viable FLSA claim.  The proposed amendment, as further explained in Plaintiff's reply brief in support of his Motion to Amend, seeks to have the Court "retroactively convert" him from an exempt manager to a non-exempt employee entitled to "overtime wages." Plaintiff's proposed amendment claims seeks this conversion going back to the date he was first hired.  There is literally no authority for Plaintiff's claim and, if accepted, it would require the Court to ignore the entire body of case law that addressed "improper deductions."

5.   Plaintiff's COBRA claim, asserted in Count II of the Complaint similarly fails, as a matter of law.  Count II asserts a claim for an "untimely, false, or deficient notice." In the Complaint, Plaintiff admits, as he must, that he received the required COBRA notice well within the required forty-four day deadline.  He fails to identify any portion of the notice or the information contained therein that is, in any way, untrue.  Finally, he fails to identify how he was harmed.  Plaintiff's COBRA allegations are therefore unsustainable as a matter of law.

6.   Plaintiff has agreed to withdraw Count III of the Complaint.  (D.I. 38 at ¶ 14).

7.   While none of the remaining three state-law claims have merit, jurisdiction considerations dictate their dismissal because: (a) if the Court dismisses Counts I and II, there is no basis for supplemental jurisdiction over Plaintiff's state law claims; and (2) even if the Court were to conclude that either of Plaintiff's federal claims could survive the present Motion, Plaintiff's state law claims are insufficiently related to his federal claims to allow the Court to assert supplemental jurisdiction over them.

## STATEMENT OF FACTS[9]

Plaintiff began work on September 11, 2006, as ASDI's first Director of Operations.[10] In that role, Plaintiff reported directly to ASDI President and CEO, Alan Blize. Managerial employees, who had previously reported to Blize now reported to Plaintiff.

Kabana Perkins was one of the department managers who reported to Plaintiff. In November 2006, Perkins recommended to the Director of Staffing that a certain job applicant should not be hired. The Director of Staffing took Perkins' advice and rejected the applicant. According to the Complaint, when asked by the candidate for the reason for the rejection, the Director of Staffing indicated Perkins' recommendation had played a role.

Plaintiff called a meeting with Defendant Blize and the Director of Staffing to address this practice.[11] At the meeting, Plaintiff recommended that this type of information no longer be provided to job applicants "as a matter of workplace safety and to avoid violence in the workplace."[12] Defendant Blize assured Plaintiff that he had acted appropriately in "proffering constructive criticism."[13]

On Thursday, December 21, 2006, in accordance with ASDI policy, Defendant Blize conducted Plaintiff's three-month performance review. The review was unfavorable. As part of Plaintiff's one-month performance-improvement plan, Department Managers would be asked to

---

[9] The following Statement of Facts are taken directly from Plaintiff's Complaint in accordance with Rule 12(c) standards. Defendants do not concede to the validity of any of these statements except to the extent set forth in their Answer to Plaintiff's Complaint.

[10] (D.I. 1 at ¶ 12).

[11] (D.I. 1 at ¶ 17).

[12] (D.I. 1 at ¶ 18).

[13] (D.I. 1 at ¶ 19).

incur additional responsibility to enable Plaintiff to focus more on learning the nature of the company's business.

During the week following Plaintiff's review, ASDI operations were devoted to a critical project for an important new client, Cephalon Pharmaceuticals (the "Cephalon Project"). ASDI failed to meet the deadline for completion of the Cephalon Project set for Friday, December 29, 2006. This resulted in a major economic loss. On Tuesday, January 2, 2007, following the long holiday weekend, Defendant Blize held a meeting with all of the managers involved in the Cephalon Project to discuss the project's failure. At the conclusion of the meeting, Plaintiff and one other employee were put on unpaid administrative leave.[14] Plaintiff did not return to work at ASDI. ASDI continued to carry Plaintiff and his beneficiaries on the company's healthcare plan until May 3, 2007, at which time he received notice that his benefits were being terminated.[15]

---

[14] (D.I. 1 at ¶ 30).

[15] (D.I. 1 at ¶ 39).

**ARGUMENT**

I.    **THE APPLICABLE OF STANDARD OF LAW**

Defendants seek judgment on the pleading with respect to Plaintiff's federal claims and seek the dismissal of his state law claims. Both motions are governed by the same standard. The purpose of a 12(c) motion for judgment on the pleadings is to test the sufficiency of a complaint.[16]  As this Court recently explained, the standard of review for a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards that apply to a motion to dismiss under Rule 12(b)(6).[17]

Pursuant to the Rule 12(b)(6) standard as described by the United States Supreme Court in Bell Atlantic Corporation v. Twombly, a complaint does not need detailed factual allegations, but it must contain information sufficient to put the defendant on notice of the "grounds" of his "entitlement to relief."[18]  This standard requires Plaintiff to provide "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do."[19] Accordingly, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" but may not be made in a "blanket assertion of an entitlement to relief."[20] Therefore, 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to

---

[16] Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citing Fed. R. Civ. P. 12(c)).

[17] Webb v. Corr. Med. Servs., C.A. No. 06-31-GMS, 2008 U.S. Dist. LEXIS 11306, at *2 (D. Del. Feb. 14, 2008) (internal citations omitted).

[18] 127 S. Ct. 1965 (2007).

[19] Id.

[20] Webb, 2008 U.S. Dist. LEXIS 11306, at *4 (quoting Phillips v. County of Allegheny, No.06-2869, 2008 U.S. App. LEXIS 2513 (3d Cir. 2008)).

suggest the required elements."[21]  Failure to plead in accordance with these standards require that the Complaint be dismissed.[22]

## II.    COUNT I OF THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE FAIR LABOR STANDARDS ACT

The parties have briefed the viability of Plaintiff's FLSA claim to the extent that it relates to his Motion to Amend.[23]  To avoid unnecessary duplication, Defendants will address this claim only to the extent that the arguments have not been previously presented to the Court.

### A.    Count I of Plaintiff's Complaint Fails to Allege an Actionable FLSA Claim

Count One of the Complaint includes a bare assertion, unsupported by any factual allegations.  It simply states that Defendants "unlawfully paid / failed to pay" Plaintiff in violation of the FLSA.[24]  Plaintiff does not identify the dates or times for which he claims he was not paid.  Nor does he identify an amount owed, not even a reasonable explanation of the circumstances of the alleged failure to pay is included.  Plaintiff's failure to provide any basis for his claim for unpaid wages is alone a sufficient basis for dismissal as a matter of law.

Apparently recognizing the deficiency in his Complaint, in his Reply Memorandum in support of his Motion to Amend ("Reply Memo"), Plaintiff provides additional, "explanatory" details and allegations.  For the first time, Plaintiff asserted that Defendants "failed to pay Dougherty, at the time an exempt employee, his full salary for a week in which he performed work (i.e. the week of January 1, 2007)."[25]

---

[21] Id. (internal citations omitted).

[22] See Turbe v. Govn't of V.I., 938 F.2d 427, 428 (3d Cir. 1991).

[23] (D.I. 26) (Plaintiff's Motion to Amend Complaint); (D.I. 36) (Defendants' Answer to Plaintiff's Motion to Amend Complaint; (D.I. 38) (Plaintiff's Reply Memo).

[24] (D.I. 1 at ¶ 47).

[25] (D.I. 38 at ¶ 4).

Plaintiff's attempt to substitute a contention in his Reply Memo for what should have been an allegation in his Complaint is untenable.[26] The Third Circuit has "long held" that, although information put forth by a plaintiff in its brief may well satisfy the pleading requirements of Rule 8, plaintiff will not avoid dismissal where the complaint, in its present form, does not satisfy the pleading standard.

Even if the Court accepted Plaintiff's statement in his Reply Memorandum as if they had been properly pleaded in the original complaint, his claim is without merit. The FLSA covers alleged failure to pay overtime and minimum wages. It does not regulate a disputed failure to pay wages for other reasons. A claim for unpaid wages other than overtime or for non-compliance with minimum wage requirements is a question of state law.[27] Because Count I of the original Complaint does not involve a claim for overtime or for minimum wages it is properly subject to dismissal. Further, as noted above, and as Plaintiff admits in his Reply Memorandum, Defendant ASDI has paid Plaintiff in full for the week of January 2, 2007.

### B. Count I of Plaintiff's Proposed Amended Complaint Fails to State a Claim Upon Which Relief May be Granted

Plaintiff seeks leave to amend his Complaint to "plead an additional claim under the FLSA."[28] In support of this proposed amendment, Plaintiff makes a series of illogical and unsupportable allegations. Not surprisingly, Plaintiff has provided no authority to support his allegations. As the table below makes clear, each of Plaintiff's allegations are fatally flawed. Consequently, even if amendment was granted, Count One could not survive the present Motion.

---

[26] Williams v. New Castle County, 970 F.2d 1260, 1266, n.4 (3d Cir. 1992); Dongelewicz v. PNC Bank Nat'l Ass'n, 104 Fed. Appx. 811, 819 (3d Cir. 2004).

[27] 19 Del. C. § 1113(a) (authorizing private cause of action "to recover unpaid wages").

[28] (D.I. 38 at ¶1).

| Plaintiff's Contention | Fatal Flaws |
| --- | --- |
| Defendants did not pay Plaintiff for the week of January 1, 2007, despite having worked on the morning of January 2, 2007. | Defendants *did* pay Plaintiff for the full workweek and Plaintiff accepted such payment.[29] |
| By failing to pay him for the full week, Defendants were treating Plaintiff as a non-exempt employee. | Defendants did pay Plaintiff.<br><br>A one-time failure to pay an exempt employee does not result in a *de facto* conversion of his exempt status.[30] |
| Plaintiff's exempt status was lost as a result of an "improper deduction." | Plaintiff never alleged that he was subject to any *deduction* in pay.[31]<br><br>He claims that he was not paid for a single workweek. He was never paid again in any form, whether hourly or salary because he never returned to work. Employers have no obligation to pay an employee who does not work any portion of the workweek.[32]<br><br>Having never been subject to a deduction of pay, Plaintiff cannot sustain this claim. |

---

[29] (D.I. 38 at ¶ 9) (admitting in a parenthetical that Plaintiff was, indeed, paid for the week of January 1, 2007).

[30] McDowell v. Cherry Hill Twp., No. 04-1350, 2005 U.S. Dist. LEXIS 29327, at *24-25 (D.N.J. Nov. 21, 2005); see also Wright v. Monroe County, 05-6268T, 2007 U.S. Dist. LEXIS 35143, at * (W.D.N.Y. May 14, 2007) (holding that the plaintiff's suspension without pay for violation of work rules—as opposed to work rules, does not create an "actual practice" of docking the pay of salaried employees with a "clear and particularized policy . . . which effectively communicates that deductions will be made in specified circumstances) (internal quotations omitted.

[31] Mendoza v. New Orleans, No. 06-3040, 2007 U.S. Dist. LEXIS 38474, at *18 (E.D. La. May 24, 2007) (emphasis supplied), objection overruled by 2007 U.S. Dist. LEXIS 40398 (E.D. La. June 1, 2007) (citing Cowart v. Ingalls Shipbuilding, Inc., 213 F.3d 261, 266 (5th Cir. 2000)).

[32] 29 C.F.R. § 541.602(b) ("exempt employees need not be paid for any workweek in which they perform no work").

| Plaintiff's Contention | Fatal Flaws |
| --- | --- |
| Following this "conversion" to non-exempt status, Plaintiff was entitled to overtime. | Plaintiff did not lose his exempt status. Plaintiff was paid in full and was not subject to any deduction in pay.[33] |
| As a result of this "conversion," Plaintiff "should be considered non-exempt for the time prior to January 1, 2007, and is entitled to unpaid overtime" for all weeks during which he worked in excess of 40 hours. | There is no precedent that could support a *retroactively imposed* loss of exempt status. The statute expressly specifies that, if an exemption is lost, it shall be deemed lost *only* during a time period, if any, when other, current, employees, who work in the same department and report to the same manager as Plaintiff, were also subject to improper deductions.[34] <br><br> If no such persons exist, the exemption has not been lost.[35] |
| The entitlement to unpaid overtime should be calculated retrospectively, going back to Plaintiff's first day of employment with ASDI. | As argued in Defendants' Answer to Plaintiff's Motion to Amend, there is no merit to the assertion that, contrary to the rule set forth above, Plaintiff should lose his exempt status for the entire period of his employment. |

## III.   COUNT II OF PLAINTIFF'S COMPLAINT ALLEGING A COBRA VIOLATION FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Count II of Plaintiff's Complaint does not allege a viable COBRA claim. Plaintiff's

claim seems to center around his insistence that Defendants identify his "official" date of

---

[33] Mendoza, 2007 U.S. Dist. LEXIS 38474, at *16 (explaining that the FLSA's prohibition against deductions specifically addresses "piecemeal deductions" for disciplinary infractions, not demotions or terminations).

[34] McDowell v. Cherry Hill Twp., No. 04-1350, 2005 U.S. Dist. LEXIS 29327, at *24-25 (D.N.J. Nov. 21, 2005) (explaining that the exemption is lost only during the time period in which the improper deductions were made for the employees in the *same job classification working for the same manager*"); see also Wright v. Monroe County, 05-6268T, 2007 U.S. Dist. LEXIS 35143, at * (W.D.N.Y. May 14, 2007) (holding that the plaintiff's suspension without pay for violation of work rules—as opposed to work rules, does not create an "actual practice" of docking the pay of salaried employees with a "clear and particularized policy . . . which effectively communicates that deductions will be made in specified circumstances) (internal quotations omitted).

[35] See Baden-Winterwood v. Life Time Fitness, No. 06-99, 2007 U.S. Dist. LEXIS 49777, at *42-43 (S.D. Oh. July 10, 2007) (awarding summary judgment to the plaintiffs who were group leaders all working for the defendant but not to employees who were not group leaders).

termination.  Plaintiff's last day at work at ASDI was January 2, 2007, at which time he was put on administrative leave until further notice.[36]  He did not return to work and, therefore, did not get paid his weekly salary.  He was kept on the ASDI health insurance plan until May 3, 2007, at ASDI's expense.[37]

### A.    The Cobra Statutory Framework

Plaintiff alleges that, on May 18, 2007, he received a two-page summary of his right to elect continued health care coverage (the "COBRA Notice").[38]  The COBRA Notice identified May 3, 2007, as the date of the qualifying event.[39]  At Plaintiff's request, ASDI sent Plaintiff a COBRA price schedule (the "Rate Sheet"), on June 12, 2007.[40]

The key date in the COBRA statutory framework is the date of the "qualifying event."  A qualifying event is defined as an event that "would result in the loss of coverage by a qualified beneficiary," but for the option to continue such coverage through COBRA.[41]  Termination of a beneficiary's employment is but one example of what may be a qualifying event.[42]

The occurrence of a qualified event triggers several requirements.  First, the employer must notify the "Plan Administrator" within thirty days of the qualifying event.[43]  Then, the Plan

---

[36] (D.I. 1 at ¶ 30).

[37] (D.I. 1 at ¶ 39).

[38] (D.I. 1 at ¶ 40).

[39] (D.I. 1 at ¶ 41).

[40] (D.I. 1 at ¶ 44).

[41] 29 U.S.C. § 1163 (explained in Alberti v. Ron Lewis Auto. Group., No. 05-100, 2006 U.S. Dist. LEXIS 65544, at *12 (W.D. Pa. Sept. 13, 2006)).

[42] See, e.g., DiSabatino v. DiSabatono Bros., Inc., 894 F. Supp. 810, 815 (D. Del. 1995); 29 U.S.C. § 1163(2).

[43] 29 U.S.C. § 1166(a)(2); Alberti, 2006 U.S. Dist. LEXIS 65544, at *12.

Administrator has fourteen days to send the beneficiary a COBRA Notice.[44]  A COBRA notice shall be deemed timely so long as it is sent to the beneficiary within forty-four days of the qualifying event.[45]

Count II of Plaintiff's Complaint asserts three COBRA violations.  Plaintiff claims that Defendants violated his COBRA rights by: (1) failing to provide timely COBRA notice; (2) including false information in the notice; and (3) failing to provide a rate sheet as required. There is no basis in fact or law for Plaintiff's allegations. Indeed, Plaintiff does not even allege any supposed harm from the claimed violations.  Further, the facts asserted in the Complaint show on their face that Plaintiff's claims are insufficient as a matter of law.

**B.    The Complaint Fails to State a Claim for Untimely COBRA Notice as a Matter of Law**

The first of the three faults Plaintiff assigns to the COBRA notice is the timeliness of its issuance.  Plaintiff claims that the COBRA Notice was issued late, although he does not indicate what he contends to be the correct length of time to be.  As set forth above, COBRA mandates that the employee-beneficiary be provided notice within forty-four days of the qualifying event.[46]

The qualifying event in the present matter occurred, then, on the forty-fourth day following May 3, 2007—July 17, 2007.[47]  Plaintiff's Complaint states that he received the COBRA Notice on May 18, 2007, and the Rate Sheet on July 13, 2007.  All elements of the required notice, therefore, were timely.

---

[44] 29 U.S.C. §§ 1166(a)(4)(A) and (c).

[45] Alberti, 2006 U.S. Dist. LEXIS 65544, at *12,

[46] Specifically, the employer must notify the administrator within 30 days of the date of the qualifying event, 29 U.S.C. § 1166 (a)(2), and the administrator, in turn, has fourteen days within which to notify the beneficiary of his COBRA rights.  29 U.S.C. §§ 1166(a)(4)(A) and (c).

[47] See time and date.com, available at www.timeanddate.com/date/dateadded.html, last accessed on April 28, 2008, used to calculate forty-four days from May 3, 2007.

18

To the extent that Plaintiff alleges that the notice was due to him by forty-four days from January 2, 2007, his last day of work at ASDI, he misinterprets the COBRA requirements. The date of Plaintiff's termination from ASDI is not relevant to this analysis, despite Plaintiff's fixation with that date. Similarly, his last day of work is not relevant to the issue of timeliness.

The notice deadline is calculated using the date of the *qualifying event* as the starting point. Therefore, the only date relevant to the issue of timelines is the date of the qualifying event. A qualifying event occurs only if the event "would result in loss of coverage."[48] The qualifying event has not occurred where, as here, the plaintiff continues to be enrolled in the employer's health-care plan while he or she is on administrative leave. Indeed, it does not matter what the last day was that Plaintiff reported to ASDI for work. The critical date was the qualifying event. Plaintiff does not dispute that his ASDI-coverage continued, unchanged, until May 2007. [49]

Hence, the qualifying event did not occur until May 3, 2007, at which time he was subject to the requisite "loss of coverage." Because Plaintiff continued to be covered under ASDI's group health plan until sometime in May 2007, "as a matter of law, the events alleged by [Plaintiff] in the [] Complaint . . . are not qualifying events within the meaning of § 1163."[50]

---

[48] 29 U.S.C. § 1163.

[49] See Karper v. Guardian Life Ins., 456 F. Supp. 2d 1375 (S.D. Ga. 2005) (holding that the termination of plaintiff's employment was not a qualifying event because the plaintiff continued to receive health care following his termination), aff'd, (11th Cir. 2006).

[50] See Jachim v. KUTV, Inc., 783 F. Supp. 1328, 1332 (D. Utah 1992) (holding that there was no qualifying event until the employee-plaintiff lost coverage, despite the fact that ten months had passed since his hours were first reduced and then was given a six-month personal leave of absence).

### C.    The Complaint Fails to State a Claim for Inaccurate COBRA Notice as a Matter of Law

Plaintiff also alleges that the notice contained "false and / or deceptive" information.  The Complaint does not provide any indication as to what information Plaintiff claims to be "false" or "deceptive."  The only information identified in the Complaint is that the notice stated that "the date of Mr. Dougherty's termination (the date he qualified for COBRA coverage) was May 3, 2007."[51]  If he contends that this information is somehow inaccurate, he does not so allege in the Complaint and the Court need not infer facts that have not been pleaded.

In any event, Plaintiff's self-serving assertions about his termination date are simply not relevant to his COBRA arguments.  The May 3, 2007 notice he received states "Benefits Termination Date."  "Contrary to Plaintiff's assertions, however, the 'notice' cited by Plaintiff indicates that [his] *health plan*, not [his] employment, was terminated" on May 3, 2007.[52]

### D.    The Complaint Fails to State a Claim for Deficient COBRA Notice as a Matter of Law

The third alleged deficiency is similarly unsupportable.  Plaintiff alleges that the notice did not contain all of the "required information" but does not identify what information he believes is required.[53]  Yet, the Complaint plainly states that "ASDI sent Mr. Dougherty a rate sheet on June 13, 2007."[54]  Even if the Court were to infer, which it need not do, that the referenced information is the "rate sheet," Plaintiff's claim still could not survive dismissal.

---

[51] (D.I. 1 at ¶ 41).

[52] Aguilera v. Landmark Hotel-Metairie & Benefit Resources, Inc., No. 92-1815, 1992 U.S. Dist. LEXIS 19720, at *7 (E.D. La. Dec. 18, 1992) (holding that the requirements of COBRA had not been changed because there had not been a qualifying event where the plaintiff was injured on the job and did not return to work but was kept on health plan, thus, had not been subject to an event that caused a loss of coverage) (emphasis in original).

[53] (D.I. 1 at ¶ 52).

[54] (D.I. 1 at ¶ 44).

Whether the rate sheet was provided in the same package as the rest of the COBRA notification information is not relevant to the sufficiency of the notice. The sufficiency standard is low:

> In order to prevail on the counts involving the allegedly defective notification, Plaintiff must show that Defendants did not provide 'a simple notification that the employee has the right to continued coverage.'[55]

Further, the established law of this Circuit requires only a good faith effort by employers when providing COBRA information to beneficiaries. Plaintiff's apparent argument, that that notice is automatically defective if it lacks specific kinds of COBRA-related information is unsupported—and, indeed, is contradicted—by applicable authorities."[56] In short, Plaintiff admits that he received the required price schedule and that he received it within the prescribed timeframe. Plaintiff does not, in any other way, contend that the notice he was provided included less than "all material details" that a plan beneficiary could reasonably need.

Furthermore, a review Plaintiff's Complaint also reveals the absence of any claimed harm caused by the allegedly defective notice. Presumably, one of Plaintiff's purposes in arguing such an extreme position is to artificially create a basis for federal jurisdiction over his meritless state law claims.

## IV.    PLAINTIFF HAS ABANDONED COUNT III

Defendants briefly address Count Three before turning to Counts Four, Five, and Six. Plaintiff withdrew Count Three in his Reply Memorandum.[57] Attached to Plaintiff's Reply

---

[55] Kane v. U. Indep. Union Welfare Fund, No. 97-1505, 1998 U.S. Dist. LEXIS 1965, at *13 (E.D. Pa. Feb. 25, 1998) (quoting Hummer v. Sears, Roebuck & Co., 1994 U.S. Dist. LEXIS 3659, at *4 (E.D. Pa. Mar. 21, 1994)).

[56] Hummer, 1994 U.S. Dist. LEXIS 3659, at *18-19.

[57] (D.I. 38 at ¶ 14).

Memorandum as Exhibit C is a second revised version of the proposed Amended Complaint in which Count Three has been deleted.[58]  Dismissal is, therefore, unopposed as to this count.[59]

## V.    THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE-LAW CLAIMS, WHICH DO NOT SHARE A COMMON NUCLEUS OF OPERATIVE FACTS WITH THE FEDERAL-LAW CLAIMS

### A.    Overview of Supplemental Jurisdiction

The Court's exercise of supplemental jurisdiction over the state-law claims is governed by 28 U.S.C. § 1367.  Section 1367(a) provides that the Court, subject to certain exceptions, "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[60]  The statute also provides a list of four circumstances in which a district court can decline to exercise supplemental jurisdiction. Specifically, a court may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the state claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  [61]

---

[58] (D.I. 38-2).

[59] Although Plaintiff's withdrawal of Count III changes the numbering of the final three counts in the Complaint, the numbering used in this brief will correspond to the numbering in the original Complaint for ease of reference.

[60] 28 U.S.C. § 1367(a).

[61] 28 U.S.C. § 1367(c).

**B.    If the Court Dismisses Plaintiff's Federal Claims As Requested Above, It Should Also Dismiss the State-Law Allegations**

For the reasons set forth above, Plaintiff's FLSA and COBRA claims should be dismissed as a matter of law.  If the Court grants Defendants' Motion to Dismiss with respect to Counts One and Two, it should decline to exercise jurisdiction over Counts Four, Five and Six for lack of original jurisdiction.[62]

**C.    Dismissal of Plaintiff's State-Law Claims is Also Required Even If the Court Has Original Jurisdiction**

Supplemental jurisdiction raises issues of constitutional proportion and state law comity. The analysis, of course, begins with 28 U.S.C. § 1367(a).  A district court may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[63]  This requires that the state and federal claims derive from a "common nucleus of operative facts."[64]  The nature of the Court's inquiry is case specific and fact sensitive.[65]

**D.    Supplemental Jurisdiction Should Be Applied Sparingly When Federal Jurisdiction Is Predicated On the FLSA**

The Third Circuit Court of Appeals has addressed the thin scope of supplemental jurisdiction when federal jurisdiction is based on the FLSA.  In Lyon v. Whisman, the Court of Appeals _sua sponte_ held that an employee could not include her state-law claims for breach of

---

[62] Paul v. Deloitte & Touche LLP, No. 06-225-MPT, 2007 U.S. Dist. LEXIS 60639 (D. Del. Aug. 20, 2007).

[63] 28 U.S.C. § 1367(a).

[64] De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003); United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

[65] Lyon v. Whisman, 45 F.3d 758, 760 (3d Cir. 1995); Doherty v. Teamsters Pension Trust Fund of Phila. & Vicinity, 142 Fed. Appx. 573 (3d Cir. 2005).

23

contract relating to an unpaid bonus along with her FLSA claim for unpaid overtime.[66]  The

Court found that Lyon's FLSA overtime claim involved narrow, well-defined factual issues,

while her state-law claims relating to failure to pay a bonus were quite distinct.[67]  The "only link

between Lyon's FLSA and state-law claims," the Court of Appeals found, was "the general

employer-employee relationship between the parties." Id. at 762.  The Third Circuit held this

relationship was insufficient to establish a common nucleus of facts to support supplemental

jurisdiction.[68]

     The Court in Lyon also questioned whether Congress intended district courts to have

broad jurisdiction over state law claims when federal question jurisdiction is premised on a

narrow statute such as the FLSA.[69]  The Court of Appeals observed that the FLSA had a limited

purpose, narrowly focusing on minimum wage and maximum working hours.[70]  It found "no

indication that Congress passed the FLSA with the expectation that it was authorizing federal

courts to exercise far-reaching jurisdiction over state-law disputes arising from employment

relationships."[71]

     The holding in Lyon bears particular significance to the matter before this Court.

Plaintiff's only bases for asserting original federal jurisdiction are his FLSA and COBRA claims.

The Third Circuit pointed out the limited purpose of the FLSA in Lyon. By any measure,

COBRA is even more limited.  An examination of Plaintiff's state law claims here reveals they

---

[66] 45 F.3d 758 (3d Cir. 1995).

[67] Id. at 763.

[68] Id. at 762-63.

[69] Id.

[70] Id. at 764.

[71] Id.

have little in common with his strained claim for unpaid overtime and even less in common with his merit less COBRA allegations.

      **E.**    **Plaintiff's State Law Claims Involve Distinct Factual Issues and Proofs Not Encompassed Within His FLSA and COBRA Claims**

Plaintiff's FLSA count is based solely on an unfounded and bizarre claim that he was somehow "retroactively converted" to an hourly employee.  As noted above, this claim has no support in the law and is directly contrary to FLSA regulations. Indeed, as the Third Circuit noted in <u>Lyon</u>, the FLSA is a statute "narrowly focusing on minimum wage rates and maximum working hours."[72]  Likewise, his COBRA claim is based on a convoluted argument that ASDI somehow engaged in a technical violation of the statute that did not result in any harm to him. Of course, above, there simply is no factual basis for Plaintiff's claims since ASDI provided the required notices within the prescribed time limits.

Plaintiff's limited federal claims bear no relation to his state-law claims.  Counts Four and Five of his complaint essentially allege "wrongful discharge" claims pursuant to the Delaware Whistleblowers Protection Act and the state common law exception to employment at will known as the breach of the implied covenant of good faith and fair dealing.  The purported factual underpinning for these claims bears no relation to Plaintiff's FLSA claim or his COBRA claim.

Other than arising out of Plaintiff's employment relationship with ASDI, the Counts have nothing in common.  <u>Lyon</u> and other authorities makes it clear that the fact that the claims arise out of the parties' employer/employee relationship is insufficient to establish supplemental jurisdiction.

---

[72] 45 F. 3d at 764.

                              

Plaintiff's other remaining state law claim, is alleged technical violation of the state Personnel File statute that similarly has no relation to his federal FLSA and COBRA claims. Count Five of Plaintiff's Complaint purports to allege a violation of Delaware Right to Inspect Personnel Files Act, which, in part, requires employers to permit an employee, upon request, to inspect his own personnel files.[73]  Here again, Plaintiff has failed to allege any resulting harm. Factually, his claim is based on a single e-mail he claims he sent ASDI requesting an opportunity to review his personnel file.  Neither he, nor his counsel, ever followed up with the alleged request.

Regardless of the factual merits, the Act does not provide for a private right of action, thus requiring dismissal of this Count.  The Act provides that, in the event that an employer refuses a properly made request, the Court may award "a civil penalty of no less than $1,000 and no more than $5,000 for each violation."[74]  "The mere existence of a violation of a code or statute does not automatically confer" a private right of action.[75]

Absent an express statutory authorization creating or denying a private remedy, the court must look to see whether the requisite legislative intent is implicit in the text, structure or purpose of the statute.  "A statutory private remedy will be available only if legislative intent to provide such remedy is present."[76]  Here, the legislative intent is clearly stated in the Synopsis of

---

[73] 19 Del. C. § 732

[74] 19 Del. C. § 735(a).

[75] Greylag 4 Maint. Corp. v. Lynch-James, 2004 Del. Ch. LEXIS 145, at *31 (Del. Ch. Oct. 6, 2004).

[76] Snook v. Del. Turnpike Admin., No. 96C-09-264-SCD,1998 Del. Super. LEXIS 452, at *4 (Del. Super. May 19, 1998)

the bill, which states that "the laws [affected by the bill] are enforced by the Labor Law Enforcement Section of the Department of Labor."[77]

Plainly, Article III and consideration of the doctrine of state-federal comity require that the state courts be given the first opportunity to interpret the statute.[78]  Likewise, Plaintiff's claims under the state whistleblower statute and for "wrongful discharge" based on state common-law precedent present unique facts and novel theories that the state courts should address.

### F. The State-Law Causes of Action Substantially Predominate Over the Plaintiffs' Federal Claims Under the FLSA and COBRA

Another dispositive reason for this Court to decline to exercise supplemental jurisdiction is because the state-law causes of action substantially predominate over the FLSA and COBRA claims.[79]  The Third Circuit in De Asencio found that where "the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."[80]

Differences between the comprehensiveness of the remedies available under the state whistleblower act and Plaintiff's common law "wrongful discharge" claims are apparent. Plaintiff's bizarre FLSA claim is not only novel (and completely lacking in merit) but is indisputably narrow.  The same is true for his claim for an alleged technical violation of COBRA.  These factors weigh against the exercise of supplemental jurisdiction over the larger

---

[77] 70 Del. Laws, c. 460, § 3 (1996) (Synopsis, which states, "Currently, all the laws are enforced by the Labor Law Enforcement Section of the Department of Labor . . .").

[78] Doherty, 142 Fed. Appx. 573.

[79] See 28 U.S.C. § 1367(c)(2).

[80] DeAsencio, 342 F.3d at 309 (quoting Gibbs, 383 U.S. at 726).

and amorphous whistleblower and "wrongful discharge claims."  Specifically, the FLSA remedy sought here is only for overtime compensation for hours worked over 40 in a workweek, while the scope of the remedies available to Plaintiff under the state whistleblower and implied covenant claims is far broader.[81]

The bottom line in this case is that Plaintiff's state law claims will inevitably predominate over the FLSA and COBRA claims making the exercise of supplemental jurisdiction by the Court in advisable.  Indeed, as in <u>Lyon</u>, given the Article III ramifications, if the Court exercises supplemental jurisdiction and Plaintiff's claims somehow survive to trial, the paries may find that the Court of Appeals nullifies any verdict on the grounds that the federal courts lack jurisdiction.

---

[81] <u>Id.</u> at 310 n.13.

DB02:6791337.1                                                         066253.1003

## CONCLUSION

For the reasons set forth in the brief above, Defendants Alan Blize and ASDI Inc.,

respectfully request that the Court stay discovery pending the resolution of their Motion for

Judgment on the Pleadings on all Counts of Plaintiff's Complaint.


Respectfully submitted,


/s/ Barry M. Willoughby
Barry M. Willoughby, Esquire (Bar I.D. 1016)
Margaret M. DiBianca, Esquire (Bar I.D. 4539)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6666; -5008
Facsimile: (302) 571-3345; -3476
E-mail: bwilloughby@ycst.com; mdibianca@ycst.com
Attorneys for Defendants

Dated: May 2, 2008

29