## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN J. DOUGHERTY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-674-SLR/LPS |
| | ) | |
| ALAN BLIZE and ASDI | ) | |
| INCORPORATED, | ) | JURY TRIAL DEMANDED |
| a Delaware Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND TO
## DISMISS PLAINTIFF'S STATE LAW CLAIMS

Matthew F. Boyer (Del. Bar No. 2564)
Timothy M. Holly (Del. Bar No. 4106)
Josiah R. Wolcott (Del. Bar No. 4796)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
(302) 658-9141
*Attorneys for John J. Dougherty*

Date: May 19, 2008
CBLH: 610515

TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

SUMMARY OF THE ARGUMENT ...........................................................................2

STATEMENT OF FACTS ......................................................................................4

ARGUMENT.......................................................................................................9

    I.      The Standard of Review...............................................................................9

    II.     The Complaint States a Federal FLSA Claim................................................9

    III.    The Complaint States a Federal COBRA Claim...........................................15

    IV.    This Court Should Exercise Supplemental Jurisdiction Over
          the State Law Claims ................................................................................18

          A.    Dougherty's State and Federal Claims Form the Same Case or
                Controversy...................................................................................18

                1.      The FLSA and COBRA claims confer federal
                        question subject matter jurisdiction ....................................19

                2.      All claims share a common nucleus of operative fact .......19

                        a.     Whistleblower Protection Act Claim........................20

                        b.     Right to Inspect Personnel File Act Claim ...............21

                        c.     Covenant of Good Faith and Fair Dealing Claim .....22

                3.      Each of Dougherty's claims would be
                        expected to be adjudicated in one judicial proceeding ......23

          B.    The State Law Claims Do Not Predominate
                Over The Federal Claims.................................................................24

          C.    This Court Also Has Diversity Jurisdiction
                Over the State Law Claims ..............................................................26

CONCLUSION....................................................................................................28

## TABLE OF CITATIONS

**CASES**.................................................................................................................**PAGE**

*Alberti v. Ron Lewis Auto Group*,
    2006 WL 2773254 (E.D. Pa.) ........................................................................ 16

*Bell Atl. Corp. v. Twombly*,
    127 S.Ct. 1955 (2007).................................................................................. 2, 9

*Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*,
    12 F.3d 1292 (3d Cir. 1993)........................................................................ 16

*Chesnut v. Montgomery*,
    307 F.3d 698 (8th Cir. 2002) ...................................................................... 17

*Dalheim v. KDFW-TV*,
    918 F.2d 1220 (5th Cir. 1990) .................................................................... 10

*Davis v. Mountaire Farms, Inc.*,
    2008 WL 1993022 (D. Del.) ...................................................................... 10

*De Asencio v. Tyson Foods, Inc.*,
    342 F.3d 301 (3d Cir. 2003)........................................................................ 25

*Green v. Fund Asset Mgmt., L.P.*,
    245 F.3d 214 (3d Cir. 2001)..................................................................... 9, 21

*Idaho Sheet Metal Works, Inc. v. Wirtz*,
    383 U.S. 190 (1966).................................................................................... 10

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)........................................................... 19, 20, 21

*Int'l Assn. of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute Envtl. Services, Inc.*,
    814 F.Supp. 392 (D. Del. 1993).................................................................. 18

*Kennedy v. Commonwealth Edison Co.*,
    410 F.3d 365 (7th Cir. 2005) ...................................................................... 11

*Klem v. County of Santa Clara*,
    208 F.3d 1085 (9th Cir. 2001) .................................................................... 11

*Lentino v. Fringe Emp. Plans, Inc.*,
    611 F.2d 474 (3d Cir. 1979)........................................................................ 23

*Lincoln Gen. Hosp. v. Blue Cross/Blue Shield,*
    963 F.2d 1136 (8th Cir. 1992) ..................................................................... 17

*Lyon v. Whisman,*
    45 F.3d 758 (3d Cir. 1995)........................................................................... 20

*MacFadden Holdings, Inc. v. John Blair & Co.,*
    1986 WL 1171567 (D. Del.) ......................................................................... 24

*Marino v. Cross Country Bank,*
    2003 WL 503257 (D. Del.)........................................................................... 23

*McDowell v. Krawchison,*
    125 F.3d 954 (6th Cir. 1997) ....................................................................... 17

*McLaughlin v. Liberty Mut. Ins. Co.,*
    224 F.R.D. 304 (D. Mass. 2004)................................................................... 26

*Mitchell v. Kentucky Finance Co.,*
    359 U.S. 290 (1959)..................................................................................... 10

*Neely v Club Med Mgmt. Services, Inc.,*
    63 F.3d 166 (3d Cir. 1995)........................................................................... 26

*Peter Bay Homeowners Ass'n, Inc. v. Stillman,*
    294 F.3d 524 (3d Cir. 2002)......................................................................... 24

*Phillips v. County of Allegheny,*
    515 F.3d 224 (3d Cir. 2008).......................................................................... 9

*Pryzbowski v. U.S. Healthcare, Inc.,*
    245 F.3d 266 (3d Cir. 2001)......................................................................... 19

*United Mine Workers v. Gibbs,*
    383 U.S. 715 (1966)..................................................................................... 19

*Wilkerson v. New Media Technology Charter School, Inc.,*
    522 F.3d 315 (3d Cir. 2008).......................................................................... 9

## STATUTES

19 *Del. C.* § 730 ............................................................................................... 1, 22

19 *Del. C.* § 732 ................................................................................................... 22

19 *Del. C.* § 735(a)............................................................................................... 22

19 *Del. C.* § 1101…………………………………………………………………..14

19 *Del. C.* § 1701 ............................................................................................................1

28 U.S.C § 1367(c) .........................................................................................................24

28 U.S.C. § 1331 ............................................................................................................19

28 U.S.C. § 1332(a) ........................................................................................................26

28 U.S.C. § 1367(a) ........................................................................................................18

28 U.S.C. § 1367(c)(2) ...................................................................................................24

28 U.S.C. § 1367(c) ........................................................................................................24

28 U.S.C. § 1653 ............................................................................................................26

29 U.S.C. § 1132 ............................................................................................................19

29 U.S.C. § 1132(c)(1) ...................................................................................................15

29 U.S.C. § 1132(e) ........................................................................................................15

29 U.S.C. § 1161 ..............................................................................................................1

29 U.S.C. § 1163(2) ........................................................................................................15

29 U.S.C. § 1166(a)(2) ...................................................................................................15

29 U.S.C. § 1166(c) ........................................................................................................15

29 U.S.C. § 201 ................................................................................................................1

**Rules**

29 C.F.R. § 2575.502c-1 .................................................................................................15

29 C.F.R. § 541.602(a) ....................................................................................................10

29 C.F.R. § 541.602(b)(5) ...............................................................................................10

29 C.F.R. § 541.602(b)(6) ...............................................................................................10

29 C.F.R. § 541.603(a) ...........................................................................................1, 10, 11

29 C.F.R. § 541.603(b) .......................................................................................10, 11, 13

29 C.F.R. § 541.603(c) .............................................................................................11, 13

## OTHER AUTHORITIES

5C Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure*
§ 1368 at 230 (3d ed. 2004) ................................................................................................ 7

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff John J. Dougherty ("Dougherty") brought this action on October 26, 2007, against his former employers, Alan Blize and ASDI, Incorporated ("Defendants"). DI 1. Dougherty's claims arise out a single nucleus of operative facts, triggered by Dougherty's report that Alan Blize's spouse, Trula Blize, ASDI's Director of Staffing, had created a risk of workplace violence by divulging to a questionable job applicant the identity of the manager whose recommendation resulted in his rejection. Within weeks, Dougherty was escorted off the premises on an irrational pretext, then forced to dangle for over four months before ASDI finally responded to his inquiries regarding his employment status and statutorily-required notifications. Defendants' conduct violated: (1) the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, (2) the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161 *et seq.*, (3) the Delaware Whistleblower Protection Act, 19 Del. C. § 1701 *et seq.* ("Whistleblower Act"), (4) the Delaware Right to Inspect Personnel File Act, 19 Del. C. § 730 *et seq.* ("Personnel File Act"), and (5) the covenant of good faith and fair dealing. Defendants answered the Complaint on November 26, 2007. DI 8.

On April 1, 2008, within the time frame ordered by this Court (DI 14), Dougherty filed the Motion to Amend his Complaint. DI 26. Defendants opposed the Motion to Amend (DI 36) and also filed a Motion for Judgment on the Pleadings. DI 41. This is Dougherty's Answering Brief in Opposition to Defendants' Motion.[1]

---

[1]     Defendants incorrectly state that Dougherty's counsel "declined" a request for legal precedent supporting the Amended Complaint. DI 42 at 6. On March 26, 2008, Dougherty responded to such request by referring Defendants to the relevant CFR provision, § 541.603(a). Exhibit A. Defendants also incorrectly suggest that Dougherty was uncooperative regarding coordination of Dougherty's Motion to Amend and

## SUMMARY OF THE ARGUMENT

1.   The allegations in Dougherty's Complaint and his proposed First Amended Complaint state more than "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements. *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007).

2.   Dougherty's allegations raise a reasonable expectation that discovery will reveal evidence proving his FLSA claim: i.e., that Defendants not only improperly deducted Dougherty's salary during a workweek in which he worked, but also had a practice of making similar improper deductions, thereby forfeiting their right to claim the exemption.

3.   Dougherty's allegations raise a reasonable expectation that discovery will reveal that Defendants breached their COBRA duty to timely send to Dougherty information that adequately informed him, a qualified beneficiary, of the coverage he was entitled to receive and the money that he owed in order to maintain this coverage.

4.   This Court has jurisdiction over Dougherty's state law claims because all his claims—federal and state—arise from a common nucleus of operative fact:   ASDI's pattern of irrational, retaliatory conduct after Dougherty called to Alan Blize's attention the workplace safety issue that Trula Blize's conduct had caused.   Dougherty's allegations are more than sufficient to raise a reasonable expectation regarding his state

---

Defendant's anticipated motion for judgment on the pleadings. *Id.*   Defendants proposed to stipulate to the already-filed Motion to Amend but later changed their minds. Exhibit B.  Given that Defendants were proposing to file the motion for judgment on the pleading over six months into the case, after answering the initial complaint, Dougherty stated that briefing on such a motion should be pursuant to the Local Rules rather than on a schedule that would have doubled the allotted briefing time. Exhibit C.

law claims under the Whistleblower Act, the Personnel File Act, and the covenant of good faith and fair dealing.

**STATEMENT OF FACTS**[2]

Dougherty is a Pennsylvania resident who was employed by ASDI Incorporated ("ASDI") in New Castle County, Delaware, from September 2006 until some time in 2007. DI 38, Ex. C ¶ 1. Defendant ASDI is a Delaware corporation with more than fifteen employees. *Id.* ¶ 3. Defendant Alan Blize is the co-owner and Chief Executive Officer of ASDI, and as such has operational control over ASDI. *Id.* ¶ 2.

On or about August 16, 2006, Alan Blize sent Dougherty a written offer that provided for an annual salary of $87,500 and benefits including paid holidays. *Id.* ¶¶ 7-86-7. In connection with the Agreement, Alan Blize asked Dougherty to assume long-term responsibility for fixing many administrative problems at ASDI. *Id.* ¶ 10. In reliance upon these and other representations, Dougherty left a secure, well-paying managerial position with Teva Pharmaceuticals in order to join ASDI. *Id.* ¶ 11.

When Dougherty reported to work on September 11, 2006, ASDI immediately downgraded him from Executive Director to Senior Director, without explanation.[3] *Id.* ¶¶ 12-13. Notwithstanding this "bait and switch," Alan Blize initially praised Dougherty for his performance and reassured him regarding the learning curve that the job entailed.

---

[2]    Because the Court intends to resolve at the same time both Dougherty's Motion to Amend and Defendants' Motion for Judgment on the Pleadings (DI 50), this Statement is drawn from Dougherty's Proposed Amended Complaint (DI 38 Ex. C), which is attached as Exhibit D hereto. The first 45 paragraphs of the Amended Complaint are identical to those in the original Complaint, which is cited in Defendants' opening brief. The Amended Complaint differs primarily in that it adds new paragraph 46, withdraws Dougherty's Wage Payment claim (as explained below), and renumbers the paragraphs thereafter.

[3]    Defendants incorrectly allege that Dougherty began work as "ASDI's first Director of Operations," DI 42 at 10 (citing DI 1 ¶ 12). The Complaint alleges that Dougherty never was permitted to work in the position of Director of Operations that was originally offered to him.

*Id.* ¶¶ 12-14.

In late November 2006, an ASDI manager named Kabana Perkins ("Perkins") advised Dougherty that Alan Blize's spouse, Trula K. Blize, Director of Staffing at ASDI, had placed Perkins' safety at risk by divulging to an unsuccessful job applicant with a questionable background that the applicant was turned down based on Perkins's recommendation.  *Id.* .¶¶ 15-16.[4]  Consistent with his administrative responsibilities, Dougherty met with Perkins and Alan Blize to discuss Perkins' concerns.  *Id.* ¶ 17.[5]  In that meeting, Dougherty reported the action by Trula Blize and recommended that such confidential communications not be divulged to unsuccessful job applicants as a matter of workplace safety and in order to prevent violence in the workplace.  *Id.* ¶ 18.  Alan Blize initially assured Dougherty that Dougherty had acted appropriately and within the duties of his position in raising the matter, notwithstanding that the situation involved his spouse.  *Id.* ¶ 19.

A few days later, another ASDI employee warned Dougherty to "watch your back" because "Trula really has it in for you."  *Id.* ¶ 20.  On December 1, 2006, Trula Blize falsely stated in an email directed to Perkins that Perkins had told her to inform the aforementioned applicant that it was Perkins's instructions not to hire the applicant.  *Id.* ¶ 21.  Perkins informed Dougherty that Trula Blize's claim was untrue, which Dougherty relayed to Alan Blize.  *Id.* ¶ ¶ 22.  Alan Blize then threatened to fire Perkins for

---

[4]    Contrary to the allegations of the Complaint, Defendants argue that Trula Blize told the applicant that Perkins's recommendation had only "played a role" in his rejection. DI 42 at 10.

[5]    Defendants incorrectly assert that Dougherty called a meeting with Alan Blize and Trula Blize. DI 42 at 10.

contradicting his wife. *Id.* ¶ 23.[6]

On December 21, 2006, Alan Blize told Dougherty that he was being stripped of all "authority and responsibility" over operations, for a period of one month, so that he could be "re-trained." *Id.* ¶ 24. Alan Blize took this adverse employment action against Dougherty in retaliation for Dougherty's proper actions in reporting a potential workplace safety concern arising from Trula Blize's conduct. *Id.* ¶ 25. When Dougherty expressed his understanding that he would be only an "observer" during this one-month period, Alan Blize confirmed that his role would be so limited. *Id.* ¶ 26. Alan Blize also told Dougherty that management responsibility was being reassigned to a committee that did not include him. *Id.* ¶ 27.

During the week of December 26, 2006, Dougherty asked Alan Blize whether their weekly meetings between them, at which Dougherty would report on the status of projects over which he had responsibility, would be discontinued. Alan Blize confirmed that such meetings would be discontinued and that, specifically, Dougherty would not meet with him during the week of December 26 because Dougherty no longer had responsibility over projects but rather was an "observer." *Id.* ¶ 28.

Monday, January 1, 2007, was a paid holiday. On Tuesday, January 2, 2007, Dougherty reported to work and was called into a conference room at approximately 1:00 p.m. Notwithstanding the fact that ASDI had previously stripped Dougherty of all management authority and responsibility, Alan Blize blamed Dougherty for a delay in a project for Cephalon that occurred in the week between Christmas and New Year's Day. Alan Blize indicated that he was placing Dougherty on a "leave of absence." Alan Blize

---

[6]    Defendants ignore each of the allegations set forth in this paragraph. DI 42 at 10.

did not indicate, either orally or in writing, that such leave would be without pay. *Id.* ¶ 29. Dougherty was immediately escorted from the premises. *Id.* ¶ 30.[7]

ASDI did not have in place at that time any written policy applicable to all employees regarding unpaid suspension for violation of conduct rules or otherwise. *Id.* ¶ 31. On January 4, 2007, Dougherty emailed Alan Blize requesting clarification of his employment status. Alan Blize and ASDI ignored his inquiry. *Id.* ¶ 32. On Friday, January 19, 2007, Dougherty inquired about ASDI's failure to deposit his semi-monthly pay check into his bank account, as was its normal practice. *Id.* ¶ 33. In response, ASDI's Director of Finance informed Dougherty that Alan Blize had decided, just that week, not to pay Dougherty for the pay period beginning January 1. *Id.* ¶ 34. At no point through January 19 did ASDI (or any agent thereof) either advise Dougherty of any change in the rate of his pay, or that his "leave of absence" had been transformed into termination of employment. *Id.* ¶ 36. On January 23, 2007, Dougherty sent to Trula Blize an email requesting that he be permitted to inspect his personnel file. Defendants refused that request by ignoring it. *Id.* ¶ 37. On February 15, 2007, Dougherty, through counsel, wrote to ASDI seeking an amicable resolution of this matter. *Id.* ¶ 38.

Although ASDI had long since terminated Dougherty, ASDI kept Dougherty on its health insurance plan until May 3, 2007. *Id.* ¶ 39. On May 3, 2007, Defendants, who

---

[7]    With respect to the events beginning December 21, 2006, Defendants ignore the allegations in the Complaint and instead improperly argue their own factual allegations regarding the events. DI 42 at 10-11. *See* 5C Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1368 at 230 (3d ed. 2004) ("It is axiomatic, as it is for motions under Rule 12(b)(6) and as evidenced by countless judicial opinions …, that for purposes of the court's consideration of the Rule 12(c) motion, all of the well pleaded factual allegations in the [plaintiff's] pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false").

were the administrators of ASDI's ERISA-qualified plan, executed a COBRA notification form advising Dougherty of his right to health care continuation benefits. *Id.* ¶¶ 40-41; 51. Dougherty received the form on May 18, 2007. *Id.* ¶ 40. The COBRA notice form states that Dougherty qualified for COBRA coverage on May 3, 2007. *Id.* ¶ 41. On May 22, 2007, Dougherty requested via email information required by COBRA. Again, Dougherty received no reply. *Id.* ¶ 43. ASDI sent Dougherty a rate sheet on June 13, 2007. *Id.* ¶¶ 42-44.

Dougherty's proposed Amended Complaint adds the factual allegation that ASDI failed to pay not only Dougherty but also other ASDI exempt employees during disciplinary leave, even when such employees worked during a workweek, and that this practice rose to the level of a clear and particularized policy, which effectively communicates that deductions will be made in specific circumstances. *Id.* ¶ 46.

## **ARGUMENT**

### I.     **The Standard of Review**

In deciding a Rule 12(c) motion for judgment on the pleadings, the Court must view all facts and inferences drawn from the pleadings in the light most favorable to the non-moving party.  *Green v. Fund Asset Mgmt., L.P.,* 245 F.3d 214, 220 (3d Cir. 2001). "Factual allegations must be enough to raise a right to relief above the speculative level." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008), (quoting *Twombly*, 127 S.Ct. at 1965). In other words, "'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965). *See also Wilkerson v. New Media Technology Charter School, Inc.*, 522 F.3d 315, 321-22 (3d Cir. 2008) (applying *Twombly* to employment discrimination claim).

### II.     **The Complaint States a Federal FLSA Claim.**

Dougherty's FLSA claim is that no exemption from overtime applies to Dougherty, because Defendants' practice of making non-isolated, non-inadvertent deductions (from the pay of Dougherty and other ASDI employees) establishes an "actual practice" of improper deductions. The loss of exemption, due to Defendants' lack of intent to pay Dougherty and others on a salary basis, creates a claim for unpaid overtime under FLSA. "If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same

9

managers responsible for the actual improper deductions." 29 C.F.R. § 541.603(b).

Contrary to Defendants' contention, this violation cannot be cured by paying Dougherty

his salary approximately a year and four months after it was due.

The relevant case law and regulations demonstrate that Dougherty has a

compelling FLSA claim for loss of any purported exemption and, thus payment of

overtime due. "Exemptions are narrowly construed against the employer with whom the

burden of establishing an exemption's application rests." *Davis v. Mountaire Farms,*

*Inc.*, 2008 WL 1993022, at *3 (D. Del.) (citing *Idaho Sheet Metal Works, Inc. v. Wirtz,*

383 U.S. 190, 209 (1966); *Mitchell v. Kentucky Finance Co.,* 359 U.S. 290, 295-96

(1959)). "In addition, the inquiry into exempt status under the FLSA is intensely factual

and case specific." *Id.* (citing *Dalheim v. KDFW-TV,* 918 F.2d 1220, 1226 (5th Cir.

1990)).

An executive or administrative employee may qualify for an exemption from

overtime pay if that employee is paid on a "salary basis," which means that the "amount

is not subject to reduction because of variations in the quality or quantity of the work

performed." 29 C.F.R. § 541.602(a). Thus, an "employee must receive the full salary for

any week in which the employee performs any work without regard to the number of

days or hours worked." [8] *Id.* Failure to pay salary is deemed a "deduction." 29 C.F.R. §

541.603(a). An employee is not paid on a salary basis if deductions from the employee's

predetermined compensation are made for absences occasioned by the employer. *Id.*

---

[8]     Exceptions can exist in certain inapplicable situations (e.g., if "imposed pursuant
to a written policy applicable to all employees" or in a "terminal" week of employment).
*See* 29 C.F.R. § 541.602(b)(5), 541.602(b)(6).

An employer who makes improper deductions from salary shall lose the exemption if "the facts" demonstrate that the employer did not intend to pay employees on a salary basis. 29 C.F.R. § 541.603(a). Such intent can be demonstrated through an "actual practice of making improper deductions." *Id.* A number of non-exclusive factors are considered in determining whether an actual practice exists. *Id.* For example, the duration of the loss of exemption depends on the timing of the "actual practice of making improper deductions." 29 C.F.R. § 541.603(b) (stating, "[i]f the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions").

To avoid the loss of an exemption, the employer's deductions must be "isolated or inadvertent" and the employer must reimburse each of the employees for the improper deductions. 29 C.F.R. § 541.603(c). However, the employer may take advantage of this regulation "only if it objectively intended to pay its employees on a salary basis." *See Kennedy v. Commonwealth Edison Co.,* 410 F.3d 365, 372 (7th Cir. 2005). Where, as here, Dougherty has pled a pattern or practice of improper deductions, and a pattern or practice actually impacting the employee, an employer's eventual payment of previously improperly deducted salary cannot save it from the consequences of its actual practice of making improper deductions. *Id. See also Klem v. County of Santa Clara,* 208 F.3d 1085, 1092 (9th Cir. 2001) (stating, "[t]o interpret the rule otherwise would allow an employer to treat its employees as exempt for overtime purposes while, at the same time, intentionally failing to comply with the 'salary basis' rule").

Dougherty's allegations state an FLSA claim under these standards. Dougherty has alleged that: (a) Blize had operational control over ASDI (DI 38, Ex. C. ¶ 2); (b) Dougherty worked during the week of January 1, 2007, and Alan Blize suspended him from his job during that week (*Id.* at ¶ 29); (c) Defendants did not have a written policy providing for unpaid suspensions (*Id.* at ¶ 31), (d) on January 19, 2007, when Dougherty inquired into ASDI's failure to deposit his pay check into his bank account ASDI's Director of Finance replied that Alan Blize had made the decision not to pay Dougherty for the pay period beginning January 1 (*Id.* at ¶¶ 33-34); and (e) Defendants did not pay his earned salary.[9] *Id.* at ¶ 48.

Through proposed Amended Complaint paragraph 46, proposed after initial discovery, Dougherty seeks to plead that "ASDI failed to pay not only Dougherty but also other ASDI exempt employees during disciplinary leave, even when such employees worked during a workweek, which amounts to a clear and particularized policy, which effectively communicates that deductions will be made in specific circumstances."[10] *Id.* at ¶ 46. These allegations support (and expand) Dougherty's previously-pled claim of a

---

[9]    Defendants incorrectly claim that Dougherty did not allege that Defendants failed to pay Dougherty "for a week in which he performed work (i.e., the week of January 1, 2007)"; that Dougherty "never alleged that he was subject to any *deduction* in pay"; and that Dougherty failed to provide "a reasonable explanation of the circumstances of the alleged failure to pay." DI 42 at 13, 15. The non-payment of Dougherty's salary during the week of January 1, which Dougherty alleged, is a 100% "deduction" of Dougherty's salary. As to the "circumstances" of Defendants' failure to pay, Dougherty clearly alleged that Blize directed that he receive no pay.

[10]   Specifically, upon information and belief, Defendants' actual practice seems to include Mike Regusters (from the same time as Defendants' improper deduction from Dougherty's salary) and at least one other employee, Wayne Whitaker (from shortly before Dougherty began work on September 11, 2006). Upon information and belief, even more employees were subject to Defendants' actual practice during the tenure of Mr. Whitaker. Discovery is required to determine the extent of Defendants' practice.

violation of FLSA, by making clear the existence of an even larger actual practice of making improper deductions.[11]  The full duration of loss of exemption in this case remains to be seen—as discovery is required on the matter.  In any event, the allegations pled by Dougherty sufficiently state a claim for violation of FLSA—specifically the loss of exemption arising from an actual practice that was neither isolated nor inadvertent, which results in the requirement that Defendants pay unpaid overtime to Dougherty.

Defendants' argument that Dougherty's allegations are "fatally flawed" because they belatedly paid Dougherty is without merit.  DI 42 at 15.  Defendants' initial non-payment / deduction forms the foundation of Dougherty's FLSA claim of loss of exemption.  That claim is strengthened by the additional allegations in the proposed Amended Complaint regarding similar non-payment / deductions of other employees. Defendants' payment more than one year and four months later cannot, by itself, defeat a claim of loss of exemption.  *See* 29 C.F.R. § 541.603(c) (requiring that deductions be "isolated or inadvertent" in addition to employer's reimbursement for improper deductions).

Finally, Defendants also erroneously contend that the FLSA count in the original Complaint fails to state a claim.  DI 42 at 13-14.  The original complaint alleges that Alan Blize instructed one of his agents not to pay a purportedly exempt employee.  This failure

---

[11]    As set forth in the Statement of Facts above, Defendants' claim (DI 42 at 14) that Dougherty "has provided no authority to support his allegations" is false.  Dougherty's counsel referred Defendants' counsel to the federal regulations pertaining to this matter, which are described in more detail above.  Indeed, far from being a "series of illogical and unsupportable allegations," pursuant to 29 C.F.R. § 541.603(b), it appears that several other employees or former employees at ASDI may also have cognizable claims under FLSA.

to pay was not "inadvertent."[12]   Without discovery, Dougherty could not explore the extent of Defendants' practice, but the original Complaint included sufficient facts to allow the claim to survive.   Discovery confirmed Dougherty's loss of exemption claim, which is now set forth more specifically in the Amended Complaint.

After Defendants paid Dougherty for the week's salary and the doubling penalty, and agreed to pay Dougherty's reasonable attorneys' fees in connection with Dougherty having been forced to sue to receive his wages,[13] Dougherty proposed in his Amended Complaint to withdraw his claim under the Delaware Wage Payment and Collection Act (19 Del. C. § 1101 *et seq.*).   This gesture was an attempt to streamline this litigation in recognition that Defendants had effectively conceded their liability under the Wage Act and paid the basic amounts that Dougherty would have been able to recover by pressing such claim.   Apparently, Defendants are now attempting to avoid their obligation to pay the attorneys' fees that Dougherty was forced to incur to obtain his 2007 wages, on the theory that such fees are not due under the FLSA and that Dougherty has agreed to drop his Wage Act claim.   To avoid this unfair result, Dougherty respectfully requests that he be permitted to continue to press his Wage Act claim for attorneys' fees if the Court deems the FLSA count in the original Complaint is insufficient to state a claim.

---

[12]   This is not a case in which a simple error in administering payroll accounts for the improper deduction.   As set forth in more detail below, a common nucleus of operative fact exists, *inter alia*, in that Defendants' inadvertence in making an improper deduction of Dougherty's salary is underscored by the overriding theme of this case—retaliation.

[13]   *See* DI 42 at 14 (Dougherty "admits" that ASDI finally paid him in April 2008 for wages due in January 2007).

### III.    The Complaint States a Federal COBRA Claim.

Defendants incorrectly argue that Dougherty received timely, sufficient COBRA notice based on their mistaken contention that COBRA imposes a "forty-four day deadline." DI 42 at 8. As a matter of law, a fourteen-day deadline applies. Defendants violated COBRA by delaying more than fourteen days after May 3, 2007, the date that they as plan administrators determined was the "qualifying event" for purposes of Dougherty's notification of his right to COBRA continuation coverage. Defendants compounded this violation by delaying another twenty-three days (41 days in total) to send Dougherty the crucial rate coverage information that he was entitled to receive with his notification.

Under COBRA, in the case of a qualifying event, which includes termination of a covered employee's benefits,[14] there are two separate time periods for notification. First, "the employer of an employee under a plan must notify the administrator of a qualifying event … within 30 days." 29 U.S.C. § 1166(a)(2). Second, once the plan administrator has notice of the qualifying event, the separate rule "relating to notification of qualified beneficiaries by plan administrator" requires that "any notification shall be made within 14 days … of the date on which the administrator is notified under paragraph (2)." 29 U.S.C. § 1166(c). An administrator who fails to satisfy COBRA's notice provisions may be personally liable to the aggrieved participant. *See* 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1. And, except for certain actions not relevant here, "the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the secretary or by a participant, beneficiary, fiduciary . . . ." 29 U.S.C. § 1132(e).

---

[14]    *See* 29 U.S.C. § 1163(2).

15

Here, the Complaint alleges a violation of COBRA in that: (a) the "qualifying date" for Dougherty was May 3, 2007, when the Defendants, as plan administrators, executed the COBRA notification (DI 38, Ex. C, ¶¶ 41, 51)[15]; (b) Dougherty received no notification until May 18, 2007, fifteen days after the qualifying date (*Id.* ¶ 40), (c) the documents he received on May 18 failed to provide a critical rate sheet (*Id.* at ¶ 42), (d) on May 22, 2007, Dougherty requested information required by COBRA, including the rate sheet (*Id.* at ¶ 43), and (e) Defendants waited until June 13, 2007, to send the rate sheet (*Id.* at ¶ 44).

Defendants incorrectly argue that they have thirty days to notify themselves as administrators, and then an additional fourteen days to notify Dougherty. Their argument, that "COBRA mandates that the employee-beneficiary be provided notice within forty-four days of the qualifying event" (DI 42 at 18) is refuted by their own cases. For example, in *Alberti v. Ron Lewis Auto Group*, 2006 WL 2773254, at *4 (E.D. Pa.), the court stated that "[u]pon the occurrence of a qualifying event, the employer of an employee under a plan must notify the administrator within 30 days of the date of the qualifying event [and] [t]he *administrator then must notify any qualified beneficiary of his COBRA rights within 14 days of the receipt of notification from the employer*." (internal citations, quotes, and ellipses omitted; emphasis added). The Defendants, having notified themselves on May 3, 2007, of the qualifying event, cannot pretend that

---

[15]     Defendants do not dispute that they are themselves the plan administrators for ASDI's plan. But even if they did, the identity of the "administrator" is a question of fact. *See Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir. 1993) (explaining that for purposes of reviewing a motion for summary judgment, an inference can exist based on whether an employer sent out its own COBRA notices).

they were allotted thirty days for no reason, and then another fourteen to notify Dougherty. Their obligation to notify Dougherty was triggered on May 3, 2007, when they had notice, in their role as administrators, of the qualifying event.

The Defendants' violation was not merely technical because they failed to provide proper notice of the rates that Dougherty would have to pay to retain coverage. A notice must generally provide information that "adequately informed [the qualified beneficiary] of the coverage [he] was entitled to receive and the money that [he] owed in order to maintain this coverage." *Lincoln Gen. Hosp. v. Blue Cross/Blue Shield,* 963 F.2d 1136, 1140 (8th Cir. 1992); *see also McDowell v. Krawchison,* 125 F.3d 954, 958 (6th Cir. 1997) (stating "the notice given must be sufficient to allow the qualified beneficiary to make an informed decision whether to elect coverage"); *CF. Chesnut v. Montgomery*, 307 F.3d 698, 703 (8th Cir. 2002) ("Whether the § 1166(a)(4) notice was sufficient in a particular case is an issue of fact"). Defendants' May 18 notice omitted the rate sheet, the most important piece of information that a covered employee needs to determine whether he can pay out of his own pocket for healthcare coverage for his family. As Dougherty was not sent a rate sheet, he had no idea what money he owed in order to maintain his coverage; he therefore promptly requested it, only to be ignored yet again. *Id.* ¶ 43. He did not receive the information that he was entitled to until 41 days after the qualifying event, long after the statutory fourteen day period had expired.

The Complaint states a claim for a COBRA violation. Defendants' motion for judgment on Dougherty's COBRA claim should be denied.

IV.     **This Court Should Exercise Supplemental Jurisdiction Over the State Law Claims.**

This Court has original jurisdiction based on Dougherty's meritorious FLSA and COBRA claims.  In addition, each of Dougherty's state and federal law claims arise out the same "common nucleus of operative fact"—a course of retaliatory conduct that began with Dougherty's proper action in raising concern regarding a workplace violence risk, and not ending until months after he was terminated, when Defendants continued to delay in forwarding to him the most basic COBRA information.  Thus, this Court may lawfully exercise supplemental jurisdiction over Dougherty's state law claims.  In addition, this Court would also have jurisdiction to hear Dougherty's state law claims under diversity jurisdiction.

A.     **Dougherty's State and Federal Claims Form the Same Case or Controversy.**

Federal district courts are authorized to exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); *see also Int'l Assn. of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute Envtl. Services, Inc.*, 814 F.Supp. 392, 396 (D. Del. 1993) (exercising supplemental jurisdiction on state claim that "form[ed] part of the same case or controversy as the federal statutory claim").  For the Court to exercise supplemental jurisdiction, "(1) the federal claims must have substance sufficient to confer subject matter jurisdiction; (2) the state and federal claims must derive from a common nucleus of operative fact; and (3) the plaintiff's claims must be such that he would ordinarily be expected to try them all in one judicial proceeding."  *Pryzbowski v. U.S.*

18

*Healthcare, Inc.*, 245 F.3d 266, 275 (3d Cir. 2001) (quoting *In re Prudential Ins. Co.*
*America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 302 (3d Cir. 1998))
(quotations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).
Dougherty's claims, both state and federal, satisfy all three requirements.  Thus, this
Court should, in its discretion, exercise supplemental jurisdiction.

### 1.    The FLSA and COBRA claims confer federal question subject matter jurisdiction.

As discussed above, Dougherty has stated a claim under both FLSA and COBRA.
As a result, this Court has subject matter jurisdiction based on a federal question
jurisdiction. *See* 28 U.S.C. § 1331; 29 U.S.C. § 1132 (civil enforcement of COBRA).

### 2.    All claims share a common nucleus of operative fact.

All of Dougherty's federal and state law claims derive from the same "common
nucleus of operative fact."  Such a "common nucleus" may be found where both the
federal and state law claims arise from the same "conduct underlying the claims."  *In re*
*Prudential*, 148 F.3d at 302 (affirming district court's exercise of supplemental
jurisdiction based on claims that arose "from the same common scheme").  Dougherty's
claims all arise from the same core conduct—Defendants' retaliation against Dougherty
for identifying safety problems presented by Trula Blize. Once the boss' spouse "ha[d] it
in for" Dougherty, no amount of "watch[ing] [his] back" could save him from
Defendants' arrogant and irrational conduct, such as blaming him for a project that he
had no control over, and ignoring his basic concerns about whether he would be paid,
whether he still had a job, and what the cost of maintaining benefits for his family would
be. *See* DI 38, Ex. C ¶ 20.  The consequences that flowed from Defendants' conduct
include their refusal to pay Dougherty earned wages, to inform him of any continuing

benefits or his employment status in general, and to allow him access to his personnel file. Dougherty's state law claims are directly connected to and arise from Defendants' conduct that forms the basis of Dougherty's FLSA and COBRA claims.

Defendants argue that supplemental jurisdiction may not be exercised for state law claims that arise solely from the employer-employee relationship that provides the basis for the federal claims. DI 42 at 24 (citing *Lyon v. Whisman*, 45 F.3d 758, 762 (3d Cir. 1995)). Defendants' argument misses the mark because the employer-employee relationship is not the primary link connecting the FLSA and COBRA claims with Dougherty's state law claims—rather, it is Defendants' retaliatory course of conduct is.[16] *See In re Prudential*, 148 F.3d at 302. Defendants' claim that supplemental jurisdiction should be invoked "sparingly" when original jurisdiction is predicated on a FLSA claim (DI 42 at 23-24) is unpersuasive at least because Dougherty's federal claims arise under both the FLSA and COBRA. Defendants' arguments against this Court's exercise of supplemental jurisdiction on each of Dougherty's remaining state law claims are meritless.

### a. The Whistleblower Protection Act Claim.

Dougherty's Whistleblower Protection Act claim arises from the same "common nucleus of operative fact" as both of his federal claims. Specifically, Dougherty alleges that his unlawful discharge (the circumstances of which give rise to both his FLSA and

---

[16]     Defendants' reliance on *Lyon* is misplaced because the FLSA claim was based on a failure to pay overtime wages and the state law claims were based on the employer's alleged failure to pay a promised bonus at a different time. *See* 45 F.3d at 759. The court correctly held that those two claims are entirely distinct. *See id.* at 763. Here, the facts underlying Dougherty's federal and state claims are so intertwined that it is impossible to make the same distinction as was made in *Lyon*.

COBRA claims)[17] was the result of Dougherty's report to Alan Blize of an act by Trula Blize that was "materially inconsistent with, and a serious deviation from" established workplace standards.[18] DI 28, Ex. C ¶ 59. Defendants' retaliatory conduct forms the basis of Doughtery's FLSA and COBRA claims and his Whistleblower claim. Alan Blize's decision not to pay Dougherty for the first week of January 2007 (*see id.* ¶ 34) is inextricably intertwined with Dougherty's FLSA claim and his Whistleblower claim. The refusal to pay Dougherty was obviously—or at a minimum, plausibly—in retaliation for Dougherty's whistleblowing activity and, for the purposes of the FLSA, cannot be characterized as inadvertent, which is one of Defendants' principal defenses. *See* DI 36 at ¶ 16. Dougherty's COBRA claim similarly flows from the same retaliatory course of conduct by which Defendants stripped him of responsibility, blamed him for a project delay, ignored his inquiries regarding his status, and finally ignored his request for vital COBRA information. Thus, the Whistleblower claim and Dougherty's federal claims share a "common nucleus of operative fact."

### b. Right to Inspect Personnel Files Act Claim.

Dougherty's Personnel File Act falls well within the "common nucleus of operative fact" regarding Defendants' retaliatory conduct towards Dougherty. This claim

---

[17]    Defendants' conclusory statement that the "purported factual underpinning for [the state law] claims bears no relation" to the FLSA and COBRA claims is inaccurate. First, the underlying facts of the state law claims are not "purported" and, in fact, must be taken as true. *See Green,* 245 F .3d at 220. Moreover, Dougherty continues to argue that the only connection between the claims focusing on Dougherty's wrongful discharge is the employer-employee relationship. *See* DI 42 at 25. However, as stated above, the connection between all of Dougherty's claims is Defendants' underlying course of conduct, which constitutes a sufficient basis for a "common nucleus of operative fact" in the Third Circuit. *See In re Prudential*, 148 F.3d at 302.

[18]    Indeed, Alan Blize initially commended Dougherty for bringing the matter to his attention. DI 38, Ex. C ¶ 19.

is another example of Defendants' refusal to apprise Dougherty of his employment status or of his rights as an employee in limbo. Just as with Dougherty's COBRA claim, the Defendants' unlawful actions in the timeframe after January 2, 2007, were all part of a continuing course of conduct in retaliation for Dougherty's whistleblowing activity. *See* DI 38, Ex. C ¶¶ 25, 37, 59.

Dougherty clearly had a right to inspect his personnel file upon request. *See* 19 *Del. C.* § 730, et seq.[19] Because Defendants' refusal to give Dougherty access to his file involves the same conduct as his COBRA claim, the underlying factual predicate for both claims involve a "common nucleus of operative fact." Thus, this Court should exercise supplemental jurisdiction over this claim.[20]

### c.    Covenant of Good Faith and Fair Dealing Claim.

Finally, Dougherty's claim that Defendants violated the implied covenant of good faith and fair dealing is based wholly on Defendants' improper course of conduct. Specifically, Defendants unlawfully discharged Dougherty in retaliation for reporting a violation of established employment practices. DI 38, Ex. C ¶ 63. This claim arises out of both the FLSA claim as well as the Whistleblower claim. *See Marino v. Cross*

---

[19]    Defendants argue that Dougherty has not suffered any damages as a result of Defendants' refusal. DI 42 at 26. However, the Personnel File Act does not require proof of damages. *See* 19 *Del. C.* § 732 ("An employer shall … upon request of an employee, permit that employee to inspect that employee's own personnel file…"); 19 *Del. C.* § 735(a) ("Any employer who refuses an employee access to personnel files as provided in this subchapter shall be deemed in violation of this subchapter…"). To state a cause of action under Delaware's Personnel File Act, a plaintiff need only allege that he was refused access to his personnel file by the employer. Dougherty has so alleged. *See* DI 38, Ex. C at ¶ 37.

[20]    Defendants' argument that no private right of action exists under the Personnel File Act is also without merit. DI 42 at 26-27. The Act states that a "civil penalty claim may be filed in any court of competent jurisdiction." 19 *Del. C.* § 735(a). The General Assembly placed no limitation on the identity of the party that may bring such action, and as a practical matter, only an aggrieved private party will have incentive to do so.

*Country Bank*, 2003 WL 503257, at \*4 (D. Del.) (denying motion to dismiss implied covenant claim primarily because "[r]etaliatory terminations violate public policy"). Moreover, Dougherty's allegations of Defendants' continued refusal to inform Dougherty of the status of his employment and benefits after termination (i.e. Dougherty's COBRA claim) also state a claim for a violation of federal public policy and, thus, state a claim for a violation of the covenant of good faith and fair dealing. Within that context, the facts underlying Dougherty's FLSA and COBRA claims cannot be separated. This Court should exercise its supplemental jurisdiction under these circumstances.

**3.    Dougherty's claims would be expected to be adjudicated in one judicial proceeding.**

All of Dougherty's claims arise from one set of common facts (i.e. – Defendants' retaliatory conduct). The respective federal and state claims are "merely alternate theories of recovery based on the same acts" of Defendants. *See Lentino v. Fringe Emp. Plans, Inc.*, 611 F.2d 474, 479 (3d Cir. 1979) (exercising supplemental jurisdiction to hear state law claim). Moreover, based on the considerations of judicial economy, convenience and fairness to the litigants, all of Dougherty's claims should be heard and decided in one judicial proceeding. *See Gibbs*, 383 U.S. at 726.

Defendants' "divide and conquer" approach would deprive Dougherty of the ability to present the full extent of Defendants' conduct to the jury in order to gain a full and fair recovery for such conduct, and would impose yet another financial penalty on their former employee by forcing him to litigate in two fora. This Court should, in its discretion, exercise supplemental jurisdiction over Dougherty's state law claims as they are merely alternate theories of recovery based on the same underlying predicate facts.

**B.    The State Claims Do Not Predominate Over the Federal Claims.**

23

Defendants also claim that Dougherty's "state-law causes of action predominate over the FLSA and COBRA claims." DI 42 at 27. (citing 28 U.S.C. § 1367(c)(2)).[21]  As a threshold matter, whether to dismiss state law claims based on predomination is wholly within the discretion of the Court.  28 U.S.C. § 1367(c) ("The district courts *may* decline...") (emphasis added); *see also Peter Bay Homeowners Ass'n, Inc. v. Stillman*, 294 F.3d 524, 534 (3d Cir. 2002) (affirming district court's discretion to exercise supplemental jurisdiction).  Here, based on the considerations of fairness, convenience, expense, and judicial efficiency, the Court should exercise its discretion in favor of retaining jurisdiction.

More importantly, however, none of Dougherty's remaining state law claims will predominate over either of the federal claims.  Courts that find predomination characterize the relationship between claims as the federal claims being an appendage of the state law claims. *See, e.g., Gibbs*, 383 U.S. at 726.  Here, Dougherty's federal claims do not exist by virtue of his state law claims.  Each claim exists by virtue of and is supported by Defendants' underlying conduct, which constitutes the "common nucleus of operative fact." *See MacFadden Holdings, Inc. v. John Blair & Co.*, 1986 WL 1171567, at *13 n.19 (D. Del.) (assuming the presence of supplemental jurisdiction because "[m]any of the facts asserted in support of the federal claims surface in the state law claims").

---

[21]     Defendants substantively discuss only this single exception to the court's exercise of supplemental jurisdiction. *See* 28 U.S.C § 1367(c).  Without discussion, Defendants conclusively state that Dougherty's state law claims "present unique facts and novel theories." DI 42 at 27. Defendants fail to identify any such facts or theories or expound on why they are novel.

Defendants' reliance on *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003), is misplaced. In *De Asencio*, an FLSA plaintiff sought class certification for state law wage payment claims. 342 F.3d at 303-04. The court found that the FLSA and state wage claims both involved a "common nucleus of operative fact" and "ar[o]se from the same case or controversy." *Id.* at 308-10. Moreover, the court recognized that hearing the claims together would allow the district court to "efficiently manage the overall litigation." *Id.* at 310. The court held that those factors weighed heavily in favor of an exercise of supplemental jurisdiction. *Id.* Despite the above findings, however, the court held that the state claim predominated over the FLSA claim. In doing so, the court focused on three circumstances, none of which is present here. First, the court looked at "the inordinate size of the state-law class" as opposed to that on the federal claim "suggest[ed that] the federal action is an appendage to the more comprehensive state action." *Id.* at 312. Here, considerations of class size are irrelevant as there is no claim for class certification.[22] Second, the court considered the "general federal interest in opt-in wage actions." *Id.* Again, this point is wholly irrelevant. Third, the court looked at the proof required for the state law claim and found that the FLSA and state wage claim required different kinds of proof. *Id.* That problem does not exist here. Dougherty's claims arise from the same tight set of facts, which will not require other distinct forms of proof. For all these reasons, the *De Ascensio* case is inapplicable here and should be

---

[22]    Because of the class issues in *De Ascencio* (where the state class outnumbered the federal class 4,100 to only 447), the federal damages, as compared with the more comprehensive state damages, were considered a "federal tail to wag what is in substance a state dog." *Id.* at 309. The huge class difference amplified the differences in the comprehensiveness of the remedies. No such concern exists in this case.

limited to its unique facts. *See McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 313 (D. Mass. 2004).[23]

In sum, Dougherty's state and federal law claims both "derive from a common nucleus of operative fact," "arise from the same case or controversy," and include the same types of proof. Discovery is needed to develop Dougherty's state law claims and will involve substantially the same set of facts as Dougherty's federal law claims. Thus, the state law claims do not predominate over the federal claims.

### C.    This Court Also Has Diversity Jurisdiction Over the State Law Claims.

In this case, although admittedly not specifically plead, there is both complete diversity as well as an amount in controversy exceeding $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). Defendants most certainly are aware of this, as Dougherty's proposed Amended Complaint (as well as Dougherty's April 1 damages letter) pleads facts that would reveal such a conclusion. *See Id.*; *see also* DI 36 Ex. C at ¶¶ 49, 54, 57, 60 (describing various measures of damages for each claim); Letter from T. Holly to M. DiBianca (Apr. 1, 2008) (demonstrating that potential damages are in excess of $75,000). Moreover, Dougherty will include within his Amended Complaint the additional allegation of the citizenship of Alan Blize (which upon information and belief is Maryland), and will thus successfully plead complete diversity (i.e., a Pennsylvania plaintiff and Defendants of Maryland and Delaware). *See* 28 U.S.C, § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts"); *see also Neely v Club Med Mgmt. Services, Inc.*, 63 F.3d 166, 180 n.9 (3d Cir. 1995)

---

[23]    Indeed, the *De Ascencio* court itself recognized the "unique circumstances surrounding this litigation." 342 F.3d at 312.

(holding that district court had diversity jurisdiction "at all times" even though facts supporting such jurisdiction were not initially pled).[24] Thus, in addition to other grounds of proper jurisdiction, this Court may hear Dougherty's state law claims by virtue of its proper diversity jurisdiction.

---

[24] Furthermore, the Third Circuit has recognized the ability to cure defective jurisdictional allegations "to avoid the great waste of judicial resources that would otherwise attend" having to determine whether this Court may exercise pendent jurisdiction over Dougherty's state law claims. *Neely*, 63 F.3d at 180 n.9.

## CONCLUSION

For the reasons stated above and in support of Doughterty's Motion to Amend the

Complaint, Dougherty respectfully requests that the Court grant Dougherty's Motion to

Amend and deny Defendants' Motion for Judgment on the Pleadings.

Respectfully Submitted,

CONNOLLY BOVE LODGE & HUTZ LLP

Matthew F. Boyer (Del. Bar No. 2564)
Timothy M. Holly (Del. Bar No. 4106)
Josiah R. Wolcott (Del. Bar No. 4796)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
Phone:  302-658-9141
Facsimile:  302-658-0380
Email:  mboyer@cblh.com; tholly@cblh.com; and
jwolcott@cblh.com
*Attorneys for John J. Dougherty*

Date:  May 19, 2008
CBLH:  610515

28

# EXHIBIT A

**Timothy M. Holly**

| | |
|---|---|
| From: | Timothy M. Holly |
| Sent: | Wednesday, March 26, 2008 5:48 PM |
| To: | 'DiBianca, Margaret' |
| Subject: | RE: |

Attachments:          RE:



RE:

      I'm not going to defend preemptively a 12(b)(6) if that is what you mean.  But I would generally refer you to the CFR  Section 541.603(a), which provides that an employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis. The theory is simply that ASDI cannot meet the salary basis test.  I am not going to argue at length about this.  I have yet to have someone, during the time frame established by a scheduling order, fail to stipulate the amendment of a complaint.  I cannot imagine that the court would deny a motion to amend our complaint but I suppose it is your prerogative to fail to stipulate.

To be clear, I have not experienced (and am not asserting) a general lack of courtesy, but I believe that a refusal to stipulate to an amendment as I propose would be discourteous.

Tim

1

# EXHIBIT B

**Timothy M. Holly**

| | |
|---|---|
| **From:** | DiBianca, Margaret [mdibianca@ycst.com] |
| **Sent:** | Friday, April 18, 2008 6:22 PM |
| **To:** | Timothy M. Holly |
| **Subject:** | RE: FYI- I have not received the final draft that I believe you said you wanted to send over before filing |

Thanks, I hadn't sent it.

I just spoke to Barry and he is not amenable to the changed language in the Stipulation.  So, instead of the Stip, we'll go ahead with the response to the Motion to Amend.   We'll also have to postpone Mr. Dougherty's deposition in light of the 12(c) Motion and Motion to Stay. I understand that it is not your ideal scenario but hope that it is not a great inconvenience.

Thanks for the draft stip.  If something comes up and you need to reach me over the weekend, I'll likely be in the office tomorrow afternoon after noon.

Sincerely,

Molly DiBianca


Margaret M. DiBianca, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
Phone: 302-571-5008
Facsimile: 302-576-3476
mdibianca@ycst.com

on the web:  www.ycst.com
blogging at:  www.DelawareEmploymentLawBlog.com

-----Original Message-----
From: Timothy M. Holly [mailto:THolly@cblh.com]
Sent: Friday, April 18, 2008 6:16 PM
To: DiBianca, Margaret
Subject: FYI- I have not received the final draft that I believe you said you wanted to send over before filing


This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please email or call 302-658-9141 to advise the sender of a transmission

# EXHIBIT C

**Timothy M. Holly**

| | |
|---|---|
| **From:** | Timothy M. Holly |
| **Sent:** | Wednesday, April 16, 2008 7:56 PM |
| **To:** | 'DiBianca, Margaret' |
| **Subject:** | RE: Dougherty Matter |

I think we will stick with the default.  Let me know if you want me to still do the stip.  If not we will just pursue our motion.

Sent by GoodLink (www.good.com)


-----Original Message-----
From:  DiBianca, Margaret [mailto:mdibianca@ycst.com]
Sent:   Wednesday, April 16, 2008 07:05 PM Eastern Standard Time
To:     Timothy M. Holly
Subject:      RE: Dougherty Matter

Sure does. I'll let them know.

Regarding briefing, 20, 20, 10? I'm open to suggestions, though.

Thank you,
Molly


-----Original Message-----
From:  Timothy M. Holly [mailto:THolly@cblh.com]
Sent:   Wednesday, April 16, 2008 05:42 PM Eastern Standard Time
To:     DiBianca, Margaret
Cc:     Christina Phillips
Subject:      RE: Dougherty Matter

June 5 is fine.  Let's do Mr. Perkins in the morning (say 9:30 a.m.) and Ms. Tribit in the afternoon (say 1:00 p.m.).  Location would be here. Does that work?


This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information.  Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts.  Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN J. DOUGHERTY                    )
                                     )
              Plaintiff,             )
                                     )
       v.                            )        Civil Action No. 07-674-SLR/LPS
                                     )
ALAN BLIZE and ASDI                  )
INCORPORATED,                        )        JURY TRIAL DEMANDED
a Delaware Corporation,              )
                                     )
              Defendants.            )

## FIRST AMENDED COMPLAINT

### PARTIES

1.     John J. Dougherty ("Dougherty") is an adult individual who is a citizen of the State of Pennsylvania and who was formerly employed by ASDI Incorporated ("ASDI") in New Castle County, Delaware.

2.     Defendant Alan Blize is the co-owner and chief executive officer of ASDI, and as such has operational control over ASDI.

3.     Defendant ASDI is a Delaware corporation with operations in the State of Delaware and with more than fifteen employees.

### JURISDICTION

4.     This action is brought pursuant to this Court's jurisdiction over civil actions arising under the laws of the United States of America, under 29 U.S.C. § 1132 and 28 U.S.C. § 1331. Delaware state law claims are brought pursuant to this Court's supplemental jurisdiction, under 28 U.S.C. § 1367.

## VENUE

5.    Venue in this District is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to this lawsuit occurred in this District.

## FACTUAL ALLEGATIONS

6.    On August 16, 2006, ASDI sent Mr. Dougherty a written job offer (the "Agreement") for the position of Executive Director, Operations, which Mr. Dougherty accepted.

7.    The Agreement provided for an annual salary of $87,500.00 plus bonuses.

8.    The Agreement further provided benefits that included three weeks paid vacation, three sick days, two personal days, and six paid holidays (including New Years Day).

9.    The Agreement also provided a benefit of a $25,000.00 life insurance policy, health and dental insurance, for which ASDI agreed to pay the premiums.

10.    In connection with the Agreement, Mr. Blize asked Mr. Dougherty to assume the long-term responsibility of fixing many administrative problems at ASDI, which Mr. Blize estimated would take at least a year or two.

11.    In reliance upon these and other representations, Mr. Dougherty left a secure, well-paying managerial position with Teva Pharmaceuticals in order to accept this high-level position with ASDI.

12.    Mr. Dougherty reported to work on September 11, 2006.

13.    On September 11, 2006, without prior notice or explanation, ASDI downgraded Mr. Dougherty's position from Executive Director to Senior Director.

14.    Mr. Blize initially praised Mr. Dougherty for his performance and reassured him regarding the learning curve that the job entailed.

2

15. In late November 2006, an ASDI manager named Kabana Perkins advised Mr. Dougherty that Mr. Blize's wife, Trula K. Blize, Director of Staffing, had placed Mr. Perkins's safety at risk by divulging to an unsuccessful job applicant with a questionable background that the applicant was turned down based on Mr. Perkins's recommendation that he not be hired.

16. Upon information and belief, Ms. Blize divulged this confidential information to the applicant even though she knew that the applicant was potentially dangerous.

17. Consistent with his administrative responsibilities, Mr. Dougherty met with Messrs. Perkins and Blize to discuss Mr. Perkins's concerns.

18. In that meeting, Mr. Dougherty reported the action by Ms. Blize and recommended that such confidential communications not be divulged to unsuccessful job applicants as a matter of workplace safety and in order to prevent violence in the workplace.

19. Mr. Blize initially assured Mr. Dougherty that he acted appropriately according to the duties of his position in proffering constructive criticism notwithstanding the fact that the Director of Staffing was Mr. Blize's wife.

20. However, a few days later, another ASDI employee warned Mr. Dougherty to "watch your back" because "Trula really has it in for you."

21. On December 1, 2006, Ms. Blize stated in an email directed to Mr. Perkins that Mr. Perkins had told her to inform the aforementioned applicant that it was Mr. Perkins's instructions not to hire the applicant.

22. Mr. Perkins informed Mr. Dougherty that Ms. Blize's claim was untrue, which Mr. Dougherty relayed to Mr. Blize.

23. Mr. Blize then threatened to fire Mr. Perkins for contradicting his wife.

24. On December 21, 2006, Mr. Blize told Mr. Dougherty that he was being stripped

3

of all "authority and responsibility" over operations, for a period of one month, so that he could be "re-trained."

25.    Mr. Blize took this adverse employment action against Mr. Dougherty in retaliation for Mr. Dougherty's proper actions in reporting a potential workplace safety concern to Mr. Blize arising from Ms. Blize's handling of the unsuccessful applicant.

26.    When Mr. Dougherty expressed his understanding that he would be only an "observer" during this one-month period, Mr. Blize confirmed that his role would be so limited.

27.    Mr. Blize also told Mr. Dougherty that management responsibility was being reassigned to a committee that did not include him.

28.    During the week of December 26, 2006, Mr. Dougherty asked Mr. Blize whether the weekly meetings between them, at which Mr. Dougherty would report on the status of projects over which he had responsibility, would be discontinued. Mr. Blize confirmed that such meetings would be discontinued and that, specifically, Mr. Dougherty would not meet with him during the week of December 26 because Mr. Dougherty no longer had responsibility over projects but rather was an "observer."

29.    Monday, January 1, 2007, was a paid holiday. On Tuesday, January 2, 2007, Mr. Dougherty reported to work and was called into a conference room at approximately 1:00 p.m. Notwithstanding the fact that ASDI had previously stripped Mr. Dougherty of all management authority and responsibility, Mr. Blize blamed Mr. Dougherty for a delay in a project for Cephalon that occurred in the week between Christmas and New Year's Day. Mr. Blize indicated that he was placing Mr. Dougherty on a "leave of absence." Mr. Blize did not indicate, either orally or in writing, that such leave would be without pay.

30.    Mr. Dougherty was immediately escorted from the premises.

31.     ASDI did not have in place at that time any written policy applicable to all employees regarding unpaid suspension for violation of conduct rules or otherwise.

32.     On January 4, 2007, Mr. Dougherty emailed Mr. Blize requesting clarification of his employment status. Mr. Blize and ASDI ignored his inquiry.

33.     On Friday, January 19, 2007, Mr. Dougherty inquired about ASDI's failure to deposit his semi-monthly pay check into his bank account, as was its normal practice.

34.     In response, ASDI's director of finance informed Mr. Dougherty that Mr. Blize had decided, just that week, not to pay Mr. Dougherty for the pay period beginning January 1.

35.     Throughout that time, Mr. Dougherty remained ready and willing to return to work.

36.     At no point through January 19 did ASDI (or any agent thereof) either advise Mr. Dougherty of any change in the rate of his pay, or that his "leave of absence" had been transformed into termination of employment.

37.     On January 23, 2007, Mr. Dougherty sent to Ms. Blize an email requesting that he be permitted to inspect his personnel file. Mr. Blize and ASDI refused that request by ignoring it.

38.     On February 15, 2007, Mr. Dougherty, through counsel, wrote to ASDI seeking an amicable resolution of this matter.

39.     ASDI kept Mr. Dougherty on its health insurance plan until May 3, 2007.

40.     On May 18, 2007, Mr. Dougherty received a COBRA notification form from ASDI notifying him of his right to health care continuation benefits.

41.     The COBRA notice form states that the date of Mr. Dougherty's termination (the date he qualified for COBRA coverage) was May 3, 2007.

42. ASDI failed to supply a rate sheet at any time through the end of May 2007.

43. On May 22, 2007, Mr. Dougherty requested via email information required by COBRA. Mr. Dougherty received no reply.

44. ASDI finally sent Mr. Dougherty a rate sheet on June 13, 2007.

45. Mr. Dougherty has continued to attempt to find comparable full-time employment since the end of January 2007 but has been unsuccessful.

46. Upon information and belief, ASDI failed to pay not only Dougherty but also other ASDI exempt employees during disciplinary leave, even when such employees worked during a workweek, which amounts to a clear and particularized policy, which effectively communicates that deductions will be made in specific circumstances.

**COUNT ONE**
**VIOLATION OF FAIR LABOR STANDARDS ACT**

47. Mr. Dougherty incorporates the preceding paragraphs herein the same as though pleaded in full.

48. In violation of the federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* (the "FLSA"), Defendants Mr. Blize and ASDI, who both are employers under FLSA, unlawfully paid / failed to pay Mr. Dougherty; and through the implementation of an unlawful deduction policy, the exemption was lost.

49. Through such acts, pursuant to 29 U.S.C. § 216, Mr. Blize and ASDI are liable to Mr. Dougherty for: (1) unpaid wages (including non-paid overtime); (2) an additional equal amount as liquidated damages; (3) mandatory reasonable attorney's fees; and (4) mandatory costs of the action.

6

## COUNT TWO
### <u>VIOLATION OF COBRA / ERISA</u>

Formatted: Bullets and Numbering

50.     Mr. Dougherty incorporates the preceding paragraphs herein the same as though

pleaded in full.

51.     In violation of the Consolidated Omnibus Budget Reconciliation Act of 1985

("COBRA"), 29 U.S.C. §§ 1161 et seq., which amended the Employee Retirement Income

Security Act of 1974 ("ERISA"), Defendants Mr. Blize and ASDI, who both were employers

and plan administrators, failed to notify Mr. Dougherty, who was a qualified beneficiary of a

group health plan, of his entitlement to continuation coverage, within the time period required by

COBRA.

52.     In further violation of COBRA, Mr. Blize and ASDI included in the untimely

notice false and / or deceptive information.

53.     Also in violation of COBRA, Mr. Blize and ASDI failed to supply required

information including a rate sheet.

54.     Through such acts, pursuant to 29 U.S.C. § 1132, Mr. Blize and ASDI are liable

to Mr. Dougherty for:  (1) civil penalties for each violation from the date of each such violation;

(2) discretionary reasonable attorney's fees; and (3) discretionary costs of action.

### COUNT THREE
### <u>VIOLATION OF DELAWARE'S WHISTLEBLOWER PROTECTION ACT</u>

55.     Mr. Dougherty incorporates the preceding paragraphs herein the same as though

pleaded in full.

56.     In violation of the Delaware Whistleblowers' Protection Act, 19 Del. C. § 1701,

et seq., (the "Whistleblower Act"), Defendants Mr. Blize and ASDI, who both are employers

under the Whistleblower Act, unlawfully discharged Mr. Dougherty primarily because he

Deleted: COUNT THREE¶
VIOLATION OF DELAWARE'S WAGE PAYMENT & COLLECTION ACT¶
¶
<#>Mr. Dougherty incorporates the preceding paragraphs herein the same as though pleaded in full.¶
<#>In violation of Delaware's Wage Payment and Collection Act, 19 Del. C. § 1101 et seq. (the "Wage Act"), Defendants Mr. Blize and ASDI, who both were employers under the Wage Act, unlawfully withheld from Mr. Dougherty wages and / or benefits and wage supplements, as those terms are defined by the Wage Act.¶
<#>Mr. Blize and ASDI further violated the Wage Act by failing to notify Mr. Dougherty of a reduction in his regular rate of pay, through a posted notice maintained in a place accessible to Mr. Dougherty where he normally passed, prior to the time of such reduction. ¶
<#>Through such acts, pursuant to 19 Del. C. §§ 1103, 1112, and 1113, Mr. Blize and ASDI are liable to Mr. Dougherty for:  (1) a civil penalty of not less than $1,000 nor more than $5,000 for each violation or act of non-compliance with the Wage Act; (2) the amount of all unpaid wages and / or benefits and wage supplements; (3) an additional amount of 10 percent of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure has continued (and will continue) after the days upon which payments were required or in an amount equal to the unpaid wages, whichever is smaller; (4) mandatory reasonable attorney's fees; and (5) mandatory costs of this action. ¶

Deleted: FOUR

Formatted: Bullets and Numbering

7

verbally reported to Mr. Blize an act that was materially inconsistent with, and a serious deviation from, standards implemented pursuant to a law, rule, or regulation promulgated under the laws of Delaware, a political subdivision of Delaware, and the United States, to protect employees or other persons from health, safety, or environmental hazards while on the employer's premises or elsewhere.

57.    Through such act, pursuant to 19 Del. C. §1704, Mr. Blize and ASDI are liable to Mr. Dougherty for: (1) back wages; (2) expungement of records relating to disciplinary action and discharge; (3) actual damages; (4) discretionary attorneys' fees; and (5) discretionary costs of litigation.

**COUNT FOUR** ⌐ Deleted: FIVE

**VIOLATION OF DELAWARE'S RIGHT TO INSPECT PERSONNEL FILE ACT**

⌐ Formatted: Bullets and Numbering

58.    Mr. Dougherty incorporates the preceding paragraphs herein the same as though pleaded in full.

59.    In violation of Delaware's Right to Inspect Personnel Files Act (the "Personnel Files Act"), 19 Del. C. § 730, *et seq.*, Mr. Blize and ASDI, who both are employers under the Personnel Files Act, unlawfully refused Mr. Dougherty access to a personnel file.

60.    Through such act, pursuant to 19 Del. C. § 735, Mr. Blize and ASDI are liable to Mr. Dougherty for a civil penalty of not less than $1,000 nor more than $5,000 for each violation.

**COUNT FIVE** ⌐ Deleted: SIX

**VIOLATION OF COVENANT OF GOOD FAITH AND FAIR DEALING**

⌐ Formatted: Bullets and Numbering

61.    Mr. Dougherty incorporates the preceding paragraphs herein the same as though pleaded in full.

62.    Under Delaware law, Mr. Dougherty's employment relationship with ASDI

8

included an implied covenant of good faith and fair dealing.

63.    ASDI, acting by and through its agent, servants and employees, terminated Mr. Dougherty's employment due to his verbal report to Mr. Blize regarding Ms. Blize's singling-out of the employee responsible for an applicant's failure to be hired, to which Mr. Dougherty occupied a position at ASDI to oppose.

64.    The actions of ASDI were taken with malice and/or disregard of Mr. Dougherty's protected rights, in that ASDI, through fraud, deceit and misrepresentation, manufactured false grounds to terminate Mr. Dougherty's employment.

65.    In addition, the actions of ASDI were in violation of federal public policy and / or public policy of the State of Delaware.

66.    ASDI, rather than conducting an employment relationship in good faith based upon fair dealing, breached the implied covenant of good faith and fair dealing under Delaware law through its actions as described in the foregoing paragraphs, and as a result, breached the employment contract with Mr. Dougherty causing significant financial injury to him.

**WHEREFORE,** Mr. Dougherty respectfully requests this Court enter judgment in favor of Mr. Dougherty and against Mr. Blize and ASDI as follows:

1.    Declaring the conduct engaged in by Mr. Blize and ASDI to be in violation of Mr. Dougherty's rights.

2.    Ordering expungement of records relating to any disciplinary action and discharge of Mr. Dougherty's employment;

3.    Awarding past lost wages (including unpaid overtime);

| Deleted: and wage supplements |
| --- |

4.    Awarding future lost wages and wage supplements in lieu of reinstatement;

5.    Awarding statutory liquidated damages and/or punitive damages;

9

6.   Awarding statutory penalties;

7.   Awarding attorneys' fees;

8.   Awarding costs;

9.   Awarding pre and post judgment interest; and

10.  Ordering any other relief that the Court deems just and appropriate.

CONNOLLY BOVE LODGE & HUTZ LLP

_____
Matthew F. Boyer (Del. Bar No. 2564)
Email: Mboyer@cblh.com
Timothy M. Holly (Del. Bar No. 4106)
Email: Tholly@cblh.com
Josiah R. Wolcott (Del. Bar No. 4796)
Email: Jwolcott@cblh.com
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
(302) 658-9141

Date: April __, 2008
CBLH: 595961                          Attorneys for John J. Dougherty

| Deleted: October 26, 2007 |
| Deleted: 18 |
| Inserted: 18, 2008 |
| Deleted: 555666 14906*00007 |

10