IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN J. DOUGHERTY,           )
                                      )
                 Plaintiff,      )
            v.               )    C.A. No. 07-674-SLR-LPS
                                      )
ALAN BLIZE, and ASDI         )
INCORPORATED, a Delaware   )
Corporation,                   )
                 Defendants.   )

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR TO
DISMISS PLAINTIFF'S STATE LAW CLAIMS AND IN
OPPOSITION TO PLAINTIFF'S MOTION TO AMEND**

Barry M. Willoughby, Esquire, (I.D. #1016)
Margaret M. DiBianca, Esquire (I.D. #4539)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6666; (302) 571-5008
Facsimile: (302) 576-3345; (302) 571-3476
E-mail: bwilloughby@ycst.com; mdibianca@ycst.com
Attorneys for Defendants

Dated:  June 3, 2008

                                                   

**Table of Contents**

**Page**

STATEMENT OF UNDISPUTED FACTS .................................................................1

     A.    Background ..............................................................................................1

     B.    FLSA Allegations ....................................................................................1

     C.    COBRA Allegations ................................................................................2

     D.    Supplemental Jurisdiction ......................................................................2

     E.    State Law Claims ....................................................................................2

ARGUMENT ...........................................................................................................3

I.     FEDERAL COURTS NOT "SUPER-PERSONNEL DEPARTMENTS" RESPONSIBLE FOR SUPERVISING THE FAIRNESS OF EMPLOYMENT DECISIONS ...........................................................................3

II.    PLAINTIFF'S FLSA ALLEGATIONS DO NOT STATE A CLAIM FOR RELIEF ...............................................................................................................3

     A.    Plaintiff's Exempt Status Was Preserved By Payment In Full for the Week of January 1, 2007 ........................................................................5

     B.    Three Alleged Non-payments to Different Employees In Different Job Classifications Cannot, as a Matter of Law, Constitute an "Actual Practice" of Improper Deductions .............................................6

     C.    Even If Plaintiff Lost the Exemption, He Has No Claim For Relief ..............8

III.   PLAINTIFF'S COBRA CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ....................................................................9

IV.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS BECAUSE THEY DO NOT SHARE A COMMON NUCLEUS OF OPERATIVE FACTS ...................................................................................................................10

     A.    An Alleged Common "Retaliatory Motive" Is Insufficient to Support Supplemental Jurisdiction Over Plaintiff's State Law Claims .....................11

     B.    Plaintiff's State Law Claims Predominate Over the Federal Law Claims .....................................................................................................14

     C.    Plaintiff's Belated Request that the Court Entertain His State Law Claims Based On Diversity Should Be Denied .............................................15

     D.    Plaintiff Has Withdrawn Count III of His Complaint Alleging a Violation of the State Wage Payment and Collection Act ............................16

CONCLUSION ........................................................................................................18

**Table of Citations**

Page

**Cases**

*Balgowan v. New Jersey,*
115 F.3d 214 (3d Cir. 1997)......................................................................... 6

*Brewer v. Quaker State Oil Refining Corp.*
72 F.3d 326 (3d Cir. 1995)......................................................................... 3

*Cash v. Cycle Craft Co.,*
508 F.3d 680 (1st Cir. 2007)......................................................................... 7

*Chaffee v. Kraft Gen.l Foods, Inc.,*
866 F. Supp. 1164 (D.N.J. 1995) ......................................................... 17

*Chevron v. Nat'l Res. Defense Council, Inc.,*
467 U.S. 837 (1984)......................................................................... 10

*DiGiore v. Ryan,*
172 F.3d 454 (7th Cir. 1999) ......................................................... 7

*Elizabeth Blackwell Health Ctr. for Women v. Knoll,*
61 F.3d 170 (3d Cir. 1995)......................................................................... 5

*Elliott v. Flying J., Inc.,*
No. CV205-22, 2006 U.S. Dist. LEXIS 26978 (S.D. Ga. May 5, 2006)........................... 5

*Fleck v KDI Sylvan Pools, Inc.,*
981 F. 2d 107 (3d Cir. 1992)......................................................................... 17

*Ingram v. County of Bucks,*
144 F.3d 265 (3d Cir. 1998)......................................................................... 10

*Kennedy v. Commonwealth Edison Co.,*
410 F.3d 365 (7th Cir. 2005) ......................................................... 7

*Klem v. County of Santa Calara,*
208 F.3d 1085 (9th Cir. 2001) ......................................................... 7

*Lord v. Souder,*
748 A.2d 393 (Del. 2008) ......................................................... 16

*Lyon v. Whisman,*
45 F.3d 758 (3d Cir. 1995)................................................................... 12, 13, 14

*McCoy v. WGN Cont'l Broad. Co.,*
975 F.2d 368 (7th Cir. 1992) ......................................................... 3

*Moore v. Hannon Food Serv., Inc.,*
317 F.3d 489 (5th Cir.), *cert. denied*, 124 S. Ct. 76 (2003)........................... 5

ii

*Pauley v. BethEnergy Mines*
    501 U.S. 680 (1991) ............................................................................. 10

*Scarano v. Cent. R.R. Co.,*
    203 F.2d 510 (3d Cir. 1953) ............................................................... 17

*Tomer v. Sharp*
    No. 329, 2007 Del. LEXIS 42 (Del. Jan. 30, 2007) .......................... 16

*Whetsel v. Network Prop. Servs.,*
    246 F.3d 897 (7th Cir. 2001) ................................................................. 7

*Winterwood v. Life Times Fitness,*
    No. 06-99, 2007 U.S. Dist. LEXIS 49777 (S.D. Ohio July 10, 2007) ................ 8

**Other Authorities**

19 <u>Del. C.</u> § 1704 ............................................................................... 16, 35

28 U.S. C. § 1367 ............................................................................... 11, 30

29 C.F.R. § 2590.606-4(b)(2) (2004) ................................................. 10, 29

29 C.F.R. § 541.602(b) ............................................................................. 24

29 C.F.R. § 541.603(a) ............................................................................. 26

29 C.F.R. § 541.603(b) .......................................................................... 8, 27

29 C.F.R. § 541.603(c) ........................................................................... 5, 24

29 C.F.R. § 541.603(e) ........................................................................... 4, 23

29 U.S.C. § 1002(13) ............................................................................. 10, 30

29 U.S.C. § 1166 ....................................................................................... 29

69 Fed. Reg. 22,122, 22,180 ................................................................. 8, 27

*Wright & A. Miller, Federal Practice and Procedure*, § 4477 (1981) ................... 19, 38

## STATEMENT OF UNDISPUTED FACTS

Based on Plaintiff's proposed First Amended Complaint and previously filed Answering

Brief, the following facts are not in dispute:

**A.    Background**

- Plaintiff John Dougherty was employed, effective September 11, 2006, as Defendant ASDI's first Senior Director.[1]  (D.I. 26-2 at 2).

- For the entire period of employment, Plaintiff was paid an annual salary in bi-weekly pay periods.  (D.I. 26-2 at 2; D.I. 51 at 10).

- As Senior Director, Plaintiff was a high-level executive with executive and administrative duties who reported directly to ASDI President and CEO, Defendant Alan Blize.  (D.I. 51 at 10; D.I. 26-2 at 2).

**B.    FLSA Allegations**

- Plaintiff does not contend that he was subject to an unlawful deduction or other action that otherwise affected his non-exempt status at any time during his employment.  (D.I. 51 at 18).

- Plaintiff was paid the salary at the agreed-upon rate for every workweek from his time of hire on September 11, 2006, until he was placed on leave and escorted from the premises on Tuesday, January 2, 2007.  (D.I. 51 at 18; D.I. 26-2 at 4).

- Plaintiff was advised that he would not be paid while on leave.  (D.I. 26-2 at 5).

- Initially, Plaintiff was not paid for the week of January 1, 2007, which included Monday, a paid holiday, and Tuesday, the day he was put on leave.  Plaintiff later was paid his full salary for the entire workweek as well as an additional, equal amount.  (D.I. 26-2 at 6; D.I. 51 at 20).

---

[1] Plaintiff's Answering Brief and Complaint make much of his allegation that he was "downgraded" on his first day of work by assuming the title of "Senior Director" instead of "Executive Director."  Never at a loss for hyperbole, Plaintiff calls this a "bait and switch."  One can only speculate, however, as to how this is relevant to Plaintiff's claims.  His Complaint and proposed First Amended Complaint are based entirely on the allegation that he was subsequently fired because of his dispute with one of the owner's wives.  In any event, Plaintiff makes no allegation that after the change in title he did not receive the same pay, benefits, and job responsibilities that were set forth in his offer letter of August 16, 2006.

1

**C.      COBRA Allegations**

- After he was placed on leave, Plaintiff's health insurance benefits continued without interruption until May 3, 2007.  (D.I. 51 at 13).

- On May 18, 2007, Plaintiff received a COBRA Notice from ASDI, which stated that a qualifying event had occurred on May 3, 2007, and, as a result he had a right to elect continuation coverage.  (D.I. 26-2 at 22-23).

- On June 13, 2007, forty-one days after the qualifying event, ASDI sent Plaintiff a COBRA rate sheet.  (D.I. 26-2 at 6; D.I. 51 at 14).

- Plaintiff has not alleged any harm caused by Defendants' action but, instead, seeks an award of civil penalties.  (D.I. 51 at 22-23).

**D.      Supplemental Jurisdiction**

- The alleged commonality between Plaintiff's many claims is that he was terminated because of a dispute with Defendant Blize's wife.  (D.I. 51 at 24),

- Plaintiff does not allege that his federal and state claims can be proven by the same set of facts.  (D.I. 51 at 15-21).

**E.      State Law Claims**

- His state-law claim brought under the Personnel File Act is based on the allegation that, on one occasion, he sent a single e-mail to ASDI to which he did not receive a response. (D.I. 51 at 28).

- Although he had obtained legal counsel less than a month after his alleged e-mail, neither he nor his counsel ever followed up on this request. (D.I. 26-2 at 5).

- Plaintiff does not claim that he suffered any harm as a result of the alleged conduct.  (D.I. 51 at 28).

- Plaintiff's claims for breach of the implied covenant of good faith and the state Whistleblower Act are essentially wrongful-termination claims based solely on the alleged dispute he had with Ms. Blize.  Plaintiff claims that he disapproved of the information Ms. Blize provided to a rejected job applicant regarding the reasons he was not hired.  (D.I. 51 at 25).

- Plaintiff claims that the act of sending a rejection letter to an unsuccessful job applicant somehow constitutes a "safety violation" but is unable to point to any authority to support his conclusion that this mundane act is illegal or in violation of public policy.  (D.I. 51 at 26-28).

2

**ARGUMENT**

I. **FEDERAL COURTS NOT "SUPER-PERSONNEL DEPARTMENTS" RESPONSIBLE FOR SUPERVISING THE FAIRNESS OF EMPLOYMENT DECISIONS**

At its essence, this case involves the claim of a former executive employee that he was unfairly terminated as a result of a dispute with his boss's wife. The federal courts have long refused to act as "super-personnel departments" when asked to review whether an employee's termination was "fair." *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 332 (3d Cir. 1995) (*quoting McCoy v. WGN Cont'l Broad. Co.,* 975 F.2d 368, 373 (7th Cir. 1992)). In an effort to create a federal case where one does not exist, Plaintiff piles claim upon claim, hoping that one may give him access to this Court. This is not, and should not be, the stuff of which an action in federal court is made.

II. **PLAINTIFF'S FLSA ALLEGATIONS DO NOT STATE A CLAIM FOR RELIEF**

There is no dispute, nary the contention, that John Dougherty was hired as an executive employee exempt from the overtime provisions of the FLSA. The FLSA requires nonexempt employees to be paid at an overtime rate equal to one and one half their regular rate for all hours over forty actually worked in a single workweek. As part of his effort to bombard Defendants with numerous claims, Plaintiff attempts to concoct a claim that he was somehow "retroactively converted" to a non-exempt employee because he was placed on leave without pay. He makes no allegation that anything occurred before that time that could make him non-exempt.

The FLSA Count of Plaintiff's Complaint is based on the allegation that he was suspended for one week without pay (despite the fact that he was later paid for the full week's salary). Plaintiff asks this Court to find that this temporary failure to pay actually constitutes a *deduction* in pay. Combined with his amended allegation that, "upon information and belief," Defendants may have made "deductions" from two other employees, Plaintiff claims, this

amounted to a "clear and particularized policy" that Defendants intended not to pay him on a salary basis for the entire time of his employment.  (D.I. 51 at 12).

The DOL, which has rule-making and interpretive responsibility for the FLSA, has made clear that the statute is not to be treated as a game of "gotcha."  Contrary to Plaintiff's suggestion, the DOL has instructed that the salary exemption is not to be construed in a hyper-technical way.  *See* 29 C.F.R. § 541.603(e) ("This section shall not be construed in an unduly technical manner so as to defeat the exemption.").

Plaintiff's argument therefore fails for four reasons.  First, despite his word choice, no deduction was ever made from Plaintiff's salary.  "Failure to pay" and "deduction" are not functional equivalents for purposes of the FLSA and, in fact, have very different implications. [2]

Second, even if the temporary failure to pay could be construed as a "deduction," Defendants have since paid Plaintiff in full.  Regardless of any other argument Plaintiff attempts to make, this payment ensures that his exempt status was preserved in accordance with the safe-harbor provision set forth in the regulations.  Third, his allegation of isolated deductions, even if true, does not constitute an "actual practice" of improper deductions as is necessary to lose the exemption.  Finally, even if Plaintiff could show that his salary was improperly docked, he could lose the exemption only for the week of January 1, 2007.  During that week, though, Plaintiff worked no overtime and cannot, then, be entitled to overtime.  Plaintiff's FLSA claim should be dismissed.

---

[2] *See Mendoza v. New Orleans*, No. 06-3040, 2007 U.S. Dist. LEXIS 38474, at *18 (E.D. La. May 24, 2007) (explaining that the FLSA's prohibition against deductions addresses "piecemeal deductions" for disciplinary infractions, not the failure to pay for the full workweek such as is the case in demotions, suspensions, or terminations).

066253.1003

A.    **Plaintiff's Exempt Status Was Preserved By Payment In Full
for the Week of January 1, 2007**

There is no dispute that ASDI has paid Plaintiff his salary for the week of January

2, 2007. As a result, even if this initial nonpayment somehow constituted an improper

"deduction," which it did not, the subsequent payment eliminated any basis for Plaintiff's FLSA

claim.

The DOL regulations provide that[3] "[i]mproper deductions that are either isolated

or inadvertent will not result in loss of the exemption . . . if the employer reimburses the

employees for such improper deductions." 29 C.F.R. § 541.603(c). This curative measure,

known as the "window of correction," allows an employer to preserve an employee's exempt

status by reimbursing the employee in the amount of any improper deductions. *See Elliott v.*

*Flying J., Inc*., No. CV205-22, 2006 U.S. Dist. LEXIS 26978, at *6 (S.D. Ga. May 5, 2006)

(explaining that the window of correction "protects employers who intend to pay their employees

on a salary basis but who, inadvertently and infrequently, dock an otherwise salaried employee").

Plaintiff argues that Defendants cannot use this window of correction because the

payment was made too late. In his brief, he states that "Defendant's payment more than one year

and four months later cannot, by itself, defeat a claim of loss of exemption." (D.I. 51 at 13)

(*citing* 29 C.F.R. § 541.603(c)). Although he cites the Regulations, he misapplies them entirely.

There is no time limit during which the reimbursement must be made. The DOL

made this clear in its preamble to the final FLSA regulations:

> The Department continues to adhere to current law that
> reimbursement does not have to be made immediately upon the
> discovery that an improper deduction was made. *See, e.g., Moore*
> *v. Hannon Food Serv., Inc.*, 317 F.3d 489, 498 (5th Cir.), *cert.*
> *denied*, 124 S. Ct. 76 (2003) (reimbursement made five days

---

[3] Regulations promulgated by the DOL are entitled to substantial deference. *Elizabeth Blackwell
Health Ctr. for Women v. Knoll*, 61 F.3d 170, 182 (3d Cir. 1995).

before trial held sufficient because reimbursement "may be made
at any time").

Preamble to Final DOL Regulations, 69 Fed. Reg. 22,122, 22181 (May 26, 2004).

Here, Defendants preserved Plaintiff's exempt status by paying him for the one

allegedly improper pay "deduction." *See Balgowan v. New Jersey*, 115 F.3d 214, 219 (3d Cir.

1997) findings that, if any employee's pay had been docked, the "window of correction"

exemption could be used by the employer to preserve the exempt status. As a result of

Defendants' undisputed payment, Plaintiff's FLSA claim cannot succeed.

**B.    Three Alleged Non-payments to Different Employees In
Different Job Classifications Cannot, as a Matter of Law,
Constitute an "Actual Practice" of Improper Deductions**

Plaintiff seeks to add an allegation that, "upon information and belief,"

Defendants docked the salary of two other employees for disciplinary reasons. (D.I. 51 at 12).

These new allegations, even if permitted, fall far short of an "actual practice" by Defendants to

intentionally not pay Plaintiff on a salary basis.

An "actual practice" of making improper deductions can be evidenced by factors

such as the frequency of the improper deductions, the time period when they occurred, and

whether the employer has a written policy permitting such deductions. 29 C.F.R. § 541.603(a);

*Yourman v. Giuliani*, 229 F.3d 124 (2nd Cir. 2000), *cert. denied*, 532 U.S. 923 (2001) (holding

that the plaintiff has the burden to prove an actual practice of impermissible deduction existed).

Here, Plaintiff admits that Defendants did not have any such written policy. And he makes no

allegation that his job duties were those of a nonexempt hourly employee.

As a preliminary matter, Plaintiff's allegations do not even support a claim for

relief under 29 C.F.R. § 541.603(b). There is no allegation that the two other employees who

allegedly suffered a pay deduction worked in the same job classification as Plaintiff. This is

undoubtedly because, as Plaintiff himself alleges, he was ASDI's first and only Senior Director.

Indeed, the sole basis for Plaintiff's FLSA claim is the vague and previously unmentioned allegation of two improper pay deductions. Based on "information and belief," Plaintiff now alleges that two other employees, Messrs. Regusters & Whittaker, may also have been subject to an unlawful deduction. Both individuals held different jobs than Plaintiff. And, according to Plaintiff's Answering Brief, one of the alleged deductions occurred even before Plaintiff was hired.

Three alleged deductions involving three different employees in different jobs at different time periods cannot, as a matter of law, create a cause of action under the FLSA. The Courts have held repeatedly that "identifying a few random, isolated, and negligible deductions is not enough to show an actual practice or policy of treating as hourly the theoretically salaried." *Kennedy v. Commonwealth Edison Co*., 410 F.3d 365, 372 (7th Cir. 2005); (three improper deductions within a one-year period were not an actual practice). *See, e.g., Cash v. Cycle Craft Co.,* 508 F.3d 680, 684 (1st Cir. 2007) (concluding that two salary deductions did not amount to an "actual practice" of making improper deductions); *Kennedy,* 410 F.3d at 372 (three improper deductions within a one-year period were not an actual practice); *DiGiore v. Ryan,* 172 F.3d 454, 464 (7th Cir. 1999) (evidence of five improper deductions did not constitute actual practice), *overruled on other grounds, Whetsel v. Network Prop. Servs*., 246 F.3d 897 (7th Cir. 2001).

And none of the legal authority cited by Plaintiff holds to the contrary. Indeed, in *Klem v. County of Santa Calara*, the district court found an actual practice only after the employer had made a total fifty-three improper deductions *and* where those deductions were made pursuant to a written policy. 208 F.3d 1085 (9th Cir. 2001). The facts of that case are without parallel to those of the present case. Additionally, the decision predates the issuance of the current DOL regulations, which were revisited in 2004. The "actual practice" requirement under the revised regulations *heightened* the burden for employees who, under the prior rule, could argue that there was a "significant likelihood" of improper deductions to establish a claim.

7

*See Winterwood v. Life Times Fitness*, No. 06-99, 2007 U.S. Dist. LEXIS 49777 at *22 (S.D. Ohio July 10, 2007).  Even if true, Plaintiff's allegations cannot, as a matter of law, support a finding that Defendants had an "actual practice" of improper deductions.

**C.     Even If Plaintiff Lost the Exemption, He Has No Claim For Relief**

There is no legal support for Plaintiff's position that the failure to pay his salary for one week somehow "retroactively converted" him to a non-exempt employee for his entire employment.  Indeed, if this Court were to find that Defendants had an actual practice of making improper deductions, the revised DOL regulations limit the loss of Plaintiff's exemption to "the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions." 29 C.F.R. § 541.603(b).  This limitation was fashioned by the DOL in part to prevent "a windfall to employees who have not even arguably been harmed by a 'policy' that a manager has never applied and may never intend to apply . . . "  69 Fed. Reg. 22, 122, 22, 180.  Ironically, the circumstances of this case provide a perfect example of why such a limitation was needed.

Plaintiff's claim fails for still another reason. The alleged deductions occurred on only two occasions: once before Plaintiff was hired and the other when he and Mr. Regusters were suspended on January 2, 2007.[4]  At the most, then, Plaintiff could lose his exempt status only for the week of January 1, 2007.

At worst, Defendants would be required to pay Plaintiff overtime compensation for any hours he worked over forty during the workweek of January 1, 2007.  But Plaintiff did not work over forty hours that week.  January 1 was a holiday, and on January 2, when Plaintiff

---

[4] Plaintiff alleges that Mike Regusters' improper deduction occurred at "the same time as Defendants' improper deduction of [his] salary."  (D.I. 51 at 12, n. 10).

reported to work, according to his own complaint, he was placed on leave and "escorted from the building." (D.I. 1 at 29-30).

In short, Plaintiff's FLSA claim amounts to nothing more than an unmeritorious hyper-technical argument. Even if he could show that Defendants had an actual practice of making improper deductions, something he cannot do, he still would not be entitled to relief. His FLSA claim should be dismissed as a misguided attempt at an undeserved windfall. It cannot seriously be claimed that a high-level executive employee, who reported directly to the CEO of the company, and who was paid on a salary basis throughout his employment should be treated as a non-exempt hourly employee.

## III.    PLAINTIFF'S COBRA CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiff's COBRA count presents yet another hyper-technical and unfounded statutory claim. The argument presented in Plaintiff's Answering Brief is twisted and demonstrably inaccurate, alleging that ASDI did not meet COBRA notification guidelines. Plaintiff incorrectly asserts that, where the employer is also the Plan Administrator, the notice period is fourteen days from the qualifying event. In his haste to have this Court punish the Defendants, Plaintiff has completely overlooked the applicable federal regulations.

Regulations promulgated by the DOL in May 2004 and amended in June 2004, unequivocally provide that the appropriate time period for issuance of a COBRA notice is forty-four days. This deadline is not affected by whether the employer is also the Plan Administrator. The regulation provides in pertinent part that, where the administrator and employer are one and the same:

> [T]he administrator of the plan . . . shall furnish to each qualified beneficiary a notice meeting the requirements of paragraph (b)(4) of this section not later than 44 days after . . . the date on which the qualifying event occurred.

29 C.F.R. § 2590.606-4(b)(2) (2004).

9

The DOL's regulations are given "controlling weight." *Chevron v. Nat'l Res. Defense Council, Inc.*, 467 U.S. 837, 843 (1984) (holding that regulations promulgated pursuant to express or implied Congressional authority are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute"). *See also, Pauley v. BethEnergy Mines,* 501 U.S. 680, 698 (1991) ("When Congress, through express delegation or the introduction of an interpretive gap in the statutory structure, has delegated policymaking authority to an administrative agency, the extent of judicial review of the agency's policy is limited"); *Ingram v. County of Bucks*, 144 F.3d 265, 268 (3d Cir. 1998) (stating that DOL Regulations are entitled to substantial deference).  Congress has specifically delegated to the Secretary of Labor the authority to promulgate regulations pertaining to the COBRA notice requirements.  Thus, the final regulations, which expressly provide for a forty-four day notice period, are controlling in the case.

There is no dispute that the qualifying event occurred on May 3, 2007.  (D.I. 51 at 15).  The COBRA notice received by Plaintiff on May 18, 2007, and the Rate Sheet received on June 13, 2007, both fall within the forty-four day period following the qualifying event.  Indeed, Plaintiff concedes that he got the rate sheet *forty-one* days after the qualifying event occurred on May 3, 2007.  (D.I. 51 at 17).  Accordingly, it is uncontested that all elements of a proper notice were timely sent and received.  Thus, Plaintiff's Complaint fails to state COBRA claim as a matter of law.

## IV.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS BECAUSE THEY DO NOT SHARE A COMMON NUCLEUS OF OPERATIVE FACTS

As Defendants addressed out in their Opening Brief, the doctrine of supplemental jurisdiction raises not only statutory issues but has important jurisprudential ramifications, as well.  Exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367.  The statute itself

states that the claims must be so interrelated as to form the part of the same case or controversy for Article III purposes.

The statute lists four circumstances where the Court may decline to exercise supplemental jurisdiction even if a minimal constitutional connection can be shown. *Id.* The four instances include when: (1) the claim raises a novel or complex issue of State law; (2) the state claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

In his Answering Brief, Plaintiff addresses just two of the four enumerated factors. First, Plaintiff argues that his multiple state-law claims share a common nucleus of operative facts with his FLSA and COBRA claims based on what he calls a "shared motive." Second, he argues that his state claims do not predominate over his federal claims.

A.    **An Alleged Common "Retaliatory Motive" Is Insufficient to Support Supplemental Jurisdiction Over Plaintiff's State Law Claims**

Plaintiff now claims, for the first time, that his federal claims share a "common motive," which satisfies the requisite common nucleus of operative facts. The supplemental jurisdiction inquiry focuses on whether there is a common factual basis for Plaintiff's claims. His contention that his federal claims share a so-called "common retaliatory motive" with his state claims fall far short of the required showing. The alleged retaliatory motive is irrelevant to Plaintiff's strained attempt to establish an FLSA violation based on his "improper deduction" theory.

Plaintiff's Answering Brief proves this point. (D.I. 51 at 9-14). Nowhere in his six-page argument does Plaintiff make any mention of a purported retaliatory motive based on

11

his disagreement with Ms. Blize, nevertheless make an argument that the alleged dispute is a

relevant "fact" to establishing his FLSA claim.[5]

   Notably, Plaintiff summarizes the factual allegations that he says support his

FLSA claim.  (D.I. 51 at 12-13).  Instead, his arguments deal only with his unsupported assertion

that Defendants had a "clear and particularized policy" of making of improper deductions.  No

mention is made of the alleged retaliatory motive, for obvious reasons.  "Motive" has nothing to

do with Plaintiff's FLSA claim.

   The same is true of Plaintiff's COBRA claim.  He ignores the applicable

regulations, which explicitly provide that Defendants had forty-four days to send him a rate

sheet.  Instead, Plaintiff attempts to fashion a claim that, because he received the rate sheet on the

forty-first day following the qualifying event, a violation somehow occurred.  The facts upon

which he relies for his COBRA claim deal with the timing of the COBRA notice and rate sheet.

The purported "retaliatory motive" is not mentioned because it is irrelevant to his COBRA

claims, just as it is to his FLSA claims.  (D.I. 51 at 15-17).

   Plaintiff makes a half-hearted attempt to address *Lyon v. Whisman* and its

progeny.  45 F.3d 758 (3d Cir. 1995)**.**  As pointed out in Defendants' Opening Brief in *Lyons,* the

Third Circuit addressed the problem with attempting to invoke the FLSA as the basis for

supplemental jurisdiction for state law employment claims, given the limited purpose of the

FLSA statute.  *Id.*  Given COBRA's similarly limited purpose, there can be no dispute that the

same policy applies.  As *Lyon* makes clear, federal courts are not to use the narrowly construed

statutes such as COBRA of the FLSA as a jurisdictional platform for state law employment

claims.  *Id.*

---

[5] Notably, Plaintiff's FLSA claim, by definition, seeks a remedy for non-payment of overtime
wages during his employment.  Both state law claims involve allegations that he was  improperly
terminated.

                              

Plaintiff does not contest this point. Instead, he simply attempts to distinguish *Lyon* with the brief statement that Defendants' argument "misses the mark" because it is Defendants' retaliatory conduct" that acts as the common cure fact. (D.I. 51 at 20). This argument is illogical and amounts to nothing more than a repetition of his prior, incorrect, allegation that a common motive alone can establish supplemental jurisdiction.

Plaintiff fails to even attempt to rebut the strong presumption using the FLSA to support supplemental jurisdiction, as created by *Lyon*.

Here, Plaintiff attempts to join together alleged FLSA and COBRA violations with a termination decision that his claims violate state law. As the Court in *Lyon* found, there is "no indication that Congress passed the FLSA with the expectation that it was authorizing federal courts to exercise far-reaching jurisdiction over state-law disputes arising from employment relationships." 483 F.2d at 302.

Plaintiff's citation to *In Re Prudential Insurance Company American Sales Practice Litigation*, is inapposite. 148 F.3d 283, 303 (3d Cir. 1998). Nothing in *Prudential* suggests that supplemental jurisdiction may be based on the mere allegation that unrelated state law employment disputes may be litigated in federal court just because Plaintiff alleges that they share a common motive.

(Further,) *Prudential* is not an employment case. It involved a national class action claim brought under state and federal deceptive-practices laws. Far from undermining *Lyon*, *Prudential* affirmatively recognizes that a "tangential relationship" between the state and federal claims is insufficient. *Id.* at 303. Further, *Prudential* cites *Lyon's* holding concerning the limited nature of supplemental jurisdiction while noting in particular that FLSA claims may only support supplemental jurisdiction in rare circumstances. *Id.* at 202. *Prudential*, therefore, actually, supports Defendants' argument.

13

**B.     Plaintiff's State Law Claims Predominate Over the Federal
Law Claims**

Plaintiff's state law claims predominate over his federal statutory claims. Despite Plaintiff's protestations to the contrary, *Lyon* and other authorities make clear that FLSA claims are very narrow cases dealing with the payment of minimum wages or overtime. Plaintiff's COBRA count is even more narrow, a technical attempt to extract a civil penalty.

Plaintiff's state law wrongful discharge claims are the predominate issue in this litigation. His Answering Brief again proves the point. When attempting to forge the required common nucleus of operative facts for his disjointed claims, Plaintiff does not point to his federal claims. Instead, he asserts that his termination, which he claims is a violation of state common law, and the State Whistleblower Act, is the conduct that ties his claims all together. Of course, as noted above, the purported dispute with Ms. Blize is not even mentioned in connection with his federal claims.

Further, his state law claims require far different liability allegations and broader damage claims. To establish liability, he must prove that he was terminated for reasons other than legitimate business reasons. Such a claim necessarily involves a detailed factual inquiry into the reasons for Plaintiff's dismissal and all of the facts and circumstances leading up to it.

And the remedies under the State Whistleblower Act are more broad than these available under FLSA or COBRA. The Act provides for remedies of actual damages, reinstatement, payment of back wages, expungement of records, and attorneys fees. 19 *Del. C.* § 1704. His common law breach of the implied covenant claim similarly also involves far broader relief, including alleged lost back wages and front pay.

His FLSA action, on the other hand, would warrant a simple overtime calculation (in this case none) for the workweek of the allegedly improper deduction. His COBRA Count asks only for imposition of a civil penalty. The predominate issues in this case are therefore

14

plainly the liability and damages issues arising from his state law counts dealing with his termination.

     **C.**     **Plaintiff's Belated Request that the Court Entertain His State Law Claims Based On Diversity Should Be Denied**

Diversity jurisdiction is raised for the first time in Plaintiff's Answering Brief. Although his Complaint was filed in October 2007, and his Motion to Amend on April 1, 2008, neither pleading includes a diversity claim.

The reference in his brief is not a Motion to Amend or other formal request, it is an attempt to make an alternative argument to support his already pending motion.

Plaintiff's failure to timely assert this basis for jurisdiction thus precludes him from doing so now for two reasons.  First, under the Case Scheduling Order, Plaintiff had until April 1, 2008, to request leave to amend (D.I. 14).  He filed a Motion to Amend to raise his new FLSA theory on that date.  (D.I. 26).  He did not plead diversity jurisdiction.  His suggestion in his Answering Brief that the Court consider his state law claims based on diversity jurisdiction is too little, too late.  The Court should not countenance Plaintiff's attempts to continuously raise or plead new theories to resuscitate the lifeless allegations of  the Complaint.

Second, fundamental principles of comity between the state and federal courts dictate that the state courts address the novel assertions he claims under the state whistleblower statute, his common law "wrongful discharge" claim, and his state personnel file claim.  The first two claims address Plaintiff's allegation that, somehow, this disagreement with Ms. Blize's letter was the equivalent of reporting health and safety issues. Without explanation, Plaintiff asserts that this violates "public policy" for purposes of his implied covenant claim and that it states a claim under the Whistleblower Act.  These novel allegations should be addressed by the state courts.

               

The common law breach of the implied covenant claim is a judicial exception to employment at will. The state courts have defined the specific categories for breach of the implied covenant of good faith. *See Lord v. Souder,* 748 A.2d 393 (Del. 2000). The federal courts should defer to the state court for the interpretation of Plaintiff's unusual argument.

Likewise, the state whistleblower act is recent legislation. In fact, there has been just one decision on the Act. *Tomer v. Sharp,* No. 329, 2007 Del. LEXIS 42 (Del. Jan. 30, 2007). Plaintiff's novel argument that the statute applies to his termination should be resolved by the state courts. Accordingly, this Court should deny Plaintiff's request that it entertain jurisdiction based on diversity of citizenship.

### D.    Plaintiff Has Withdrawn Count III of His Complaint Alleging a Violation of the State Wage Payment and Collection Act

Perhaps most troubling is Plaintiff's attempt to have this Court reinstate his Wage Payment and Collection Act claim after having explicitly withdrawn it on April 16, 2008. *See* E-Mail Correspondence, attached as Exhibit A. In his Reply Memorandum in support of his motion to amend, he confirms that "Dougherty has decided to drop . . . [his] claim based on Delaware's Wage Payment & Collection Act." (D.I. 38 at 8). He goes on to state that he "will pursue other remedies through alternate theories" based on his remaining state law claims. (D.I. 38 at 8).

Incredibly, in his Answering Brief, Plaintiff argues that his withdrawal of Count III was a simply a "gesture" to "streamline" the litigation. His sole basis for requesting that the Court reinstate his withdrawn claim is that, in his words, "[a]pparently," Defendants intend to resist his request for attorneys fees under the statute. (D.I. 51 at 14). Nothing in any of Plaintiff's representations to the Court or opposing counsel made the withdrawal of Count III contingent on any action by Defendants.

There can be no dispute that Plaintiff was well aware of Defendants' position on attorneys fees when he withdrew his claim.  Plaintiff even attached Defendants' letter dated April 18 as an Exhibit to his Reply Memorandum.  That letter states that Defendants would pay reasonable attorneys, if any, arising from any non-payment of salary.  (D.I. 51, at 38).

His agreement to withdraw Count III is hardly a "gesture."   It is a binding statement to the Court.  *See*, 18 C. *Wright & A. Miller, Federal Practice and Procedure*, § 4477 (1981).  Plaintiff should not now be permitted to "play fast and lose" with the Court and opposing counsel because he has had a change of heart, for tactical or other reasons.  *Chaffee v. Kraft Gen. Foods, Inc.,* 866 F. Supp. 1164, 1168 (D.N.J. 1995).  The doctrine of judicial estoppel and basic notions of fairness preclude Plaintiff's attempt to reinstate his previously withdrawn state law wage claim.  *Fleck v KDI Sylvan Pools, Inc.*, 981 F.2d 107 (3d Cir. 1992) (*citing Scarano v. Cent. R.R. Co.*, 203 F.2d 510 (3d Cir. 1953) (other citations omitted)).

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that they be granted judgment

on the pleading on Plaintiff's federal claims and that his state law claims be dismissed.

Respectfully submitted,

*/s/ Barry M. Willoughby*
Barry M. Willoughby, Esquire, (I.D. #1016)
Margaret M. DiBianca, Esquire (I.D. #4539)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302)571-6666; (302) 571-5008
Facsimile: (302) 576-3345; (302) 576-3476
E-mail: bwilloughby@ycst.com; mdibianca@ycst.com
Attorneys for Defendants

Dated:  June 3, 2008

DB02:6850109.4                                                                                      066253.1003

EXHIBIT A

009626.1048

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. McBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DiPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DiLIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J.A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH
JANET Z. CHARLTON

ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL
ELENA C. NORMAN
EDMON L. MORTON
JOHN E. TRACEY

JOSEPH M. BARRY
RYAN M. BARTLEY
SEAN M. BEACH
SANJAY BHATNAGAR
DONALD J. BOWMAN, JR.
MICHELE SHERRETTA BUDICAK
JEFFREY T. CASTELLANO
DOUGLAS T. COATS (MD ONLY)
KARA HAMMOND COYLE
KRISTEN SALVATORE DePALMA
MARGARET M. DiBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
KERRIANNE MARIE FAY
IAN S. FREDERICKS
JAMES J. GALLAGHER
WILLIAM E. GAMGORT
SEAN T. GREECHER
NATHAN D. GROW
STEPHANIE L. HANSEN
JAMES L. HIGGINS
PATRICK A. JACKSON
DAWN M. JONES
KAREN E. KELLER

JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
EVANGELOS KOSTOULAS
JOHN C. KUFFEL
TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN
MATTHEW B. LUNN
ADRIA B. MARTINELLI
KATHALEEN McCORMICK
MICHAEL W. McDERMOTT
TAMMY L. MERCER
MARIBETH L. MINELLA
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
ADAM W. POFF
ROBERT F. POPPITI, JR.
SARA BETH A. REYBURN
CHERYL A. SANTANIELLO
MONTÉ T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER
RICHARD J. THOMAS
TRAVIS N. TURNER
MARGARET B. WHITEMAN
SHARON M. ZIEG

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE  19801

P.O. BOX 391
WILMINGTON, DELAWARE  19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE  19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: (302) 571-5008
DIRECT FAX:  (302) 576-3476
mdibianca@ycst.com

SPECIAL COUNSEL
JOHN D. McLAUGHLIN, JR.
KAREN L. PASCALE
SETH J. REIDENBERG
PATRICIA A. WIDDOSS

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
BRUCE M. STARGATT
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

April 14, 2008

**BY HAND DELIVERY**

Timothy Holly, Esq.
Connolly Bove Lodge & Hutz, LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899

        Re:   Dougherty v. ASDI

Dear Tim:

        Please accept this correspondence as Defendants' response to your letter of April 9, 2008, in which you advised that Plaintiff intends to seek "unpaid salary" in the amount of $23,405.58 as additional damages under Count One of Plaintiff's Complaint. This claim is asserted on the ground that Plaintiff was "ready, willing, and able to work" and, therefore, should have been paid at his full salary during the time he was not working and was on administrative leave. You ask whether Plaintiff should cash the check sent by Defendants on April 8, 2008.

        This newly asserted claim is without merit. The Fair Labor Standards Act ("FLSA") expressly provides that "[e]xempt employees need not be paid for any workweek in which they perform no work." 29 C.F.R. § 541.602(a). Therefore, a claim asserting damages in the form of "unpaid wages" is, as a matter of law, unsustainable where Plaintiff does not dispute that he performed no work during the weeks at issue. It is, in fact, absurd. Should you continue to pursue this newly asserted claim, we intend to seek Rule 11 sanctions and will hold your client responsible for fees incurred in obtaining its dismissal.

        Because of the clarity of the FLSA on this point, Defendants contend that the payment previously provided in the form of the check referenced above fully resolves all of the

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

Timothy Holly, Esq.
April 14, 2008
Page 2

claims asserted by Plaintiff in Count One of his Complaint.  In short, the position taken by Defendants as asserted in my April 8th letter is unchanged.  I am hopeful that Plaintiff will accept the unconditional payment in resolution of the FLSA claim asserted in his Complaint.

Sincerely yours,

Margaret M. DiBianca

MMD:sec


cc:   Barry Willoughby, Esq. (via E-mail)
      Matthew Boyer, Esq. (via Hand Delivery)

# CONNOLLY BOVE LODGE & HUTZ LLP

### ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

Timothy M. Holly
DIRECT DIAL: (302)-252-4217
DIRECT FAX: (302)-658-0380
EMAIL:         tholly@cblh.com
REPLY TO:     Wilmington Office

April 16, 2008

**BY FIRST CLASS MAIL AND ELECTRONIC MAIL**

Margaret M. DiBianca, Esquire
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

### RE:    Dougherty v. Blize, et al., No. 07-574-SLR

Dear Molly:

We are in receipt of your letter dated April 14, 2008.  We do not believe our seeking of unpaid salary through the date of termination is any less absurd than:  (1) Defendants' clear violation of FLSA for the non-payment of salary during any workweek where Mr. Dougherty (and other ASDI employees) performed work, (2) the Defendants refusal to pay such wages for more than one year and four months (and then only after costly litigation was pursued), (3) the Defendants refusal for several months to give Mr. Dougherty the courtesy of clarifying his employment status, and (4) your continued refusal to acknowledge a violation of FLSA.

We will still seek salary after the first week of January 1, 2007 (e.g., for violation of the Whistle-Blower Protection Act and breach of the implied covenant of good faith and fair dealing).  However, to avoid unnecessary issues, we will not seek the same relief for Defendants' violation of the existing FLSA claim.[1]  Nonetheless, the existing FLSA claim is still valid as to the week of January 1, 2007.  As you know, attorneys' fees are mandatory under FLSA.  As set forth in your letter of April 8, 2008, Defendants have only agreed to pay attorneys' fees incurred as of April 8, 2008, "in an amount to be determined by a

---

[1] In a further effort to simplify this case, we will seek, at an appropriate time, to include within our Motion to Amend our Complaint the removal of our claim under the Wage Payment and Collection Act.  Thus, we will seek:  (A) the inclusion of the loss of exempt status FLSA claim (and obligation to pay Mr. Dougherty for the considerable overtime that he worked in 2006) and (B) removal of the Wage Payment and Collection Act claim.  If you have decided to stipulate to the amendment of our Complaint in both regards, please let me know and I will draft and send to you for your approval a proposed stipulation including a redlined and clean Amended Complaint.  Otherwise, we will raise the additional amendment issue as soon as practicable.

605065

Margaret M. DiBianca, Esquire
April 16, 2008
Page 2

court of competent jurisdiction." Therefore, the existing FLSA claim remains valid.

We will cash ASDI's long overdue check, reserving all claims of additional remedies available under FLSA (not including a claim for salary after the first week of January 2007).

Sincerely,

Timothy M. Holly

cc: John J. Dougherty (via electronic mail)
    Matthew F. Boyer, Esquire (via electronic mail)
    Barry Willoughby, Esquire (via hand delivery)

**DiBianca, Margaret**

| | |
|---|---|
| **From:** | Timothy M. Holly [THolly@cblh.com] |
| **Sent:** | Wednesday, April 16, 2008 4:46 PM |
| **To:** | DiBianca, Margaret |
| **Subject:** | RE: Dougherty Matter |
| **Attachments:** | Dougherty Matter |



Dougherty
Matter

        By "removal" I meant exclusion of the Wage Payment Act claim from the Complaint (not removal to State court).  Although we feel the claim has merit, we have decided to streamline the case and avoid the inevitable complexity of arguing about the definition of "wage", which includes "labor or services."  Stated most simply, we will be dropping our Wage Payment claim.  We will still seek similar damages under different theories (e.g., Whistler Blower and Implied Covenant).


This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information.  Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts.  Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.

1

**DiBianca, Margaret**

| | |
|---|---|
| **From:** | DiBianca, Margaret |
| **Sent:** | Wednesday, April 16, 2008 4:55 PM |
| **To:** | 'Timothy M. Holly' |
| **Subject:** | RE: Dougherty Matter |

**File:**          -1

In that case, we would be agreeable to stipulate to the amendment on both points (A and B) so long as you will stipulate to a briefing schedule for the defendants' 12(c) motion.

-----Original Message-----
From: Timothy M. Holly [mailto:THolly@cblh.com]
Sent: Wednesday, April 16, 2008 4:46 PM
To: DiBianca, Margaret
Subject: RE: Dougherty Matter

By "removal" I meant exclusion of the Wage Payment Act claim from the Complaint (not removal to State court).  Although we feel the claim has merit, we have decided to streamline the case and avoid the inevitable complexity of arguing about the definition of "wage", which includes "labor or services."  Stated most simply, we will be dropping our Wage Payment claim.  We will still seek similar damages under different theories (e.g., Whistler Blower and Implied Covenant).

This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information.  Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts.  Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.