# YOUNG CONAWAY STARGATT & TAYLOR, LLP

| | | | | |
|---|---|---|---|---|
| BEN T. CASTLE | ROBERT S. BRADY | | JOSEPH M. BARRY | EVANGELOS KOSTOULAS |
| SHELDON N. SANDLER | JOEL A. WAITE | THE BRANDYWINE BUILDING | RYAN M. BARTLEY | JOHN C. KUFFEL |
| RICHARD A. LEVINE | BRENT C. SHAFFER | 1000 WEST STREET, 17TH FLOOR | SEAN M. BEACH | TIMOTHY E. LENGKEEK |
| RICHARD A. ZAPPA | DANIEL P. JOHNSON | WILMINGTON, DELAWARE  19801 | DONALD J. BOWMAN, JR. | ANDREW A. LUNDGREN |
| FREDERICK W. IOBST | CRAIG D. GREAR | | MICHELE SHERRETTA BUDICAK | MATTHEW B. LUNN |
| RICHARD H. MORSE | TIMOTHY JAY HOUSEAL | P.O. BOX 391 | JEFFREY T. CASTELLANO | ADRIA B. MARTINELLI |
| DAVID C. MCBRIDE | MARTIN S. LESSNER | WILMINGTON, DELAWARE  19899-0391 | DOUGLAS T. COATS (MD ONLY) | KATHALEEN MCCORMICK |
| JOSEPH M. NICHOLSON | PAULINE K. MORGAN | | KARA HAMMOND COYLE | MICHAEL W. MCDERMOTT |
| CRAIG A. KARSNITZ | C. BARR FLINN | (302) 571-6600 | KRISTEN SALVATORE DEPALMA | TAMMY L. MERCER |
| BARRY M. WILLOUGHBY | NATALIE WOLF | (800) 253-2234 (DE ONLY) | MARGARET M. DIBIANCA | MARIBETH L. MINELLA |
| ANTHONY G. FLYNN | LISA B. GOODMAN | FAX: (302) 571-1253 | MARY F. DUGAN | D. FON MUTTAMARA-WALKER |
| JEROME K. GROSSMAN | JOHN W. SHAW | | ERIN EDWARDS | MICHAEL S. NEIBURG |
| EUGENE A. DIPRINZIO | JAMES P. HUGHES, JR. | | KENNETH J. ENOS | (PA & NJ ONLY) |
| JAMES L. PATTON, JR. | EDWIN J. HARRON | 110 WEST PINE STREET | KERRIANNE MARIE FAY | JENNIFER R. NOEL |
| ROBERT L. THOMAS | MICHAEL R. NESTOR | P.O. BOX 594 | JAMES J. GALLAGHER | ADAM W. POFF |
| WILLIAM D. JOHNSTON | MAUREEN D. LUKE | GEORGETOWN, DELAWARE  19947 | WILLIAM E. GAMGORT | ROBERT F. POPPITI, JR. |
| TIMOTHY J. SNYDER | ROLIN P. BISSELL | (302) 856-3571 | SEAN T. GREECHER | SARA BETH A. REYBURN |
| BRUCE L. SILVERSTEIN | SCOTT A. HOLT | (800) 255-2234 (DE ONLY) | NATHAN D. GROW | CHERYL A. SANTANIELLO |
| WILLIAM W. BOWSER | JOHN T. DORSEY | FAX: (302) 856-9338 | STEPHANIE L. HANSEN | MONTÉ T. SQUIRE |
| LARRY J. TARABICOS | M. BLAKE CLEARY | | JAMES L. HIGGINS | MICHAEL P. STAFFORD |
| RICHARD A. DILIBERTO, JR. | CHRISTIAN DOUGLAS WRIGHT | WWW.YOUNGCONAWAY.COM | PATRICK A. JACKSON | RICHARD J. THOMAS |
| MELANIE K. SHARP | DANIELLE GIBBS | | DAWN M. JONES | TRAVIS N. TURNER |
| CASSANDRA F. ROBERTS | JOHN J. PASCHETTO | DIRECT DIAL: (302) 571-5008 | KAREN E. KELLER | MARGARET B. WHITEMAN |
| RICHARD J.A. POPPER | NORMAN M. POWELL | DIRECT FAX: (302) 576-3476 | JENNIFER M. KINKUS | SHARON M. ZIEG |
| TERESA A. CHEEK | ELENA C. NORMAN | mdibianca@ycst.com | EDWARD J. KOSMOWSKI | |
| NEILLI MULLEN WALSH | EDMON L. MORTON | | | SENIOR COUNSEL |
| JANET Z. CHARLTON | JOHN E. TRACEY | | SPECIAL COUNSEL | CURTIS J. CROWTHER |
| | | | JOHN D. MCLAUGHLIN, JR. | |
| | | | KAREN L. PASCALE | OF COUNSEL |
| | | | SETH J. REIDENBERG | BRUCE M. STARGATT |
| | | | PATRICIA A. WIDDOSS | STUART B. YOUNG |
| | | | | EDWARD B. MAXWELL, 2ND |
| | | | | JOSY W. INGERSOLL |

June 20, 2008

**BY E-FILE**

The Honorable Leonard P. Stark
United States District Court for the District of Delaware
844 N. King Street,
Room 2325 Lockbox 26
Wilmington, DE 19801

             Re:   <u>*Dougherty v. ASDI, Inc., et al.*, C.A. No. 07-674-SLR/LPS</u>

Dear Judge Stark:

      Your Honor heard oral arguments in the above-referenced matter on Monday, June 16, 2008. During Defendants' argument, you asked Mr. Willoughby to provide case citations or supporting authority for some of his points. Where not otherwise supplied during argument, Defendants ASDI, Inc., and Alan Blize (collectively "ASDI"), respectfully submit the following supportive authorities for consideration on the pending motions.

      **A.**    **No Allegation of an "Actual Practice" Has Been Made**

      The Court also asked how the present Motion would be affected if the Court were to accept it's allegation that ASDI had an "actual practice" of taking improper deductions.[1] A review of Plaintiff's proposed Amended Complaint however, shows that Plaintiff has not alleged an "actual practice" of improper deductions. Instead, at Paragraph 46 of the proposed Amended Complaint, Plaintiff alleges that:

---

[1] <u>See</u> Transcript of Oral Argument held on June 16, 2008 ("Transcript") at 38-39; 40:4-8.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Leonard P. Stark
June 20, 2008
Page 2

> Upon information and belief, ASDI failed to pay not only Dougherty but also other ASDI exempt employees during disciplinary leave, even when such employees worked during a workweek, which amounts to a clear and particularized policy, which effectively communicates that deductions will be made in specific circumstances.[2]

On its face, this allegation clearly does not assert that an "actual practice" existed. Instead, it is a futile attempt to establish a claim by simply alleging the legal elements of such claim without any factual support. This type of conclusory allegation is insufficient to survive the present Motion.

In Bell Atlantic v. Twombly, the United States Supreme Court made clear that judges need not leave their common sense at the courthouse door when deciding a motion to dismiss.[3] In deciding the present Motion, the Court need not infer or assume facts not alleged in the proposed Amended Complaint.[4] Nor must the Court consider or regard as true conclusory allegations that are unsupported by facts.[5] And, contrary to Plaintiff's attempts to plead otherwise, the Court need not credit "legal conclusions draped in the guise of factual allegations."[6]

In applying Bell Atlantic, the Third Circuit has explained that a "showing," rather than a blanket assertion of an entitlement of relief is now required."[7] Plaintiff has failed to make the requisite "showing" in his proposed Amended Complaint. Instead, his claims are no more than a formulaic recitation of his interpretation of the elements of an FLSA.[8] Thus, the Court

---

[2] (D.I. 26-2 ¶ 46).

[3] 127 S. Ct. 1955 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

[4] See City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 263 (3d Cir. 1998).

[5] Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (the court need not accept as true "unsupported conclusions or unwarranted inferences").

[6] ChemTech Int'l, Inc. v. Chem. Injection Techs., No. 06-33455, 2007 U.S. App. LEXIS 21697, at *3-4 (3d Cir. Sept. 10, 2007).

[7] Phillips v. County of Allegheny, No. 06-2869, 2008 U.S. App. LEXIS 2513, at *14 (3d Cir. Feb. 5, 2008) (citing Twombly, 127 S. Ct. at 1965, n.3).

[8] Laffey v. Plousis, No. 05-2796-JAG, 2008 U.S. Dist. LEXIS 7528, at *10-11 (D.N.J. Feb. 1, 2008) ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.").

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Leonard P. Stark
June 20, 2008
Page 3

need not infer from Plaintiff's blanket allegations that ASDI had an actual practice of making improper deductions.[9]

### B.   Defendants Are Entitled to Use the Window of Correction

Similarly, the Court asked whether Defendants would be precluded from availing themselves of the "window of correction" provision if Plaintiff sufficiently pleaded that ASDI had some actual practice" of making improper deductions.[10] Mr. Willoughby responded that, as a matter of statutory construction, each of the regulation's subsections should be read independently and that the window of correction in subsection (c) is not affected by the finding of an actual practice under subsection (a).[11]

A review of the jurisprudence reveals that there is a dearth of caselaw on this issue. Those cases that have addressed it appear to be incongruous. Both the Fifth and Ninth Circuits have concluded that the availability of the window of correction is not affected by the existence of an actual practice.[12] Conversely, the Seventh Circuit does not permit an employer to utilize the window of correction where an actual practice has occurred.[13]

But the circuits seemingly are unanimous in holding that a few instances of alleged deductions cannot, as a matter of law, constitute an actual practice.[14] For example, even

---

[9] See Transcript at 40:18 – 41:8. Plaintiff's COBRA claim faces a similarly terminal fate. As noted by the Court, Plaintiff has alleged that "the [COBRA] notice ultimately received was false or deceptive and did not contain all the required information but [did not allege] any specifics." See Transcript at 24:3-8. By merely reciting the elements of a claim without providing any factual support, Plaintiff's COBRA claim is defective as a matter of law. See, e.g., Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) ("The pleader is required to set forth sufficient information to outline the elements of his claim or ot permit inferences to be drawn that these elements exist.").

[10] See Transcript at 38-39; 40:4-8. 29 C.F.R. § 541.603(c) (window of correction provision).

[11] See Transcript at 38-39; 40-41 (question and answer); 41:7-9 (Court's request for supportive authority).

[12] See Moore v. Hannon Food Serv., Inc., 217 F.3d 489 (5th Cir. 2003); Childers v. City of Eugene, 120 F.3d 944 (9th Cir. 1997). Cf Sharer v. Tandberg, Inc., No. 06-626, 2007 U.S. Dist. LEXIS 14246, at *17 (E.D. Va. Feb. 27, 2007) (holding that an actual practice precludes the window of correction defense).

[13] Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 372 (7th Cir. 2005).

[14] See id. (holding that deductions made for three employees does not constitute an actual practice).

Young Conaway Stargatt & Taylor, LLP
The Honorable Leonard P. Stark
June 20, 2008
Page 4

where four instances of docking were alleged to have occurred, the First Circuit has declined to find that an actual practice existed.[15]

### C. Consideration of Tendered Payment Is Proper

At oral argument, Your Honor asked whether the payment made to Plaintiff in an amount equal to two weeks' salary is a proper subject of consideration in the present Motion.[16] Mr. Willoughby responded that, because the payment is admitted by both parties, it is a proper subject of consideration under a motion to dismiss standard.[17] Indeed, it is well established that undisputed facts may be considered for purposes of deciding a 12(b)(6) motion to dismiss.[18]

But there is an additional ground upon which the payment properly may be considered. The fact that payment was tendered and accepted renders Plaintiff's claim moot, thereby stripping the Court of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[19] For purposes of the FLSA, where Defendants tender payment for the hours Plaintiff claims to have worked but not been paid, "Plaintiff no longer has a personal stake in the litigation, the case is moot, and subject matter jurisdiction is destroyed since 'there is no justification for taking the time of the court and the defendant in the pursuit of minuscule claims which defendant has . . . satisfied.'"[20] Where there exists a question of subject matter

---

[15] See Wright v. Monroe County, No. 05-628T, 2007 U.S. Dist. LEXIS 35143, at *18 (W.D.N.Y. May 14, 2007) (holding that "a single occurrence of a suspension without pay does not establish a 'practice' of suspending salaried employees without pay"); O'Brien v. Town of Agawam, 350 F.3d 279, 294 (1st Cir. 2003) (holding that four incidents of disciplinary pay reductions did not establish an "actual practice" of docking salaried employees for work-rule violations).

[16] See Transcript at 43:14-17.

[17] See Transcript at 43:18-25 – 44:1.

[18] Fed. R. Civ. P. 12(b)(6). See, e.g., EEOC v. Am. Cyanamid Co., No. 01-110-MLM, 2002 U.S. Dist. LEXIS 23325 (E.D. Mo. Oct. 8, 2002) (holding that the undisputed facts established the presence of particular factors that could be considered when determining whether there was successor liability for purposes of a motion to dismiss); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1996 (3d Cir. 1993) (finding, for purposes of a 12(b)(6) motion, that the court may consider, among other things, facts and documents undisputed by the parties).

[19] Fed. R. Civ. P. 12(b)(1).

[20] Yeboah v. C. Parking Sys., No. 069-0128, 2007 U.S. Dist. LEXIS 81256, at *5-6 (E.D.N.Y. Nov. 1, 2007) (quoting Abrams v. Interco, Inc., 719 F.2d 23, 32 (2d Cir. 1983)); accord Samson v. Apollo Res., Inc., 242 F.2d 629, 639-40 (5th Cir. 2001) (in the context of a fee petition resulting from the court's order dismissing FLSA claim where the defendants tendered checks to the plaintiffs midway through the trial that were, ostensibly, payment for hours worked but allegedly had not been credited).

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Leonard P. Stark
June 20, 2008
Page 5

jurisdiction, the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" but is not "confined to allegations in the plaintiff's complaint."[21]

This result would not be different even if Plaintiff had *not* accepted the offered payment.[22] For example, in Dellarussiani v. Donnelly Enterprises, Inc., the defendants made an offer of judgment as to two of the three counts of the plaintiffs' complaint.[23] The plaintiffs did not accept the offer and the defendants moved to dismiss.[24] The court granted the motion, finding that the offer was for an amount equivalent to "all of the relief plaintiffs sought," thereby causing the action to become moot.[25] In this case, Plaintiff has accepted payment in full satisfaction of his demands, thereby rendering Count I moot. As a result, the Court is without subject matter jurisdiction and Count I must be dismissed.[26]

    **D.**    **Failure to Plead Comparators**

Finally, even assuming, *arguendo*, that the Court could infer from Plaintiff's proposed allegation regarding a "clear and particularized policy," that Plaintiff was alleging an actual practice and that this constituted more than a mere conclusory allegation, Plaintiff's claim still must fail as a matter of law. Even if Plaintiff sufficiently pleaded an "actual practice" under subsection (a) of the regulation, his proposed Amended Complaint fails to meet the requirements of subsection (b), which states, in relevant part:

> If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the improper deductions. *Employees in different*

---

[21] Lightfoot v. United States, No. 08-170, 2008 U.S. Dist. LEXIS 25798, at *5-6 (E.D. Pa. Mar. 31, 2008) (holding that a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" but is not "confined to allegations in the plaintiff's complaint" to resolve factual issues bearing on jurisdiction") (quoting Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997)).

[22] See, e.g., MacKenzie v. Kindred Hosp. E., LLC, 276 F. Supp. 2d 1211, at *21 (M.D. Fla. 2003).

[23] Dellarussiani v. Donnelly Enters., Inc., No. 07-7387, 2008 U.S. Dist. LEXIS 7387, at *4 (S.D. Ohio Jan. 18, 2008).

[24] Id.

[25] Id. at *3.

[26] The Court is obligated to address *sua sponte* a lack of subject matter jurisdiction any time it may appear not to exist. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction, the court cannot proceed at all in any case.").

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Leonard P. Stark
June 20, 2008
Page 6

> *job classifications or who work for different managers do not lose their status as exempt employees.*[27]

It is undisputable that Plaintiff has failed to allege any of the three elements required by subsection (b) to survive dismissal. He does not identify (1) other employees who shared his job classification; (2) the manager to whom he and other, similarly situated employees reported; or (3) any similarly situated employees who reported to the same manager and who were subject to improper deductions on January 2, 2007.

Plaintiff identifies his position as "Senior Director" in his proposed Amended Complaint.[28] But he makes no allegation that there were any other Senior Directors or other employees in his job classification. Further, Plaintiff fails even to identify to whom he reported, nevertheless allege that there were other employees in his job classification that *also* reported to that manager. Subsection (b) is unequivocal that, even if Plaintiff has shown an "actual practice" under subsection (a), "[e]mployees in different job classifications or who work for different managers do not lose their status as exempt employees."[29] Plaintiff's failure to allege any of these three required elements makes his proposed amended complaint insufficient, as a matter of law, to establish the loss of his exempt status as a matter of law.

Accordingly, even accepting as true the allegations of Plaintiff's proposed Amended Complaint, his status as an exempt employee was not lost as a matter of law. Count I of Plaintiff's proposed Amended Complaint, therefore, should be dismissed.

E.   **The Latest Iteration of Plaintiff's COBRA Claim Is Specious**

The proposed Amended Complaint alleges that Defendants provided "false and / or deceptive" information in the COBRA notice sent to Plaintiff.[30] As the Court pointed out during oral argument, "there are no specifics" in the proposed Amended Complaint as to what exactly it is that Plaintiff alleges to be false or deceptive.[31] In response, Plaintiff's counsel raised, for the first time, an allegation that information was wrongfully *omitted* from the

---

[27] 29 C.F.R. § 541.603(b) (emphasis supplied).

[28] (D.I. 26-2 at ¶ 13).

[29] 29 C.F.R. § 541.603(b).

[30] (D.I. 26-2 ¶ 52). The Proposed Amended Complaint also alleges that the COBRA notice was untimely. (D.I. 26-2 at ¶ 52). But Plaintiff withdrew this allegation during oral argument. See Transcript at 27:25 – 28:1-3.

[31] See Transcript at 24:3-8.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Leonard P. Stark
June 20, 2008
Page 7

Notice.[32]  At that time, Plaintiff's counsel represented that there was "just one specific thing that was omitted"—the identification of the qualifying event.[33]

This newly asserted claim is specious for several reasons.[34]  First, it is directly contradicted by Plaintiff's own pleadings.  His proposed Amended Complaint explicitly alleges that "[t]he COBRA notice form states that the date of Mr. Dougherty's termination (the date he qualified for COBRA coverage) was May 3, 2007."[35]

Second, despite Plaintiff's counsel's representation to the contrary, Defendants have indeed identified the date of Plaintiff's termination.  Defendants stated unequivocally in their interrogatory responses that Plaintiff "was separated from employment on May 3, 2006."[36]  Third, again despite Plaintiff's counsel's representation to the contrary, the COBRA notice certainly does identify the qualifying event as "termination of employment."

Following oral argument, Defendants' counsel pointed out to Plaintiff's counsel the inaccuracy of its representation that the qualifying event had not been identified in the COBRA notice form.  Plaintiff has since conceded this point.  Yet, incredibly, Plaintiff still refuses to dismiss his COBRA claim.  Instead, he now claims that he wants to pursue the

---

[32] Notably, the proposed Amended Complaint does not contain any such allegation.  Paragraph 52 states that Defendants violated COBRA by "includ[ing] in the untimely notice false and / or deceptive information."  Plaintiff withdrew his untimeliness claim during oral argument.  See Transcript at 27:25 – 28:1-3.  Paragraph 53 of the proposed Amended Complaint goes on to allege that, "[a]lso in violation of COBRA, Mr. Blize and ASDI failed to supply required information including a rate sheet."  In his Answering Brief in Opposition to the present Motion, Plaintiff set forth in great detail his several COBRA contentions, all relating exclusively to the timeliness of the rate sheet.  (D.I. 51 at 16).  Despite having filed two briefs for his Motion to Amend (D.I. 26, 38), and an answering brief for the present Motion (D.I. 51), at no time did Plaintiff so much as imply that any required information had been omitted from the COBRA notice.  Where, as here, it is "beyond contention that Plaintiff's Complaint, on its face, fails to provide any indication of" omitted information, Plaintiff will not be permitted to "escape the fact that his Complaint" does not allege a COBRA claim.  See Bintliff-Ritchie v. Am. Reinsurance Co., No. 05-3802-GEB, 2007 U.S. Dist. LEXIS 10469, at *15 (D.N.J. Feb. 15, 2007).

[33] See Transcript at 25:16-25.

[34] The addition of substantive arguments to one's allegations at this stage of the pleadings and in the context of oral argument is inappropriate and such arguments should not be considered in support of Plaintiff's claims.  See Alberti v. Ron Lewis Auto. Group, No. 05-100, 2006 U.S. Dist. LEXIS 65544, at *23, n.9 (W.D. Pa. Setp. 13, 2006) (quoting Commw. of Pa. Ex Rel Zimmerman v. PepsiCo., Inc., 836 F.2d 173, 181 (3d Cir. 1988)) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").

[35] (D.I. 26-2 at ¶ 41).

[36] (D.I. 28 at No. 21).

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Leonard P. Stark
June 20, 2008
Page 8

COBRA count to dispute the "real" date of his termination, apparently as some type of a constructive discharge theory.

This position is unsupportable. Congress' intent in requiring that the COBRA notice identify the nature of the qualifying event is wholly unrelated to any constructive discharge claim. The purpose of the requirement is to provide the employee with information sufficient to determine the length of time for which he may qualify for COBRA continuation coverage.[37] A terminated employee, such as Plaintiff, may continue coverage for up to eighteen months, whereas other qualifying events, such as divorce entitle an employee with continued coverage for up to thirty-six months.[38]

Perhaps Plaintiff intends to assert that he was terminated in January 2, 2007, thereby rendering the date of the qualifying event as stated on the notice (May 3, 2007), "false and / or deceptive" information. This argument assumes that the date of the qualifying event and the date of termination must be the same. Again, this assumption is unsupportable.

Pursuant to the unambiguous language of the regulations, the qualifying event does not occur until there is a *loss of coverage*. Although termination often does result in loss of coverage, this is not always the case. An employer may "terminate" an employee but continue to provide insurance coverage, in which case, no qualifying event has occurred.[39] There is no qualifying event for the purposes of COBRA until the employee loses coverage.

Thus, even assuming, *arguendo*, that Plaintiff was fired on January 2, 2007, and ASDI chose to voluntarily continue coverage until May 3, 2007, the COBRA notice is entirely accurate. It states that the *qualifying event* occurred on May 3, 2007 and identifies the *cause* of the qualifying event as termination of employment. Both facts are indisputably truthful.

---

[37] See EBSA Final Rule, Health Care Continuation Coverage; Vol. 69, No. 102, p. 30093 (May 26, 2004) ("Coverage generally extends for up to 18 or 36 months, depending on the nature of the qualifying event.").

[38] See 29 U.S.C. § 1163 (defining "Qualifying Event" as any of the six enumerated events "which, but for the continuation coverage required under [the statute], would result in the loss of coverage of a qualified beneficiary"); 29 U.S.C. § 1162(2)(A)(i, iv) (requiring the "Period of Coverage" to extend up to 18 months for qualifying events of termination of employment and reduced hours and up to 36 months for other qualifying events).

[39] See Jachim v. Kutz, Inc., 783 F. Supp. 1328, 1332 (D. Utah 1992) (holding as a matter of law pursuant to Rule 12(b)(6) that no qualifying event occurred until the employee lost coverage where she continued to be covered under the employer's health care plan for ten months after she stopped working); Aquilera v. Landmark Hotel-Metaire, No. 92-1815, 1992 U.S. Dist. LEXIS 19720, at *7 (E.D. La. Dec. 18, 1992) (concluding that the qualifying event occurred when the employee lost health coverage and rejecting plaintiff's claim that the date of the qualifying event occurred on the date she was "effectively terminated" by defendant when she was put on an involuntary leave of absence).

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Leonard P. Stark
June 20, 2008
Page 9

    Indeed, it is not an exaggeration to state that Plaintiff's latest rendition of his COBRA claim borders on the absurd. Employers regularly terminate employees but continue their medical coverage beyond their dismissals for reasons of compassion or otherwise. For that reason, numerous authorities discuss the fact that regardless of *when* a dismissal occurs, the qualifying event takes place at time coverage is lost.[40] Indeed, even aside from extended periods of coverage as described above, it is common practice for an employer to continue an employee's medical coverage through his final month of employment.

    Plaintiff's latest claim is a dramatic demonstration of the hyper-technical approach he is forced to employ. There is no logical basis nor legal authority to support this or any other version of Plaintiff's COBRA claim. Accordingly, Count II should be dismissed.

  **F.**  **Supplemental Jurisdiction May Be Decided At This Stage of Litigation**

    The Court also asked Mr. Willoughby whether the issue of supplemental jurisdiction is one that can be decided on a motion to dismiss. The answer to that question is "yes," as was recently explained by Magistrate Judge Thynge.[41]

                Sincerely yours,

                */s/ MMDiBi*

                Margaret M. DiBianca, Esq. No. 4539

MMD:sec

cc:  All Counsel of Record (via CM/ECF)

---

[40] See id.

[41] See Paul v. Deloitte & Touche LLP, No. 06-225-MPT, 2007 U.S. Dist. LEXIS 60639, at *11 (D. Del. Aug. 20, 2007) (relying on Lyon v. Whisman, 45 F.3d 758, 760 (3d Cir. 1995), and holding that the plaintiff's state law claims for breach of the covenant of good faith and fair dealing and for breach of contract did not share a common nucleus of operative fact with his ADEA claim and, for that reason, granting the defendants' partial motion to dismiss for lack of jurisdiction despite the plaintiff's claim that supplemental jurisdiction did exist).