IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN J. DOUGHERTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 07-674-SLR-LPS |
| | ) |
| ALAN BLIZE, and ASDI | ) |
| INCORPORATED, a Delaware | ) |
| Corporation, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION REGARDING
PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT AND DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS AND TO DISMISS PLAINTIFF'S
STATE LAW CLAIMS FOR LACK OF JURISDICTION**

Pending before the Court in this employment case are the following motions:

(i) Plaintiff's Motion to Amend the Complaint (D.I. 26) and (ii) Defendants' Motion for

Judgment on the Pleadings and to Dismiss Plaintiff's State Law Claims for Lack of Jurisdiction

(D.I. 41). For the reasons set forth below, I recommend that Plaintiff's Motion be DENIED and

that Defendants' Motion be GRANTED IN PART AND DENIED IN PART.

**BACKGROUND**[1]

Plaintiff John Dougherty, a citizen of Pennsylvania, was offered employment by

Defendants, ASDI, Inc., a Delaware corporation, and ASDI co-owner and chief executive officer

---

[1] As I am considering a motion to dismiss, this Background takes the allegations in the Complaint and the Amended Complaint as true.

Alan Blize, on August 16, 2006. (D.I. 1 ¶¶ 1-3, 6) Dougherty began his employment as Senior Director on September 11, 2006. *Id.* ¶ 12. He was promised an annual salary of $87,500 plus bonuses. *Id.* ¶ 7.

Dougherty alleges that in late November 2006, Kabana Perkins, an ASDI manager, came to him claiming that ASDI's Director of Staffing – Blize's wife, Trula Blize – had jeopardized Perkins' safety by explaining to a "potentially dangerous" job applicant that the applicant had been rejected based on Perkins' recommendation. *Id.* ¶¶ 15-16. During a meeting with Perkins and Alan Blize to discuss Perkins' concerns, Dougherty recommended that such confidential communications not be divulged to unsuccessful job applicants in the interest of workplace safety. *Id.* ¶ 18. Dougherty alleges that Blize initially assured him that he had acted in accordance with his duties, but that a few days later he was warned by a fellow employee to "'watch your back' because 'Thula really has it in for you.'" *Id.* ¶¶ 19-20.

On December 21, 2006, Dougherty was stripped of certain managerial responsibilities for a period of one month, purportedly so that could be "re-trained." *Id.* ¶ 24. Dougherty alleges that this action was in retaliation for his proper handling of the Perkins matter. *Id.* ¶ 25.

January 1, 2007 was a paid holiday. *Id.* ¶ 29. Dougherty reported to work on January 2, 2007. *Id.* At 1 p.m., he was called into a meeting with Alan Blize and blamed for a project delay that occurred after the time Blize had stripped Dougherty of all responsibility over projects. *Id.* ¶¶ 28-29. Blize then placed Dougherty on a leave of absence, without indicating whether the leave would be paid. *Id.* ¶ 29.

On January 4, 2007, Dougherty sent an e-mail to Alan Blize requesting clarification of his employment status; he received no response. *Id.* ¶ 32. After failing to receive his pay check as scheduled on January 19, 2007, Dougherty made a further inquiry and was informed by

ASDI's Director of Finance that Alan Blize "had decided, just that week, not to pay [] Dougherty for the pay period beginning January 1." *Id.* ¶ 34. On January 23, 2007, Dougherty e-mailed Thula Blize a request that he be allowed to inspect his personnel file, but his request was ignored. *Id.* ¶ 37.

Defendants continued to pay Dougherty's health insurance premium through May 3, 2007. *Id.* ¶ 41. On May 18, 2007, Dougherty received a Consolidated Omnibus Budget Reconciliation Act ("COBRA") notification form from ASDI apprising him of his right to health care continuation benefits. *Id.* ¶ 40. The form indicated that Dougherty became eligible for COBRA coverage on "the date of [his] termination" by ASDI, which was listed as May 3, 2007. *Id.* ¶ 41. ASDI failed to include a rate sheet with the COBRA election form. *Id.* ¶ 42. On May 22, 2007, Dougherty sent ASDI an e-mail requesting "information required by COBRA," and ASDI sent him the rate sheet on June 13, 2007. *Id.* ¶¶ 43-44.

Dougherty filed his Complaint on October 26, 2007. (D.I. 1) It alleges six counts, the first two of which arise under federal law: violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and COBRA, 29 U.S.C. § 1161 *et seq*. The remaining four counts arise under state law, alleging violations of Delaware's: Wage Payment and Collection Act ("Wage Act"), 19 Del. C § 1101 *et seq.*; Whistleblower Protection Act ("Whistleblower Act"), 19 Del. C. § 1701 *et seq.*; Right to Inspect Personnel File Act ("Personnel File Act"), 19 Del. C. § 730 *et seq.*; and implied covenant of good faith and fair dealing.

On April 1, 2008, Dougherty filed a motion for leave to file an Amended Complaint. (D.I. 26) The proposed Amended Complaint differs from the original Complaint in that it seeks to add a new paragraph 46, which would amend the FLSA claim (Count I) to add the allegation that ASDI engaged in a practice of taking improper deductions from multiple salaried

3

employees, which resulted in ASDI's loss of exemption from FLSA overtime pay requirements with respect to Dougherty's employment. *Id.* ¶ 3. Specifically, paragraph 46 of the proposed Amended Complaint alleges: "upon information and belief, ASDI failed to pay not only Dougherty but also other ASDI exempt employees during disciplinary leave, even when such employees worked during a workweek, which amounts to a clear and particularized policy, which effectively communicates that deductions will be made in specific circumstances." *Id.* The Amended Complaint further seeks to add unpaid overtime wages as a remedy for the FLSA violation. (D.I. 26, Ex. A ¶ 49)

In a second version of the proposed Amended Complaint – this one attached to Dougherty's Reply Memorandum in support of his Motion to Amend – Dougherty seeks also to withdraw his original Count III, the Delaware Wage Act claim. (D.I. 38, Ex. C) Dougherty's attorney has explained that he decided to withdraw Count III as a result of ASDI's agreement to pay Dougherty for the wages he would have earned the week of January 2, 2007. (D.I. 51 at 14) Defendants (hereinafter referred to as "ASDI") also paid Dougherty an additional amount equal to this week of wages – which is the amount of penalty that was potentially available to Dougherty under the Wage Act – and agreed to pay Dougherty reasonable attorney's fees, if any, to which he would have been entitled under the Wage Act. *Id.*

On May 2, 2008, ASDI moved for judgment on the pleadings and to dismiss Dougherty's state law claims. (D.I. 41) Briefing was completed on June 4, 2008. (D.I. 58)[2]

---

[2] Briefing was completed prior to the hearing. Nevertheless, four days after the hearing, on June 20, 2008, ASDI submitted a nine-page, single-spaced letter, essentially constituting another brief on the pending motions. (D.I. 61) ASDI never sought leave to file a supplemental brief, nor did I ask the parties to provide any additional written submissions. ASDI's filing is in violation of D. Del. LR 7.1.2, which provides that after the reply brief "no additional papers shall be filed absent Court approval." Because ASDI's impermissible letter brief adds nothing

4

This case was referred to me on November 7, 2007. (D.I. 5) I held a hearing on the pending motions on June 16, 2008. (D.I. 60)

## LEGAL STANDARDS

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, the Court "should freely give" leave to amend "when justice so requires." The Court has discretion, however, to deny a proposed amendment "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005). "Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. If the proposed amendment is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Koken v. GPC Intern, Inc.*, 443 F.Supp.2d 631, 633-34 (D. Del., 2006) (internal citations and quotation marks omitted).

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) alleging a failure to state a claim upon which relief can be granted is properly analyzed under the same standard as a Rule 12(b)(6) motion to dismiss. *See Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." A motion to dismiss requires a court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether

---

substantive to the issues before me, it has not affected my analysis. For this reason, I did not require Dougherty to respond, despite his offer to do so. (D.I. 62)

5

a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted). Thus, a court may grant a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Bell Atlantic*, 127 S. Ct. at 1974. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of a plaintiff's claim. *Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315, 321-22 (3d Cir. 2008) (internal quotation marks omitted). Nor is the Court obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## DISCUSSION

A.   Count I – FLSA

Count I alleges a claim pursuant to the FLSA for unpaid wages, liquidated damages, attorney's fees, and costs. In the original Complaint, Dougherty alleges that ASDI "unlawfully paid/failed to pay" him. (D.I. 1 ¶ 47) The proposed amendment, described above, modifies Count I to include "an alternative claim that Dougherty's employment status was, through the actions of ASDI, converted from . . . exempt status to non-exempt status," thereby requiring ASDI to pay him overtime wages. (D.I. 26 at 2) Under this new theory, Dougherty was automatically converted to non-exempt status at the time he began employment with ASDI by the actions of ASDI with regard to prior employees. (D.I. 38 at 3)

The FLSA "exempts bona fide executive, administrative, or professional employees from overtime pay requirements." *Auer v. Robbins*, 519 U.S. 452, 454 (1997) (internal citation omitted). Under regulations promulgated by the Secretary of Labor, an employer loses its exemption from paying for overtime when it "makes improper deductions from salary . . . if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a). Factors to consider in determining whether an actual practice of making such deductions exists include: "the number of improper deductions," "the time period during which the employer made improper deductions," "the number and geographic location of employees whose salary was improperly reduced," "the number and geographic location of managers responsible for taking the improper reductions," and "whether the employer has a clearly communicated policy permitting or prohibiting improper deductions." *Id.*

I conclude that Count I of the original Complaint fails to state a claim on which relief may be granted. Under the applicable regulations, "[i]mproper deductions that are either isolated or inadvertent will not result in loss of the exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions." 29 C.F.R. § 541.603(c). Dougherty concedes that he has been reimbursed for the non-payment of his salary for the week of January 1, 2007, albeit "one year and four months later." (D.I. 51 at 13; D.I. 60 at 6) The regulations do not speak to the timing of an effective reimbursement, but courts have found reimbursement occurring much later than here to be sufficient to preserve an employee's exempt status under the FLSA. *See Moore v. Hannon Food Serv., Inc,* 317 F.3d 489, 498 (5th Cir. 2003) (reimbursement just before trial preserved exemption).

Even as restated in the proposed Amended Complaint, Count I would still fail to state a claim on which relief may be granted. The regulations provide that even

> [i]f the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions. Employees in different job classifications or who work for different managers do not lose their status as exempt employees.

29 C.F.R. § 541.603(b). Even taking the allegations in the Amended Complaint as true, there is still no allegation that ASDI took "improper deductions" from Dougherty's salary at any point, now that he has been (as is uncontested) paid his full salary for the week of January 1, 2007. Moreover, to constitute an "actual practice of making improper deductions," ASDI would have had to have taken improper deductions from more than one employee working for the same manager. This necessary element, too, is not alleged: it is undisputed that Dougherty was the

sole "Senior Director" and the only person to report directly to Blize.[3] All that is alleged in the proposed new paragraph of the Amended Complaint is that ASDI had a policy of taking improper deductions from employees in different job classifications who work for different managers[4] – but this, even if true, would not cause ASDI to lose the exemption with respect to Dougherty.

Dougherty questions this interpretation of the regulation, arguing that it permits employers to take improper deductions from employees who constitute a "class of one;" that is, those employees whose jobs are unlike anyone else's in the company. *See* D.I. 60 at 8-11. Rather than undermining the plain language of the regulation, however, in my view this argument illustrates the poor fit between Dougherty's claim and the purposes of the FLSA. The FLSA is intended primarily to protect employees, not managers; its overtime protections are for the benefit of workers who are paid hourly wages for a fixed number of hours in a week, not for executives who are paid a salary and do not work the same number of hours each pay period. *See generally McDowell v. Cherry Hill Township*, 2005 WL 3132192, at *5 (D.N.J. Nov. 21, 2005) ("The Fair Labor Standards Act establishes certain minimum labor standards necessary to aid the unprotected, unorganized, and lowest paid of the nation's working population . . . who

---

[3]*See* Defendants' Answer to Motion to Amend: "During his employment, the department Directors reported to Plaintiff, who, in turn, reported directly to ASDI President and CEO Alan Blize. No other employee reported directly to Blize." (D.I. 36 ¶ 18)

[4]Dougherty alleges that two other ASDI employees suffered from improper deductions: Mike Regusters, who was placed on leave at the same time as Dougherty, and Wayne Whittaker, who was subject to deductions in 2006 before Dougherty was hired. (D.I. 26 ¶ 2; D.I. 38 ¶¶ 6, 9 & n.5) But these allegations, even if true, do not help Dougherty because, among other reasons, Dougherty does not allege he was subjected to improper deductions during the same period that Regusters or Whittaker were – in Regusters' period Dougherty was paid (or, more precisely, reimbursed) and in Whittaker's period Dougherty was not even employed by ASDI.

lack[] sufficient bargaining power to secure for themselves a minimum subsistence wage.") (internal quotation marks omitted).

Dougherty's allegation of a practice of improper deductions, a practice that was purportedly so well established that it should deprive ASDI of the FLSA exemption retroactively back to the first day of Dougherty's employment, is also in tension with his further allegations that: (i) the improper deductions were a result of ASDI's "retaliatory motive" to harm him following the Perkins matter in November 2006; and (ii) ASDI's Director of Finance informed Dougherty that Blize waited until the week of January 17 – i.e., more than two weeks after ASDI's "policy" of making improper deductions would have been triggered – to decide not to pay Dougherty for the pay period beginning January 1. (D.I. 1 ¶ 34) *See generally* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 (3d ed. 2006) ("The district court will not accept as true pleading allegations that are contradicted by . . . other allegations . . . incorporated in the pleading.").

To the extent that any doubts may remain as to the proper disposition of Dougherty's FLSA claim, they are answered by 29 C.F.R. § 541.603(e), which provides that the exemption regulations "shall not be construed in an unduly technical manner so as to defeat the exemption." An employer's exemption from overtime payments is lost only "if the facts demonstrate that the employer did not <u>intend</u> to pay employees on a salary basis." 29 C.F.R. § 541.603(a) (emphasis added). Dougherty was hired as a high-level executive, does not allege that any improper deductions were made from his salary prior to the week of January 1, 2007, and concedes that he was eventually paid his full salary for that week. To conclude from these alleged facts that ASDI did not intend to pay Dougherty on a salary basis would require an unduly technical, and implausible, interpretation of the regulations.

Because even the amended version of Count I would fail to state a claim on which relief may be granted, the proposed amendment is futile. I therefore recommend that ASDI's Motion for Judgment on the Pleadings as it relates to Count I be GRANTED and Dougherty's Motion to Amend the Complaint be DENIED.

B.  Count II – COBRA

Dougherty's Complaint alleges that ASDI, as employer and health plan administrator, (1) failed to notify him of his entitlement to continuation health coverage under COBRA within the time period COBRA required; (2) included "false and/or deceptive information" with the untimely COBRA notification form; and (3) failed to supply him with "required information including a rate sheet." (D.I. 1 ¶¶ 50-52)

The untimeliness allegation has now been withdrawn. During the hearing, counsel for Dougherty conceded that, taking as true the allegation that ASDI was both employer and plan administrator, ASDI had forty-four days from the date of the qualifying event to provide him with notice of his COBRA entitlement. 29 C.F.R. § 2590.606-4(b)(1)-(2); *see also* D.I. 60 at 27-28. The Complaint alleges that the qualifying event occurred on May 3, 2007, that the notification was received by Dougherty on May 18, 2007, and that the COBRA rate sheet was sent by ASDI on June 13, 2007 – all within the forty-four day period. (D.I. 1 ¶¶ 40-41, 44; D.I. 60 at 27-28)

By contrast, Dougherty's allegations that the COBRA notice he received was false and/or deceptive and incomplete do state claims on which relief may be granted. For example, Dougherty questions the veracity of the notice's indication that the date of the qualifying event was May 3, 2007 and argues that the notice failed to identify the nature of the qualifying event. (D.I. 60 at 27) At this point, I must take Dougherty's allegations as to the deficiencies in the

notice as true. That is, I must accept that the timely COBRA notice was, in some respect, false and/or deceptive and incomplete.

Therefore, I recommend that ASDI's motion for judgment on the pleadings with respect to the allegation that the COBRA notice was untimely be GRANTED, and that the motion be DENIED with respect to Dougherty's allegations that the notice was "false and/or deceptive" and incomplete.

    C.    <u>Count III - Delaware Wage Act</u>

Dougherty alleged in his original Complaint that ASDI violated the Wage Act by "unlawfully withh[o]ld[ing] . . . wages and/or benefits and wage supplements" and by "failing to notify Mr. Dougherty of a reduction in his regular rate of pay, through a posted notice maintained in a place accessible to Mr. Dougherty where he normally passed, prior to the time of such reduction." (D.I. 1 ¶¶ 55-56) In a second version of the proposed Amended Complaint submitted with his reply in support of his Motion to Amend, Dougherty withdrew his Wage Act claim. (D.I. 38, Ex. C) Dougherty states in his briefing that the decision to withdraw Count III was made pursuant to ASDI's agreement to pay Dougherty for the wages he would have earned the week of January 1, 2007, including a doubling penalty and reasonable attorney's fees. (D.I. 51 at 14) Dougherty characterizes his withdrawal of Count III as a "gesture" made in an "attempt to streamline this litigation in recognition that Defendants had effectively conceded their liability under the Wage Act and paid the basic amounts that Dougherty would have been able to recover by pressing such claim." *Id.* He has also noted that he "will pursue similar damages through alternative theories, including Delaware's Whistleblower Protection Act and the implied covenant of good faith and fair dealing." (D.I. 38 at 8)

Now, in a third version of his proposed Amended Complaint, Dougherty attempts to revive Count III. (D.I. 51, Ex. A) He argues that ASDI has reneged on its "obligation to pay the attorney's fees" that Dougherty incurred in obtaining his wages for the week of January 1, 2007. *Id.* at 14.

I recommend denying Dougherty's request to rescind his proposed withdrawal of Count III. Dougherty has been paid all the relief to which he could possibly be entitled under the Wage Act: his salary for the week of January 1, 2007 plus a penalty of equal amount. To the extent Dougherty believes he is entitled to attorney's fees under the Wage Act, he may file an appropriate motion, seeking such fees. ASDI has agreed that it will not oppose such a motion on the grounds that Count III has been withdrawn. (D.I. 60 at 50-51) Dougherty's insistence that he needs discovery to support his attorney's fees request comes too late; he withdrew the count without an opportunity for discovery, and I see no reason to let him revisit that decision.

D.  Supplemental Jurisdiction

Dougherty seeks to have this Court exercise supplemental jurisdiction over his state law claims, Counts IV-VI. In order for a federal court to hear state law claims pursuant to its supplemental jurisdiction, the "state and federal claims must derive from a common nucleus of operative facts." *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995). The inquiry into whether such a "common nucleus" exists is "fact-sensitive" in nature. *Id.* The Third Circuit has cautioned that "when a court exercises federal jurisdiction pursuant to a rather narrow and specialized federal statute it should be circumspect when determining the scope of its supplemental jurisdiction." *Id.* at 764; *see also id.* at 763 (rejecting supplemental jurisdiction where plaintiff's FLSA claim "involved very narrow, well-defined factual issues").

13

Having found that Dougherty's FLSA and Wage Act claims should be dismissed, I must determine whether his remaining state law claims under the Whistleblower Act, the Personnel Files Act, and the implied covenant of good faith and fair dealing derive from a common nucleus of operative facts with what remains of his COBRA claim: the allegations that the COBRA notice, although timely, contained false and/or deceptive information and was incomplete.

I find that Dougherty's state law claims are wholly unrelated to his surviving COBRA claim, so no sufficient nexus exists. Dougherty's Whistleblower Act claim centers on whether he was wrongfully discharged, (D.I. 1 ¶59); his Personnel Files Act claim is narrowly focused on whether ASDI "unlawfully refused [] Dougherty access to a personnel file," *id.* ¶ 62; and his implied covenant of good faith and fair dealing claim deals with the reasons for his termination, *id.* ¶¶ 66-68. None of these claims are concerned with the narrow issue of whether a benefits election form sent to Dougherty months after he was placed on administrative leave was in some way deficient.

Dougherty argues that his state and federal law claims all arise out of ASDI's undertaking "a course of retaliatory conduct that began with Dougherty's proper action in raising concern regarding a workplace violence risk, and not ending until months after he was terminated, when Defendants continued to delay in forwarding to him the most basic COBRA information." (D.I. 51 at 18) In other words, Dougherty argues there is a common nucleus because ASDI's alleged retaliatory motive manifested itself in the conduct giving rise to all of his claims. But the issue of motive has nothing to do with Dougherty's COBRA claim. In order to prevail on his COBRA claim, Dougherty need not prove why ASDI sent him a deficient COBRA notice. Nor is it even likely he would be permitted to try to do so at a trial on the COBRA claim.

Accordingly, I recommend against the exercise of supplemental jurisdiction with respect to Dougherty's state law claims.

E.  Diversity Jurisdiction

Dougherty belatedly argues, in his answer to ASDI's Motion for Judgment on the Pleadings and at oral argument, that diversity jurisdiction is an alternate basis by which this Court may exercise jurisdiction over his state law Whistleblower Act and implied covenant of good faith and fair dealing claims. (D.I. 51 at 26-27, D.I. 60 at 59-60) The Complaint and proposed Amended Complaint plead that Dougherty is a Pennsylvania citizen and ASDI, Inc. is a Delaware corporation but set out no factual allegations as to the citizenship of Alan Blize.[5] (D.I. 1 ¶¶ 1, 3; D.I. 26, Ex. A ¶¶ 1, 3)

Dougherty acknowledges that diversity jurisdiction under 28 U.S.C. § 1332 was "not specifically plead" as a jurisdictional basis in either the Complaint or any version of the proposed Amended Complaint. (D.I. 51 at 26; D.I. 60 at 59-60) He also concedes the jurisdictional amount is not satisfied for either the Personnel Files Act claim or his (withdrawn) Wage Act claim. *Id.*

It is true that courts have an obligation "to examine the basis of their subject matter jurisdiction at all stages of the litigation sua sponte if the parties fail to raise the issue." *U.S. Express Lines, Ltd. v. Higginis*, 281 F.3d 383, 389 (3d Cir. 2002). Yet "[t]he burden of proving the existence of . . . diversity jurisdiction . . . lies with the pleader." *Kale v. Combined Ins. Co. of America*, 736 F.Supp. 1183, 1184 n.3 (D. Mass. 1990) (*citing Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)), *aff'd*, 924 F.2d 1161 (1st Cir. 1991). Moreover, the decision as to whether to

---

[5]Dougherty's Answering Brief alleges that Blize is a citizen of Maryland. (D.I. 51 at 26)

permit relief from a scheduling order and allow an untimely amended pleading to assert an alternate basis for jurisdiction is discretionary.

I recommend exercising discretion to deny Dougherty's request for a sua sponte finding of diversity jurisdiction. Dougherty has not filed a motion to amend the Scheduling Order or for leave to file a second Amended Complaint to plead diversity jurisdiction. The time to file a motion for leave to amend under the existing Scheduling Order has passed. (D.I. 14) Furthermore, I do not find a compelling reason to allow Dougherty to submit another set of pleadings where he failed to plead the elements of jurisdiction on two prior occasions, and particularly where the exercise of diversity jurisdiction would only save two state law claims that, for the reasons already given, are far broader than the sole remaining COBRA federal claim.

## RECOMMENDED DISPOSITION

For the reasons set forth above, I recommend the following:

1. Plaintiff's Motion for Leave to File an Amended Complaint be DENIED.

2. Defendants' Motion for Judgment on the Pleadings or to Dismiss be GRANTED IN PART and DENIED IN PART.

   a) I recommend that judgment be entered for Defendant on Count I alleging a violation of the FLSA.

   b) I recommend that judgment be entered for Defendant on Count II to the extent Count II alleges that the COBRA notice Plaintiff received was untimely.

   c) To the extent that Count II alleges that the COBRA notice Plaintiff received was deficient in that it was false and/or deceptive and failed to contain all required information, I recommend that Defendants' motion be DENIED and that Plaintiff be permitted to pursue this portion of his claim.

   d) I recommend that Count III (Delaware Wage Act claim) be DISMISSED WITH PREJUDICE.

   e) I recommend that the remaining state law claims (Counts IV, V, and VI) be DISMISSED WITHOUT PREJUDICE.

Dated: June 25, 2008  
Wilmington, Delaware

_____  
The Honorable Leonard P. Stark  
UNITED STATES MAGISTRATE JUDGE