IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN J. DOUGHERTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 07-674-SLR/LPS |
| | ) | |
| ALAN BLIZE, and ASDI | ) | |
| INCORPORATED, a Delaware | ) | |
| Corporation | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' PARTIAL OBJECTION TO PROPOSED
REPORT AND RECOMMENDATIONS**

      Defendants Alan Blize and ASDI, Inc. (together, "ASDI"), by and through their undersigned counsel and pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, hereby object, in limited part, to the Report and Recommendation, and corresponding Paragraph of the Recommended Disposition, issued by the United States Magistrate.  (D.I. 63).  Paragraph 2(c) of the Disposition recommends that Defendants' Motion for Judgment on the Pleadings be denied with respect to Count Two of Plaintiff's Complaint.  (DI. 63).  Count Two alleges a violation of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. §§ 1001-191c ("COBRA").  The grounds for Defendants' Partial Objection are as follows:

      1.     In his Complaint, Plaintiff does not allege that he suffered any harm as a result of the alleged violation.  Plaintiff does not allege that he sought COBRA continuation coverage or that he suffered a loss of medical coverage at any time.  Accordingly, Count Two of Plaintiff's Complaint alleges no more than a technical violation and an attempt to recover a statutory penalty.  His hyper-technical claims are without merit, as explained below.

2.	Count Two of Plaintiff's Complaint asserts that the COBRA Notice he received, following the termination of his employment with Defendant ASDI, was "false and/or deceptive and incomplete."  (D.I. 1 at ¶ 51); (D.I. 63 at 11).

3.	Plaintiff was placed on an unpaid leave of absence on January 2, 2007.  (D.I. 63 at 2).  As stated in his Complaint, Plaintiff was terminated on May 3, 2007.  (D.I. 1 at ¶ 41).  Plaintiff received a COBRA Notice apprising him of his right to health-care continuation benefits on May 18, 2007.  (D.I. 63 at 3).  The Notice identifies the date of the qualifying event as May 3, 2007.  (D.I. 63 at 3).

4.	Initially, Plaintiff alleged that the COBRA Notice (1) was untimely; (2) included "false and/or deceptive information;" and (3) did not provide "required information including a rate sheet."  (D.I. 63 at 11).

5.	The first of the three allegations has been withdrawn.  (D.I. 63 at 11).  At oral argument, Plaintiff's counsel conceded that Plaintiff received the Notice within the proscribed time period.  (D.I. 63 at 11).

6.	The third of the three allegations also is no longer at issue.  During oral argument, Plaintiff's counsel asserted that the Notice was incomplete because it failed to identify the trigger that caused the qualifying event.  Following oral argument, the undersigned pointed out to Plaintiff's counsel that the Notice did identify the qualifying event.  After reviewing the Notice, Plaintiff's counsel agreed that the qualifying event, indeed, is stated on the Notice.  (D.I. 61 at 7).  This is consistent with Plaintiff's Complaint, in which he plainly alleges:  "The COBRA notice form states that the date of Mr. Dougherty's termination (the date he qualified for COBRA coverage) was May 3, 2007."  (D.I. 1 at ¶ 41).

2

7. Thus, only the second of the three allegations remains. As stated in the Magistrate's Report, Plaintiff "questions the veracity" of the date of the qualifying event, which the Notice identifies as May 3, 2007. (D.I. 63 at 11). Stated differently, Plaintiff claims that he should be able to litigate whether or not he was, in fact, terminated on May 3, 2007.[1] For several reasons, this allegation is insufficient to state a claim under COBRA for which relief could be granted as a matter of law.

8. First, claims not asserted in the Complaint may not serve as the basis for relief. Plaintiff's Complaint provided no indication that Plaintiff believed that he was terminated on any date other than May 3, 2007. Plaintiff made this allegation for the first time at oral argument. He failed to raise it previously, despite having had ample opportunity to make such an argument in any of the numerous pleadings he filed with the Court, including two briefs in support of his Motion to Amend and his brief in opposition to Defendants' Motion for Judgment on the Pleadings. (D.I. 26, 38, 51). Because this allegation was not included in the Complaint, it should not be considered here as a part of Plaintiff's claim.[2]

9. Second, this newly asserted allegation directly contradicts the statements contained in the Complaint. Plaintiff states unambiguously in his Complaint that the Notice identified both the date of, and the reason for, the qualifying event.[3] Nowhere in his Complaint does he allege that the date stated in the Notice may have been untrue or inaccurate. Thus, the

---

[1] Notably, this requires Plaintiff to directly dispute assertions he made in his Complaint. As stated earlier, Plaintiff alleges in his Complaint (and proposed to allege in an amended complaint), that the Notice stated that Plaintiff was terminated on May 3, 2007. (D.I. 1 at ¶ 41); (D.I. 26-2 at ¶ 41).

[2] See Williams v. New Castle County, 970 F.2d 1260, 1266, n.4 (3d Cir. 1992) (quoted in Dongelewicz v. PNC Bank Nat'l Ass'n, 104 Fed. App'x 811, 819 (3d Cir. 2004)) ("Of course, 'a contention in a brief' 'clearly . . . may not' be used to 'substitute for an allegation in a complaint.'"), cert. denied, 543 U.S. 1096 (2005).

[3] (D.I. 1 at ¶41).

allegations in Plaintiff's Complaint control the present question and may not now be contradicted in order to save what is an otherwise unsustainable claim.

10.     Third, from a policy perspective, permitting such a claim to proceed would contradict COBRA's intended purposes.  COBRA was designed "to provide employees with an opportunity to continue to receive group health insurance after the occurrence of a qualifying event, e.g. termination."[4]  In short, "COBRA's purpose is to prevent gaps in health-care coverage."[5]  Plaintiff's claim is an attempt to use the statute as a vehicle to attack the employment decision underlying a qualifying event.  Such an attempt goes against the most fundamental purpose of the statute itself.

11.     Fourth, COBRA's statutory scheme does not provide for a claim based on an allegation contesting the "veracity" of date of the qualifying event.[6]  A "qualifying event," by definition, cannot occur unless or until the individual suffers a loss of health-care coverage.[7]  Thus, the qualifying event in this case could not have occurred until ASDI removed Plaintiff from its group insurance plan.  There is no dispute that Plaintiff was continuously enrolled in ASDI's health-care plan until May 3, 2007.

---

[4] Treanor v. Metro. Transp. Auth., 414 F. Supp. 2d 297, 302 (S.D.N.Y. 2005) (internal citations omitted).

[5] Livingston v. S.D. State Medical Holding Co., 411 F. Supp. 2d 1161, 1169 (D.S.D. 2006) (citing Piercefield v. Int'l Truck & Engine Corp., No. 05-1873, 2006 U.S. Dist. LEXIS 54878, at *10 (S.D. Ind. Aug. 7, 2006)); Local 217, Hotel & Restaurant Employees' Union v. MHM, Inc., 976 F.2d 805, 809 (2d Cir. 1992) ("The purpose of COBRA is to afford employees . . . continuation medical coverage . . ..").

[6] See 29 C.F.R. § 2590.606-4(b)(4)(ii) (requiring that the beneficiary be provided a Notice that, among other things, identifies the nature of the qualifying event).

[7] See 28 U.S.C. § 1163 (identifying six events that, but for the continuation coverage required by COBRA, *would result in the loss of coverage* by a qualified beneficiary) (emphasis supplied).

12.     Plaintiff appears to have confused the date of the qualifying event, as defined above, with the date that he was terminated "officially."[8] The latter has no impact on the former. The two are unrelated unless and until the terminated employee loses health-care coverage.[9] Thus, whether Plaintiff was terminated in January, in May, or at some time in between, is irrelevant to a COBRA analysis. For purposes of COBRA, the only date at issue is May 3, 2007, the date of the qualifying event, when Plaintiff's health-care coverage was terminated. Any other date, then, is of no legal value and cannot serve as the basis for a COBRA claim.

13.     Practical experience further supports this conclusion. It is not uncommon for the qualifying event (i.e., the loss of coverage), to occur after the event that *caused* the qualifying event (i.e., the "Causal Event"). Severance agreements frequently provide for immediate termination of the employment relationship while extending health-care coverage for some agreed upon period of time. Under such circumstances, the Causal Event (i.e., termination of employment), occurs long before the qualifying event (i.e., the loss of coverage). If Plaintiff's claim were permitted to proceed, severance agreements containing such provisions, accordingly, would be unenforceable. Logic dictates that such a broad-sweeping result be avoided.

---

[8] See Jachim v. Kutz, Inc., 783 F. Supp. 1328, 1332 (D. Utah 1992) (holding as a matter of law that no qualifying event occurred until the employee lost coverage where she continued to be covered under the employer's health care plan for ten months after she stopped working); Aquilera v. Landmark Hotel-Netaire, No. 92-1815, 1992 U.S. Dist. LEXIS 19720, at *2 (E.D. La. Dec. 18, 1992) (concluding that the qualifying event occurred when the employee lost health-care coverage and rejecting plaintiff's claim that the date of the qualifying event occurred on the date she was "effectively terminated" by defendant when she was put on an involuntary leave of absence).

[9] See Aquilinio v. Solid Waste Servs., Inc., 2008 U.S. Dist. LEXIS 47168, at *17, n.3 (E.D. Pa. June 13, 2008) (finding that a qualifying event did not occur until the defendant-employer terminated the plaintiff-employee's health-care coverage, even though the plaintiff went out on leave six months earlier and had not worked during that six-month period).

14. In this case, ASDI correctly identified the date of the qualifying event as May 3, 2007, because this was the date that Plaintiff's coverage was terminated. ASDI also correctly identified the trigger for the loss of coverage as the termination of his employment because this was the Causal Event. Thus, Defendants complied fully with each of the statutory requirements for an effective COBRA Notice.

15. Fifth, Plaintiff's claim requires an unwarranted expansion of the statutory requirement that the Notice identify the nature of the qualifying event. The Notice must contain this information only to provide the beneficiary with sufficient information about the duration of COBRA coverage if elected. It is not designed to serve as the basis for a claim, but merely to identify the potential length of continuation coverage.

16. Coverage can last eighteen, twenty-nine, or thirty-six months from the date of the qualifying event.[10] Which of the three periods is applicable is dependent upon the nature of the qualifying event. For example, loss of coverage resulting from the termination of employment allows the employee-beneficiary to elect COBRA for up to eighteen months, whereas loss of coverage due to a divorce entitles the spouse-beneficiary to elect coverage for up to thirty-six months.

17. This intended purpose was satisfied because Plaintiff was properly notified that, if he chose to elect COBRA continuation coverage, he could remain covered under ASDI's plan for up to eighteen months. Moreover, Plaintiff did not even elect COBRA coverage, so the nature of the qualifying event becomes yet further removed from the statute's intended purpose. Because the Notice fulfilled the statutory requirements, Plaintiff cannot create a claim merely by questioning the "veracity" of the date of his termination.

---

[10] 26 U.S.C. § 4980B(f)(2)(B); 29 U.S.C. § 1162(2).

18.     Sixth, the courts in this and other Circuits " that have addressed [COBRA] Notices. . . have held that a good-faith attempt to comply with a reasonable interpretation of the statute is sufficient."[11]  Plaintiff has alleged no facts to support a finding that Defendants acted in any way to the contrary.  Because Defendants gave Plaintiff notice that was sufficient to allow him to make an informed decision whether to elect coverage, they have met the good-faith standard as a matter of law.[12]

19.     Seventh, even without the good-faith analysis, there can be no disputing that Defendants have met their burden to provide "a *simple notification* that the employee has the right to continued coverage." [13]  The courts of this Circuit have uniformly held that a claim alleging defective notification withstand a properly supported motion to dismiss unless the plaintiff has alleged that the defendant failed to meet this most basic standard.[14]  As one Court noted:

> There can be no serious dispute as to the adequacy of a COBRA Notice [that communicates] all material details that a plan beneficiary could reasonably need in the first instance [so long as the Notice] clearly informs recipients that they are entitled to continued coverage if a qualifying event occurs, provides a list of qualifying events[, and] . . . provides general information about the possible duration of coverage, payment schedule, and cost."[15]

---

[11] Kane v. United Indep. Union Welfare Fund, No. 97-1505, 1998 U.S. Dist. LEXIS 1965, at *13 (E.D. Pa. Feb. 25, 1998) (collecting cases).

[12] See, e.g., Joiner v. Dreisenga & Assocs., No. 04-437, 2005 U.S. Dist. LEXIS 29968, at *10 (W.D. Mich. Aug. 29, 2005) (holding that the good-faith requirement is satisfied so long as the qualified beneficiary is given enough information to make an informed decision as to whether to elect coverage); Lincoln Gen. Hosp. v. Blue Cross/Blue Sheild, 963 F.2d 1136, 1140 (8th Cir. 1992) (holding that the notice obligation had been satisfied where the qualified beneficiary was adequately informed of the coverage to which she was entitled and the cost to maintain this coverage).

[13] Id. (quoting Hummer v. Sears, Roebuck & Co., No. 92-3009, 1994 U.S. Dist. LEXIS 3659, at *21 (E.D. Pa. Mar. 21, 1994)) (emphasis supplied).

[14] Id.

[15] Hummer, 1994 U.S. Dist. LEXIS 3659, at *21.

7

20. Put simply, Defendants undisputedly satisfied this most basic standard. As evidenced by his failure to allege that he suffered any harm as a result of Defendants' actions, Plaintiff cannot meet his burden to demonstrate that the Notice failed to provide "general information" about COBRA benefits. Instead, the Notice provided by Defendants provides all material details that Plaintiff could reasonably need to determine whether to elect such benefits. Plaintiff has not alleged otherwise. Thus, his request to expand COBRA's legal framework to enable him to test the "veracity" of his termination date should be rejected as a matter of law.

WHEREFORE, Defendants Alan Blize, and ASDI, Inc., respectfully request that this Court DECLINE TO ADOPT Paragraph 2(c) of the Recommended Disposition and, in every other respect, to ADOPT the Recommended Disposition, thereby GRANTING Defendants' Motion for Judgment on the Pleadings (D.I. 41), in full and dismissing Plaintiff's Complaint in its entirety.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Barry M. Willoughby*
Barry M. Willoughby (Bar I.D. 1016)
Margaret M. DiBianca (Bar I.D. 4539)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6666; -5008
Facsimile: (302) 576-3345; -3476
E-mail: bwilloughby@ycst.com; mdibianca@ycst.com
*Attorneys for Defendants*

DATE: July 10, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN J. DOUGHERTY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | C.A. No. 07-674-SLR/LPS |
| ) | |
| ALAN BLIZE, and ASDI ) | |
| INCORPORATED, a Delaware ) | |
| Corporation ) | |
| ) | |
| Defendants. ) | |

**ORDER**

AND NOW, this _____ day of _____, 2008, the Court having heard Defendants' Partial Objection to the Proposed Report and Recommendations, IT IS HEREBY ORDERED as follows:

1. The Court DECLINES TO ADOPT Paragraph 2(c) of the Recommended Disposition (D.I. 63);

2. The Court hereby ADOPTS the Recommended Disposition in every other respect; and, further,

3. The Court DENIES Plaintiff's Motion for Leave to File an Amended Complaint (D.I. 26); and, therefore,

4. The Court GRANTS Defendants' Motion for Judgment on the Pleadings, (D.I. 41), DISMISSING WITH PREJUDICE Counts I, II, and III, and DISMISSING WITHOUT PREJUDICE Counts IV, V, and VI.

_____
Judge